IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Dan Wang, | ) | |
|         Plaintiff, | ) | |
| | ) | Case No. 1:21-cv-01664 |
| | ) | |
|         v. | ) | |
| The Partnerships and | ) | |
| Unincorporated Associations | ) | |
| Identified in Schedule "A," | ) | |
|         Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Dan Wang ("Plaintiff") submits this Memorandum in support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery ("*Ex Parte* Motion").

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Plaintiff Dan Wang ("Plaintiff") is requesting temporary *ex parte* relief based on the actions of clear trademark infringement and counterfeiting committed by the defendants identified in the Schedule "A" to the Complaint (collectively, "Defendants"). As detailed and elaborated in the Complaint, Defendants are selling unauthorized and unlicensed products using the Plaintiff's "JIANGWANG" trademark ("Infringing Products") through at least the fully interactive, e-commerce stores and online marketplaces identified within the Schedule A attached to the Complaint. Defendants utilize these online marketplaces to create "Seller Aliases" to increase their chances of avoiding detection by U.S. Customs and Border patrol.

Defendants explicitly target sales to Illinois residents by setting up and operating e-commerce stores using one or more seller aliases through which Illinois residents can purchase infringing products. The e-commerce stores operating under the seller aliases have similar and legibly apparent characteristics that establish a common logical relationship between them. The purpose of Defendants operating under these numerous seller aliases is to conceal their identities and obfuscate the full scope of their coordinated infringement operation. Plaintiff must file this action to combat Defendants' infringement of Plaintiff's trademark and the irreparable injury Defendants' infringement continues to inflict on Plaintiff's brand and safeguard Illinois consumers from further infringing products over the Internet. Defendants' unlawful activities should be restrained. Plaintiff respectfully requests that this Court issue ex parte a Temporary Restraining Order, Temporary Asset Restraint, and Expedited Discovery.

## II. BACKGROUND

### A. Plaintiff's Business

Plaintiff Dan Wang specializes in the creation, manufacture, marketing, and licensing of products which display the internationally recognizable federally registered trademark belonging to Plaintiff (Reg. 6,151,499, "JIANGWANG" mark). Plaintiff is the owner and licensor of all of Plaintiff's Products that contain the JIANGWANG protected trademark and are available in brick-and-mortar retail stores as well as numerous e-commerce marketplace platforms. Plaintiff maintains exclusive control of Plaintiff's valid trademark and has used the JIANGWANG mark consistently without ever being abandoned. See Declaration of Dan Wang at ¶ 6.

Plaintiff has invested substantial resources, time, money, and commercial effort in order to establish the goodwill of Plaintiff's products and brand. The JIANGWANG mark is indispensable to Plaintiff's business operations and Plaintiff maintains all lawful rights of title and interest in the mark to enforce and protect the JIANGWANG mark.

### B. Defendants' Unlawful Activities

Plaintiff has discovered numerous fully interactive ecommerce stores, including those operating under the Defendants' seller aliases, which have been offering for sale and selling infringing products bearing the JIANGWANG mark to consumers within this Judicial District as well as throughout the United States. Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the ecommerce stores operating under the Seller Aliases and the Infringing Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. If Defendants elect to provide additional information regarding their identities or information related to their business enterprise based on trademark infringement, Plaintiff will appropriately amend the Complaint as necessary.

**III. ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's brand and business enterprise. Fed. R. Civ. P. 65(b) provides that this Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed R. Civ. P. 65(b). A TRO is appropriate in this matter because a TRO will immediately stop Defendants' use of Plaintiff's trademark and preserve the status quo until a hearing may be held.

The TRO must be granted without notice in order to prevent further irreparable harm to Plaintiff. In the absence of a TRO without notice, Defendants can—and will— register new ecommerce stores under new aliases, move all of the assets to off-shore bank accounts outside the jurisdiction of this Court, and thereby deprive Plaintiff of any opportunity to seek equitable relief. (Wang Decl. at ¶ 9-22). Courts recognize that civil actions against infringers present special challenges that warrant proceeding on an *ex parte* basis. Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff requests that this Court issue the requested *ex parte* TRO.

This Court maintains original subject matter jurisdiction given the claims in this proceeding arise out of the Lanham Act. 15 U.S.C. § 1114, § 1115, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court additionally maintains supplemental jurisdiction over Plaintiff's related state law claims as they arise out of the same case or controversy as Plaintiff's federal claims. 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, ecommerce stores operating under the seller aliases. Specifically, Defendants

have targeted sales to Illinois residents by setting up and operating ecommerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois. See Complaint at ¶ 30-40. *See*, *e.g.*, Christian Dior Couture, S.A. v. Lei Liu *et al.*, Case No. 15-cv-6324, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); Monster Energy Company v. Wensheng, 136 F. Supp. 3d 897, 905 (N.D. Ill. 2015) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant.") (*citing* Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC, No. 10 C 4535, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010)). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### A. Legal Standard for Temporary Restraining Order and Preliminary Injunction.

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See*, *e.g.* Charter Nat'l Bank & Trust v. Charter One Fin., Inc., No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that such party's case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that such party will suffer irreparable harm if the injunction is not granted. *See* Ty, Inc. v. The Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001).

If these three conditions are satisfied then the Court must consider harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. Id. Lastly, the Court should consider the potential effect on the public interest (non-parties) in denying or granting the injunction. Id. The Court then weighs all

of these factors, "sitting as would a chancellor in equity," when the Court decides whether to grant an injunction. Abbot Labs. V. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir. 1992). The "sliding scale approach" the Court should implement reasons that the more likely plaintiff will succeed on the merits, the less balance of harms need favor the plaintiff's motion. Ty, Inc., 237 F.3d at 895.

B. **Plaintiff is Likely to Succeed on the Merits.**

The Lanham Act provides that "Any person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion…. shall be liable in a civil action by the registrant for the remedies hereinafter provided." 15 U.S.C. § 1114(a). Plaintiff in this matter is the lawful owner of trademark registration number 6,151,499, the JIANGWANG mark, and owns exclusive rights to use the mark on Plaintiff's products. (Wang Decl. at ¶ 6). Plaintiff has submitted substantial evidence and documentation of Defendants' clear and blatant use of Plaintiff's trademark in order to make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly that bear Plaintiff's protected JIANGWANG mark. This evidence clearly supports the rational conclusion that an ordinary consumer would likely be confused as to the origin of Defendants' infringing products and potentially deceived into buying illegal counterfeit products from Defendants rather than authentic products sold by Plaintiff. Competitive Edge, Inc. v. Staples, Inc., 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) (citing Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 672 (Fed. Cir. 2008)). Plaintiff has certainly not authorized Defendants to use Plaintiff's JIANGWANG mark and none of the Defendants are authorized retailers of genuine JIANGWANG products. (Wang Decl. at ¶ 9-22). Plaintiff has thereby established a *prima facie* case of trademark infringement.

C. **There is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

Plaintiff is likely to suffer irreparable harm due to Defendants blatant and unlawful acts of trademark infringement. Defendants' infringement of Plaintiff's trademark threatens the Plaintiff's established goodwill with customers and reputational harm. (Wang Decl. at ¶ 9-22). Harm is considered presumptively irreparable in trademark infringement actions. *See* Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982) ("this readiness to find irreparable injury arises in part from the realization that [t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.") (internal citations omitted); Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc., 576 F. Supp. 2d 868, 887 (N.D. Ill. 2008) ("Damages suffered as a result of trademark infringement are presumed to be irreparable because it is nearly impossible to calculate the precise economic harm caused by damage to goodwill and reputation on account of such infringement."); *see also* International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1091 (7th Cir. 1988) (arguing that Plaintiff need not prove loss of business in order for irreparable harm to be found by the Court). Defendants' have infringed Plaintiff's trademarks explicitly thereby warranting the presumption of irreparable harm. Miyano Mach., 576 F. Supp. 2d at 887.

Plaintiff lacks any adequate fair remedy at law for a matter involving trademark infringement in this manner. *See* Ideal Industries v. Gardner Bender Inc., 612 F.2d 1018 (7th Cir. 1979); Processed Plastic, 675 F.2d at 858 (arguing the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law). Even without this presumption, Defendants' infringement of Plaintiff's JIANGWANG mark is likely to cause consumer confusion with the Plaintiff's authentic goods, damage to Plaintiff's reputation, and a serious risk of

loss of customer goodwill. (Wang Decl. at ¶ 9-22). Therefore, this Court's entry of a TRO will provide the appropriate equitable remedy that is required in this matter.

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, all monetary based judgement is highly likely to be uncollectible. *E.g.*, Aevoe Corp. v. AE Tech Co., Ltd., No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); Otter Prods. v. Anke Group Indus. Ltd., 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); Bushnell, Inc. v. Brunton Co., 673 F. Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd., 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with FED. R. CIV. P. 65(b)(1). (Wang Decl. at ¶ 9-22).

### D. The Balancing of Harms Weighs in Plaintiff's Favor and the Public Interest is Served by Entry of the Injunction.

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then the Court must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will

suffer if relief is denied. Ty, Inc., 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. This is because any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted. Plaintiff did not unduly delay in bringing this action. (Wang Decl. at ¶ 21-22). Defendants took a calculated risk when they engaged in trademark infringement and their supposed "harm" should be given minimal deference.

As Plaintiff has demonstrated, Defendants have been profiting from the sale of infringing products. The balance of equities clearly leans in Plaintiff's favor. *See* Ideal Indus., Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1025 (7th Cir. 1979) ("The existence of irreparable injury is positively supported by the fact that the alleged trademark and the infringing use are identical, that the products are the same, and that the markets are the same. These factors by themselves are indicative of irreparable injury."); National Financial Partners Corp. v. Paycom Software, Inc., 2015 WL 3633987, at *12 (N.D. Ill. June 10, 2015) (compelling evidence of consumer confusion supports a finding of irreparable harm).

The enforcement of the trademark laws prevents consumer confusion. Eli Lilly & Co. v. Nat. Answers, Inc., 233 F.3d 456, 469 (7thCir. 2000); USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc., 402 F. Supp. 3d 427, 440 (N.D. Ill. 2019). It is in the best interest of the public if the Court were to grant Plaintiff's requested Temporary Restraining Order. *See* Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 193, (1985) ("Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them.") (internal quotation omitted); Stahly, Inc. v. M. H. Jacobs Co., 183 F.2d 914, 917 (7th Cir. 1950) ("It must be remembered that the trade-mark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit.").

Defendants will suffer no harm that was not warranted by their infringing actions if the Court grants Plaintiff's request for a Temporary Restraint Order. Plaintiff's risk of serious irreparable harm greatly outweighs the minor harm to Defendants. The TRO would also be in the best interest of the public to safeguard consumers from further unlawful infringement on behalf of Defendants. Accordingly, this Court should grant Plaintiff's request for a Temporary Restraining Order.

### IV. EQUITABLE RELIEF SOUGHT

The Lanham Act authorizes this Court to issue injunctive relief. "The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title...". 15 U.S.C. § 1116(a).

#### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Plaintiff's Trademark is Appropriate.

Plaintiff requests a Temporary Injunction requiring the Defendants to immediately cease making, using, offering, for sale, selling, and importing any products not authorized by Plaintiff and that includes any reproduction, copy, or colorable imitation of the trademark owned by Plaintiff. Such relief is necessary to stop the ongoing harm to Plaintiff's control over Plaintiff's rights to the JIANGWANG mark, Plaintiff's brand, associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit and unjustly enrich themselves from unauthorized use of Plaintiff's trademark. The need for *ex parte* relief is necessitated by today's global economic conditions where infringers can operate anonymously over the Internet and often escape the jurisdictional reach of the authorities. Plaintiff is presently unaware of both the true identities and locations of the Defendants, as well as other ecommerce stores used to distribute Defendants

infringing products. Courts have often authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g.*, Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd., 166 F. Supp. 3d 1177, 1178-79 (D. Nev. 2016).

### B. **Preventing the Fraudulent Transfer of Assets is Appropriate.**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from Defendants' sales of infringing products is not frustrated. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may ignore their instructions from the Court and merely transfer financial assets overseas to accounts out of reach of this jurisdiction. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it simple to dispose or remove assets, which will render an accounting by Plaintiff to be ineffective and meaningless.

Courts have the authority to issue prejudgment asset restraints when a plaintiff's complaint seeks relief in equity. Black & Decker Corporation v. Positec USA Inc., 118 F. Supp. 3d 1056, 1066 (N.D. Ill. 2015) (citing Reebok Int'l v. Marnatech Enters., 970 F.2d 552, 559 (9th Cir. 1992). Plaintiff has demonstrated a strong likelihood of success on the merits of Plaintiff's trademark infringement claim under 15 U.S.C. § 1114 so, according to § 1115(a), Plaintiff is entitled to recover the extent of Defendants' total profits. 15 U.S.C. § 1115(a). Plaintiff seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants due to their unlawful acts. This Court should therefore grant Plaintiff's request for a prejudgment asset freeze to preserve the effectiveness of the relief sought.

The Northern District of Illinois has entered asset restraining orders for trademark infringement claims asserted against stores selling counterfeit cigarettes. Lorillard Tobacco Co. v. Montrose Wholesale Candies, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court

recognized it was proper to restrain said assets when the plaintiff was seeking equitable relief. Id. (*citing* Grupo Mexicano, de Desarrollo, S.A. v. Alliance Bond Fund, 527 U.S. 308, 325 (1999) (finding that an asset freeze was warranted when the plaintiff sought a disgorgement of profits, an equitable remedy)).

Plaintiff has shown a clear likelihood of success on the merits and an immediate and irreparable harm incurred due to Defendants' infringement. Unless Defendants' assets are frozen, Defendants will hide or move their unlawfully obtained funds to offshore bank accounts. Accordingly, an asset restraint is proper.

C. **Plaintiff is Entitled to Expedited Discovery**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." Vance v. Rumsfeld, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007). (*quoting* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. Id. (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2). Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their sales operations. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See*, *e.g.*, Deckers Outdoor Corporation v. The Partnerships, et al., No. 15-cv-3249, (N.D. Ill. April 21, 2015) (Dkt. 19) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc., 402 F. Supp. 3d 427, 441 (N.D. Ill. 2019). Because of the strong and unequivocal nature of Plaintiff's evidence of trademark infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See*, *e.g.*, Deckers Outdoor Corporation v. The Partnerships, et al., No. 15-cv-3249 (N.D. Ill. April 21, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Plaintiff's business continues to be irreparably harmed by Defendants' business enterprise based on infringement of Plaintiff's trademark. Without entry of the requested relief, Defendants' infringement of the Plaintiff's trademark in connection with the making, using, offering to sell, selling, or importing of the infringing products will continue to irreparably harm Plaintiff. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated March 27, 2021

Respectfully Submitted

/s/Ilya G. Zlatkin
Zlatkin Wong LLP
4245 N. Knox Ave.
Chicago, IL 60641
ilya@zlatkinwong.com
Ph. (312) 809-8022
Fax (312) 809-6918

*Counsel for Plaintiff Dan Wang*