**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Dan Wang, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:21-cv-01664 |
| | ) | |
| v. | ) | Dist. Judge Virginia M. Kendall |
| The Partnerships and | ) | |
| Unincorporated Associations | ) | Mag. Judge Sheila M. Finnegan |
| Identified in Schedule "A," | ) | |
| Defendants. | ) | |

**<u>Unreported Opinions Cited in Plaintiff's Memorandum in
Support of Plaintiff's Motion for Entry of Default and Default Judgement</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BENEFIT COSMETICS LLC,<br><br>     Plaintiff,<br><br> v.<br><br>BESTTOMORROW STORE, et al.,<br><br>     Defendants. | Case No. 19-cv-02179<br><br>**Judge Manish S. Shah**<br><br>**Magistrate Judge Young B. Kim** |

**FINAL JUDGMENT ORDER**

This action having been commenced by Plaintiff Benefit Cosmetics LLC ("Benefit" or "Plaintiff") against the defendants identified on Schedule A, and using the Online Marketplace Accounts (collectively, the "Defendant Internet Stores"), and Benefit having moved for entry of Default and Default Judgment against the defendants identified on Schedule A attached hereto (collectively, the "Defaulting Defendants");

This Court having entered upon a showing by Benefit, a temporary restraining order and preliminary injunction against Defaulting Defendants which included an asset restraining order;

Benefit having properly completed service of process on Defaulting Defendants, the combination of providing notice via electronic publication and e-mail, along with any notice that Defaulting Defendants received from payment processors, being notice reasonably calculated under all circumstances to apprise Defaulting Defendants of the pendency of the action and affording them the opportunity to answer and present their objections; and

Defaulting Defendants having failed to answer the Amended Complaint or otherwise plead, and the time for answering the Amended Complaint having expired;

1

THIS COURT HEREBY FINDS that it has personal jurisdiction over Defaulting Defendants since Defaulting Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of the BENEFIT Trademarks (a list of which is included in the below chart).

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 3,278,031 | benefit | For: Skin cleansers, cream, lotion, masks, moisturizer, concealers, scrubs, non-medicated lip balm; body cream, oil, and scrubs; makeup; lipstick; lip gloss; eye makeup; blush; mascara; cosmetic pencils; sun block; self-tanning skin preparations; facial cleaners, creams, masks and scrubs; perfume; cologne; scented body spray; makeup remover in Class 003.<br><br>For: Cosmetic bags sold empty in Class 018.<br><br>For: Cosmetic brushes; makeup brushes in Class 021.<br><br>For: Retail store services, online retail store services, and distributorship services in the field of cosmetics in Class 035.<br><br>For: Beauty services, namely, body and facial waxing services, brow grooming services, brow and lash tinting services, skin treatment services in Class 044. |
| 3,345,041 | benefit | For: Clothing, namely, T-shirts and aprons in Class 025. |
| 2,906,665 | BENEFIT | For: Beauty services, namely, body and facial waxing services, brow grooming services, brow and lash tinting services, skin treatment services in Class 044. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 2,799,579 | BENEFIT | For: Cosmetics; namely, skin cleansing creams; night creams; facial creams; skin fresheners; masques or facial packs; bath oils; perfumed bath oils; colognes; eye shadow; mascara; lipstick; lip gloss; rouge; liquid rouge; body lotions; sun tan lotion and sun tan ultraviolet block in Class 003.<br><br>For: Retail store and distributorship services in the field of cosmetics in Class 035. |
| 1,772,618 | BENEFIT | For: Retail store and distributorship services in the field of cosmetics in Class 042. |
| 3,275,963 | BENEFIT | For: Skin cleansers, cream, lotion, masks, moisturizer, concealers, scrubs; non-medicated lip balm; body cream, oil and scrubs; makeup; lipstick; lip gloss; eye makeup; blush; mascara; cosmetic pencils; sun block; self-tanning skin preparations; facial cleaners, creams, masks and scrubs; perfume; cologne; scented body spray; makeup remover in Class 003.<br><br>For: Cosmetic bags sold empty in Class 018.<br><br>For: Cosmetic brushes; makeup brushes in Class 021. |
| 2,762,562 | DANDELION | For: Makeup, namely brightening face powder in Class 003. |
| 5,164,988 | DANDELION | For: Makeup in Class 003. |
| 5,155,736 | HOOLA | For: Cosmetics in Class 003. |
| 2,716,260 | HOOLA | For: Cosmetic bronzer in Class 003. |
| 5,241,989 | GALIFORNIA | For: Cosmetics; make-up powder in Class 003. |
| 4,437,019 | ROCKATEUR | For: Cosmetics in Class 003. |
| 2,263,073 | BENETINT | For: Cosmetics, namely, lip and cheek stain in Class 003. |
| 2,261,089 | SHE-LAQ | For: Cosmetics, namely, makeup sealer in Class 003. |
| 2,043,306 | BOO BOO ZAP | For: Lotions-facial-medicated in Class 005. |
| 5,156,103 | BOI-ING | For: Cosmetics in Class 003. |
| 2,012,121 | BOI-ING! | For: Cosmetics, namely, eye area concealers in |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| | | Class 003. |
| 4,877,214 | GIMME BROW | For: cosmetics; eyebrow colors; eyebrow cosmetics; eyebrow gel in Class 003. |
| 5,028,067 | KA-BROW! | For: Cosmetics; eyebrow color; eyebrow cosmetics; eyebrow gel in Class 003. |
| 3,839,146 | THE POREFESSIONAL | For: Cosmetics; skincare preparations, namely, facial lotions and makeup primer in Class 003. |
| 4,071,771 | THEY'RE REAL | For: Cosmetics; mascara in Class 003. |
| 2,263,076 | HIGH BEAM | For: Cosmetics, namely, facial highlighter in Class 003. |
| 4,548,049 | sun beam | For: Cosmetics; facial highlighter in Class 003. |
| 4,752,213 | ROLLER LASH | For: Mascara, cosmetics in Class 003. |

THIS COURT FURTHER FINDS that Defaulting Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, *et seq.*).

IT IS HEREBY ORDERED that Plaintiff's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendants are deemed in default and that this Final Judgment is entered against Defaulting Defendants.

IT IS FURTHER ORDERED that:

1. Defaulting Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

    a. using the BENEFIT Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing,

advertising, offering for sale, or sale of any product that is not a genuine Benefit product or not authorized by Benefit to be sold in connection with the BENEFIT Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Benefit product or any other product produced by Benefit, that is not Benefit's or not produced under the authorization, control or supervision of Benefit and approved by Benefit for sale under the BENEFIT Trademarks;

c. committing any acts calculated to cause consumers to believe that Defaulting Defendants' products are those sold under the authorization, control or supervision of Benefit, or are sponsored by, approved by, or otherwise connected with Benefit;

d. further infringing the BENEFIT Trademarks and damaging Benefit's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Benefit, nor authorized by Benefit to be sold or offered for sale, and which bear any of Benefit's trademarks, including the BENEFIT Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof.

2. Defaulting Defendants and any third party with actual notice of this Order who is providing services for any of the Defaulting Defendants, or in connection with any of the Defendant Internet Stores or other online marketplace accounts operated by Defaulting Defendants, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines

such as Google, Bing, and Yahoo (collectively, the "Third Party Providers") shall within three (3) business days of receipt of this Order:

    a.   disable and cease providing services being used by Defaulting Defendants, currently or in the future, to engage in the sale of goods using the BENEFIT Trademarks;

    b.   disable and cease displaying any advertisements used by or associated with Defaulting Defendants in connection with the sale of counterfeit and infringing goods using the BENEFIT Trademarks; and

    c.   take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3.     Pursuant to 15 U.S.C. § 1117(c)(2), Benefit is awarded statutory damages from each of the Defaulting Defendants in the amount of two hundred thousand dollars ($200,000) for willful use of counterfeit BENEFIT Trademarks on products sold through at least the Defendant Internet Stores. The two hundred thousand dollar ($200,000) award shall apply to each distinct Defaulting Defendant only once, even if they are listed under multiple different aliases in the Amended Complaint and Schedule A.

4.     Any Third Party Providers holding funds for Defaulting Defendants, including PayPal, Inc. ("PayPal"), Alipay, Wish.com, and Amazon Pay, shall within two (2) business days of receipt of this Order, permanently restrain and enjoin any non-U.S. based accounts connected to Defaulting Defendants or the Defendant Internet Stores from transferring or disposing of any money or other of Defaulting Defendants' assets.

5.     All monies currently restrained in Defaulting Defendants' financial accounts, including monies held by Third Party Providers such as PayPal, Alipay, Wish.com, and Amazon Pay,

are hereby released to Benefit as partial payment of the above-identified damages, and Third Party Providers, including PayPal, Alipay, Wish.com, and Amazon Pay, are ordered to release to Benefit the amounts from Defaulting Defendants' financial accounts within ten (10) business days of receipt of this Order.

6.      Until Benefit has recovered full payment of monies owed to it by any Defaulting Defendant, Benefit shall have the ongoing authority to serve this Order on Third Party Providers, including PayPal, Alipay, Wish.com, and Amazon Pay, in the event that any new financial accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, Third Party Providers, including PayPal, Alipay, Wish.com, and Amazon Pay, shall within two (2) business days:

   a.   locate all accounts and funds connected to Defaulting Defendants or the Defendant Internet Stores, including, but not limited to, any financial accounts connected to the information listed in Schedule A hereto, the e-mail addresses identified in Exhibit 3 to the Declaration of Ashli Weiss, and any e-mail addresses provided for Defaulting Defendants by third parties;

   b.   restrain and enjoin such accounts or funds that are not U.S. based from transferring or disposing of any money or other of Defaulting Defendants' assets; and

   c.   release all monies restrained in Defaulting Defendants' financial accounts to Benefit as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

7.      In the event that Benefit identifies any additional online marketplace accounts or financial accounts owned by Defaulting Defendants, Benefit may send notice of any supplemental proceeding to Defaulting Defendants by e-mail at the e-mail addresses identified in Exhibit

3 to the Declaration of Ashli Weiss and any e-mail addresses provided for Defaulting Defendants by third parties.

8.     The ten thousand dollar ($10,000) cash bond posted by Benefit, including any interest minus the registry fee, is hereby released to Benefit or its counsel, Greer, Burns & Crain, Ltd.  The Clerk of the Court is directed to return the cash bond previously deposited with the Clerk of the Court to Benefit or its counsel by check made out to the Greer, Burns & Crain IOLTA account.

This is a Final Judgment.

DATED:  June 5, 2019

Manish S. Shah
United States District Judge

**Benefit Cosmetics LLC v. Besttomorrow Store, et al. - Case No. 19-cv-02179**

**Schedule A**

| No. | Defendant Name / Alias | No. | Defendant Name / Alias |
|---|---|---|---|
| 1 | Besttomorrow Store | 2 | Blue Chip Stamps Store |
| 3 | boomdealer Store | 4 | Brand Cosmetic Store |
| 5 | Eldridge Makeup Store | 6 | DISMISSED |
| 7 | hcx makeup store | 8 | DISMISSED |
| 9 | kisslover Store | 10 | LaMuseland Beauty Store |
| 11 | Life Of Thrones Store | 12 | Makeup Store |
| 13 | MERBOX Store | 14 | O.TWO.O Store |
| 15 | OHC Makeup Store | 16 | PerfectLady Store |
| 17 | QiBest Makeup Store | 18 | DISMISSED |
| 19 | Rocooart Fashion ( Min. Order 0.7 USD ) | 20 | Sexy Beautiful Store |
| 21 | Shop1454059 Store | 22 | SuYuan Store |
| 23 | Tender Heart | 24 | Wonderland Nail Store |
| 25 | Yaduo Store | 26 | Your Beautiful Store |
| 27 | DISMISSED | 28 | DISMISSED |
| 29 | All Shopping For You | 30 | AmyBeautyCouple Store |
| 31 | Anne_Shop | 32 | Armand Makeup Store |
| 33 | Beautealth Store | 34 | Beautiful Nainen Store |
| 35 | Beautys Shopping Store | 36 | BeautySnake Store |
| 37 | Be-Beautiful Store | 38 | Beijing GreatTool Trading Co., Ltd. |
| 39 | Brand Makeup Store | 40 | ByDressing Store |
| 41 | Cacifer Store | 42 | caizhuangjiaci Store |
| 43 | Celeste Shopping Store | 44 | DISMISSED |
| 45 | ColorBeauty Store | 46 | Colored World Store |
| 47 | Crazy Feng Fashion Jewelry | 48 | Daily Makeup Store |
| 49 | Delicate Make Up Store | 50 | Dropship Makeup Store |
| 51 | DISMISSED | 52 | DTzone Store |
| 53 | e-fashion shop | 54 | E-Makeup Store |
| 55 | Exquisite Makeup Store | 56 | Fashion Health&Beauty |
| 57 | First Choosing Store | 58 | Gagga Make-up Store |
| 59 | Go Shop Store | 60 | Good quality parity Store |
| 61 | High Quality Makeup Brush Store | 62 | HIS Store |
| 63 | HitTime Store | 64 | HongQI Store |
| 65 | hotbuy88 Store | 66 | HZ Beautys Store |

| No. | Defendant Name / Alias | No. | Defendant Name / Alias |
|---|---|---|---|
| 67 | In Shop Store | 68 | iStar-Watch Store |
| 69 | JaneDream Store | 70 | Kadalado Store |
| 71 | Karry Store | 72 | DISMISSED |
| 73 | Little Grace | 74 | LUCY 2 Store |
| 75 | Lucy omar 3 Store | 76 | Makeup City Store |
| 77 | Makeup Diary Store | 78 | DISMISSED |
| 79 | Maquiagem Cosmetic Store | 80 | mary makeup Store |
| 81 | Mellifluous Store | 82 | mesro makeup Store |
| 83 | MixFair Store | 84 | DISMISSED |
| 85 | PICK ME UP Store | 86 | Pretty Beautys Store |
| 87 | DISMISSED | 88 | Red Dieny Store |
| 89 | Shine-Makeup Store | 90 | DISMISSED |
| 91 | Shop2942211 Store | 92 | Shop3103036 Store |
| 93 | Shop3674062 Store | 94 | Shop3857092 Store |
| 95 | Shop4398029 Store | 96 | Shop4410080 Store |
| 97 | Shop4599008 Store | 98 | shoppingsouls |
| 99 | Star cool fashion beauty makeup Store | 100 | Tomorrow Store |
| 101 | Two Faced Store | 102 | VSChrome Store |
| 103 | WarmFamily | 104 | webeauty |
| 105 | DISMISSED | 106 | Women Outlet Store |
| 107 | Wondery Store | 108 | 1st.ing |
| 109 | anybestbuy | 110 | charming202018 |
| 111 | DISMISSED | 112 | disiky |
| 113 | efashionshop2018 | 114 | DISMISSED |
| 115 | fashionhome_9 | 116 | fvja6588 |
| 117 | hulushop2010 | 118 | DISMISSED |
| 119 | jigaid | 120 | DISMISSED |
| 121 | kangh18 | 122 | DISMISSED |
| 123 | mobilekits | 124 | DISMISSED |
| 125 | new-decor-led | 126 | DISMISSED |
| 127 | pomelored | 128 | rowyal |
| 129 | saverroad | 130 | sgert |
| 131 | shopuwant01 | 132 | DISMISSED |
| 133 | DISMISSED | 134 | DISMISSED |
| 135 | DISMISSED | 136 | worthbuyer |
| 137 | zxw0826 | 138 | beauty100years |
| 139 | bestielady | 140 | binbinxiao |
| 141 | chengdashop | 142 | chenlunying |
| 143 | cleeentree | 144 | Colorcloud |

| No. | Defendant Name / Alias |
|-----|------------------------|
| 145 | fanjunxi |
| 147 | fashionow |
| 149 | grapessfruit |
| 151 | lilijc shopping |
| 153 | minminnvzhuang |
| 155 | Really Interesting |
| 157 | shanghaixinshunhui |
| 159 | smalldreamer |
| 161 | DISMISSED |
| 163 | unisun |
| 165 | wuxiuhui |
| 167 | YesILike |

| No. | Defendant Name / Alias |
|-----|------------------------|
| 146 | Fashion Monkey |
| 148 | fireball |
| 150 | Hibuyshop |
| 152 | Ikkjabc |
| 154 | Miss Right Store |
| 156 | scalfphoto |
| 158 | shunzistory |
| 160 | suiliang |
| 162 | THESHIM |
| 164 | DISMISSED |
| 166 | xumeiqin |
|     | |

| No. | Defendant Marketplace URL |
|-----|---------------------------|
| 1 | aliexpress.com/store/1944831 |
| 3 | aliexpress.com/store/335082 |
| 5 | aliexpress.com/store/3257025 |
| 7 | aliexpress.com/store/3276010 |
| 9 | aliexpress.com/store/2961106 |
| 11 | aliexpress.com/store/2846072 |
| 13 | aliexpress.com/store/2804196 |
| 15 | aliexpress.com/store/2808073 |
| 17 | aliexpress.com/store/4223059 |
| 19 | aliexpress.com/store/934706 |
| 21 | aliexpress.com/store/1454059 |
| 23 | aliexpress.com/store/1982240 |
| 25 | aliexpress.com/store/4618044 |
| 27 | DISMISSED |
| 29 | aliexpress.com/store/1833547 |
| 31 | aliexpress.com/store/1333683 |
| 33 | aliexpress.com/store/2787109 |
| 35 | aliexpress.com/store/3768002 |
| 37 | aliexpress.com/store/3683067 |
| 39 | aliexpress.com/store/4152005 |
| 41 | aliexpress.com/store/1777245 |
| 43 | aliexpress.com/store/1793024 |
| 45 | aliexpress.com/store/3139046 |
| 47 | aliexpress.com/store/938447 |
| 49 | .aliexpress.com/store/2959241 |
| 51 | DISMISSED |

| No. | Defendant Marketplace URL |
|-----|---------------------------|
| 2 | aliexpress.com/store/4239029 |
| 4 | aliexpress.com/store/4134009 |
| 6 | DISMISSED |
| 8 | DISMISSED |
| 10 | aliexpress.com/store/1241405 |
| 12 | aliexpress.com/store/2346259 |
| 14 | aliexpress.com/store/1945379 |
| 16 | aliexpress.com/store/1726310 |
| 18 | DISMISSED |
| 20 | aliexpress.com/store/2179027 |
| 22 | aliexpress.com/store/3223129 |
| 24 | aliexpress.com/store/3092083 |
| 26 | aliexpress.com/store/4411041 |
| 28 | DISMISSED |
| 30 | aliexpress.com/store/2664208 |
| 32 | aliexpress.com/store/2945169 |
| 34 | aliexpress.com/store/1110720 |
| 36 | aliexpress.com/store/3872019 |
| 38 | aliexpress.com/store/908839 |
| 40 | aliexpress.com/store/136475 |
| 42 | aliexpress.com/store/4652134 |
| 44 | DISMISSED |
| 46 | aliexpress.com/store/3202015 |
| 48 | aliexpress.com/store/2892022 |
| 50 | aliexpress.com/store/3202061 |
| 52 | aliexpress.com/store/727200 |

| No. | Defendant Marketplace URL | No. | Defendant Marketplace URL |
|---|---|---|---|
| 53 | aliexpress.com/store/526261 | 54 | aliexpress.com/store/4398032 |
| 55 | aliexpress.com/store/4380019 | 56 | aliexpress.com/store/1849697 |
| 57 | aliexpress.com/store/3146006 | 58 | aliexpress.com/store/2663169 |
| 59 | aliexpress.com/store/2493001 | 60 | aliexpress.com/store/4423022 |
| 61 | aliexpress.com/store/2987004 | 62 | aliexpress.com/store/3216076 |
| 63 | aliexpress.com/store/100071 | 64 | aliexpress.com/store/4035013 |
| 65 | aliexpress.com/store/1212387 | 66 | aliexpress.com/store/2960242 |
| 67 | aliexpress.com/store/2412096 | 68 | aliexpress.com/store/1846158 |
| 69 | aliexpress.com/store/718137 | 70 | aliexpress.com/store/431207 |
| 71 | aliexpress.com/store/4428162 | 72 | DISMISSED |
| 73 | aliexpress.com/store/1793028 | 74 | aliexpress.com/store/4428184 |
| 75 | aliexpress.com/store/2847028 | 76 | aliexpress.com/store/2899018 |
| 77 | aliexpress.com/store/1962140 | 78 | DISMISSED |
| 79 | aliexpress.com/store/2917009 | 80 | aliexpress.com/store/4446044 |
| 81 | aliexpress.com/store/4377031 | 82 | aliexpress.com/store/2224084 |
| 83 | aliexpress.com/store/2952105 | 84 | DISMISSED |
| 85 | aliexpress.com/store/2955069 | 86 | aliexpress.com/store/4239020 |
| 87 | DISMISSED | 88 | aliexpress.com/store/1929321 |
| 89 | aliexpress.com/store/2798158 | 90 | DISMISSED |
| 91 | aliexpress.com/store/2942211 | 92 | aliexpress.com/store/3103036 |
| 93 | aliexpress.com/store/3674062 | 94 | aliexpress.com/store/3857092 |
| 95 | aliexpress.com/store/4398029 | 96 | aliexpress.com/store/4410080 |
| 97 | aliexpress.com/store/4599008 | 98 | aliexpress.com/store/1804712 |
| 99 | aliexpress.com/store/4046106 | 100 | aliexpress.com/store/1231833 |
| 101 | aliexpress.com/store/4050010 | 102 | aliexpress.com/store/1667578 |
| 103 | aliexpress.com/store/1161791 | 104 | aliexpress.com/store/1216104 |
| 105 | DISMISSED | 106 | aliexpress.com/store/3515096 |
| 107 | aliexpress.com/store/2805128 | 108 | ebay.com/usr/1st.ing |
| 109 | ebay.com/usr/anybestbuy | 110 | ebay.com/usr/charming202018 |
| 111 | DISMISSED | 112 | ebay.com/usr/disiky |
| 113 | ebay.com/usr/efashionshop2018 | 114 | DISMISSED |
| 115 | ebay.com/usr/fashionhome_9 | 116 | ebay.com/usr/fvja6588 |
| 117 | ebay.com/usr/hulushop2010 | 118 | DISMISSED |
| 119 | ebay.com/usr/jigaid | 120 | DISMISSED |
| 121 | ebay.com/usr/kangh18 | 122 | DISMISSED |
| 123 | ebay.com/usr/mobilekits | 124 | DISMISSED |
| 125 | ebay.com/usr/new-decor-led | 126 | DISMISSED |
| 127 | ebay.com/usr/pomelored | 128 | ebay.com/usr/rowyal |
| 129 | ebay.com/usr/saverroad | 130 | ebay.com/usr/sgert |
| 131 | ebay.com/usr/shopuwant01 | 132 | DISMISSED |

| No. | Defendant Marketplace URL | No. | Defendant Marketplace URL |
|---|---|---|---|
| 133 | DISMISSED | 134 | DISMISSED |
| 135 | DISMISSED | 136 | ebay.com/usr/worthbuyer |
| 137 | ebay.com/usr/zxw0826 | 138 | wish.com/merchant/ 592794cd63826c41eda696a6 |
| 139 | wish.com/merchant/ 52421a4c5aefb0148ca30bb1 | 140 | wish.com/merchant/ 5928f323fc9cce0fd290cfed |
| 141 | wish.com/merchant/ 59dc74c7b0a09e3dd1818b6a | 142 | wish.com/merchant/ 584bcdcf2c9bcc4c97fe7748 |
| 143 | wish.com/merchant/ 5972a87ee534480b69e99b2f | 144 | wish.com/merchant/ 597e959eec40ae58a10d377c |
| 145 | wish.com/merchant/ 59ea0e2de6503330d128fb1a | 146 | wish.com/merchant/ 547d6c355c47450f67c70754 |
| 147 | wish.com/merchant/ 599d4f9e90a0f11dbd4029ef | 148 | wish.com/merchant/ 57ea22b9f22a04472ece6d61 |
| 149 | wish.com/merchant/ 5b87717f6cff99085986df2a | 150 | wish.com/merchant/ 57dce5cbd7ae491066172552 |
| 151 | wish.com/merchant/ 57cfce9c7e10335a59ffecab | 152 | wish.com/merchant/ 5b56a6155d643e16ba8eaf0d |
| 153 | wish.com/merchant/ 58e4ee1bfbfadd10577aea9b | 154 | wish.com/merchant/ 57b8844271206621c0e5063f |
| 155 | wish.com/merchant/ 59449ee18b96023556ad2a69 | 156 | wish.com/merchant/ 598d6647eea5c53090e280ca |
| 157 | wish.com/merchant/ 59de2b969aee093d378db549 | 158 | wish.com/merchant/ 5a323ead7f9ae5578b1e3477 |
| 159 | wish.com/merchant/ 58ec9c1ed2812f144fa13b11 | 160 | wish.com/merchant/ 584a4f922f5e531e7662cdfc |
| 161 | DISMISSED | 162 | wish.com/merchant/ 576c8f4a9307ad6bb3c3ef5d |
| 163 | wish.com/merchant/ 5816f16c9357ed198beeab0b | 164 | DISMISSED |
| 165 | wish.com/merchant/ 589f289c42f60e5109ae03b3 | 166 | wish.com/merchant/ 58df6f9f2f3d176561257bcf |
| 167 | wish.com/merchant/ 58afd95cf512505051344b98 | | |

Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d...

2010 WL 199906

🔖 KeyCite Yellow Flag - Negative Treatment

Distinguished by LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,
S.D.N.Y., September 13, 2016

2010 WL 199906
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

BURBERRY LIMITED AND
BURBERRY USA, Plaintiffs,
v.
DESIGNERS IMPORTS, INC.,
d/b/a Designers Imports.Com
USA, Inc., Defendant.

No. 07 Civ. 3997(PAC).
|
Jan. 19, 2010.

West KeySummary

1    **Trademarks** 👈 Counterfeiting
     **Trademarks** 👈 Imports and Exports

Designer was entitled to relief on its
claim that importer committed trademark
counterfeiting and infringement under the
Lanham Act through its unauthorized use of
designer's trademarks. The parties stipulated that
designer had valid registered marks entitled
to protection under the Act. Importer offered
for sale and sold merchandise displaying
spurious designations that were identical to, or
substantially indistinguishable from, designer's
famous, registered trademarks on goods for
which designer trademarks were registered.
Lanham Act, § 32(1)(a), 15 U.S.C.A. § 1114(1)
(a).

*ORDER*

Honorable PAUL A. CROTTY, District Judge.

**NATURE OF THE CASE**

 **\*1** On May 22, 2007, Plaintiffs Burberry Limited and
Burberry USA ("Burberry" or "Plaintiffs") commenced
this action against defendants Designers Imports, Inc. d/
b/a Designers Imports.Com USA, Inc. ("Designers" or
"Defendant"). Their Amended Complaint, filed June 5, 2007,
alleges that Defendant used, sold, and advertised merchandise
bearing three counterfeit Burberry registered trademarks: the
Burberry name, the Burberry Check design, and the Burberry
"Equestrian Knight" on horseback device.

Burberry brings claims of trademark counterfeiting and
infringement pursuant to 15 U.S.C. § 1114(1)(a); false
designation of origin and trademark dilution pursuant to 15
U.S.C. § 1125(a)(1) (A); common law claims for breach
of contract and unjust enrichment; trademark infringement
and unfair competition in violation of New York common
law; and trademark dilution pursuant to 15 U.S.C. § 1125(c);
likelihood of injury to business reputation pursuant to New
York General Law Section 360–1; and deceptive acts and
practices pursuant to New York General Law Section 349.
Burberry seeks statutory damages and attorneys' fees and
costs, and various forms of injunctive relief, including
a permanent injunction barring Defendant from selling
Burberry-branded merchandise.

Defendant claims half-heartedly that it did not sell counterfeit
Burberry-branded merchandise, but its real argument is that
it was an innocent infringer whose actions were not willful
and were not the product of willful blindness. Defendant also
claims that Burberry has not come to Court with clean hands
and so Burberry is not entitled to damages, attorney's fees or
costs.

**WAIVER OF JURY AND TRIAL**

The parties waived jury trial, and the Court conducted a
bench trial on September 14 and 15, 2009. The Court heard
the testimony of witnesses from Burberry and Defendant
and considered the exhibits received in evidence, as well as
designated portions of depositions. The parties stipulated to
the following facts in the jointly-submitted pretrial order:
1. Plaintiff Burberry Limited is a corporation duly organized
and existing under the laws of the United Kingdom with a

Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d...

2010 WL 199906

principal place of business at Horseferry House, Horseferry Road, London SW1P 2AW, United Kingdom.

2. Plaintiff Burberry USA, a sister company of Plaintiff Burberry Limited, is located at 444 Madison Avenue, New York, N.Y. 10022. Burberry USA enforces in North America the trademarks owned by Burberry Limited. Burberry Limited, Burberry USA, and their predecessor are herein referred to collectively as "Burberry."

3. Burberry has continuously used the BURBERRY® word mark in commerce since 1856.

4. Burberry introduced the BURBERRY CHECK trademark in its original distinctive red, camel, black and white check design in the 1920's. Burberry has continuously used the BURBERRY CHECK in both the original colors and other distinctive color combinations for over three-quarters of a century.

5. Burberry has continuously used the Burberry equestrian knight on horseback (the "EQUESTRIAN KNIGHT DESIGN") on numerous products since 1901.

  *2  6. Burberry USA is the exclusive importer and distributor in the United States of BURBERRY® merchandise that bears the BURBERRY® mark, the BURBERRY CHECK, and/ or the EQUESTRIAN KNIGHT DESIGN (collectively, the "Burberry Trademarks"). Burberry has used the Burberry Trademarks on, and in connection with, the advertising and sale of Burberry's products, including, but not limited to, scarves, swimwear, coats, jackets, polo shirts, handbags, and t-shirts in interstate and intrastate commerce, including commerce in the State of New York and in this judicial district.

7. Burberry Limited owns the following valid and enforceable U.S. trademark registrations for the BURBERRY® word mark, among others: U.S. Reg. No. 260,843; U.S. Reg. No. 510,077; U.S. Reg. No. 1,133,122; and U.S. Reg. No. 3,202,484. These registrations are incontestable pursuant to 15 U.S.C. § 1065.

8. The BURBERRY word mark is famous within the meaning of 15 U.S.C. § 1125(c).

9. The BURBERRY word mark was famous within the meaning of 15 U.S .C. § 1125(c) prior to Defendant's use and/ or sale of the items in dispute in this litigation.

10. Burberry Limited owns the following valid and enforceable U.S. trademark registrations for the BURBERRY CHECK trademark, among others: U.S. Reg. No. 1,241,222; U.S. Reg. No. 2,732,617; and U.S. Reg. No. 2,022,789. These restrictions are incontestable pursuant to 15 U.S.C. § 1065.

11. The BURBERRY CHECK trademark is famous within the meaning of 15 U.S.C. § 1125(c).

12. The BURBERRY CHECK trademark was famous within the meaning of 15 U.S.C. § 1125(c) prior to Defendant's use and/or sale of the items in dispute in this litigation.

13. Burberry Limited owns the following valid and enforceable U.S. trademark registrations for the EQUESTRIAN KNIGHT DESIGN trademark, among others: U.S. Reg. No. 863,179; and U.S. Reg. No. 2,512,119. These registrations are incontestable pursuant to 15 U.S.C. § 1065.

14. The EQUESTRIAN KNIGHT DESIGN trademark is famous within the meaning of 15 U.S.C. § 1125(c).

15. The EQUESTRIAN KNIGHT DESIGN trademark was famous within the meaning of 15 U.S.C. § 1125(c) prior to Defendant's use and/or sale of the items in dispute in this litigation.

16. Defendant Designers Imports, Inc. d/b/a Designers Imports.com USA, Inc. is a New York corporation located at 11 Lake Street, No. 201, Monroe, New York 10950 and/or 1117 Route 17M, Suite 2, Monroe, New York 10950.

17. Since at least as early as 2003, Designers has continuously sold apparel and accessories online, including at its website located at www.designersimports.com.

18. Asher Horowitz is the owner and Chief Operating Officer of Designers.

19. Mr. Horowitz is the only officer of Designers, its only Director, and its sole shareholder.

20. Mr. Horowitz sets the price for the goods that his business sells. He also decides what will be displayed on www.designersimports.com.

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 18 of 144 PageID #:3277

Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d...

2010 WL 199906

21. Mr. Horowitz sets his own salary and makes sure that bills at the company are paid.

**\*3** 22. Designers cannot allocate a portion of its expenses to its sale of Burberry-branded items.

23. Mr. Horowitz was aware of BURBERRY products before he founded Designers.

24. Since at least as early as 2003, Designers has sold or offered for sale products that display one or more of the Burberry Trademarks that were not purchased directly from Burberry or one of its authorized retailers.

25. Designers has purchased keywords containing the BURBERRY trademark from Google's Pay Per Click program such as "Burberry," "Burberry scarf or scarves, "Burberry jacket," and "Burberry handbag." Designers purchased similar advertising from Yahoo, including the keyword "Burberry scarf." When potential customers shop online for Burberry products, they are automatically referred to the Designers website.

26. Mr. Horowitz is the only person who decides what Burberry-branded goods Designers will sell on its website.

27. Designers' suppliers include "Moda Oggi." Moda Oggi has since been sued as a third party by Burberry for selling counterfeit Burberry-branded products, and Burberry prevailed on summary judgment against Moda Oggi on this and related claims on June 10, 2009. *See Burberry Limited, et al. v. Euro Moda, Inc., et al.,* Civil Docket for Case No. 1:08–cv–05781–CM, 2009 WL 1675080 (S.D.N.Y. June 10, 2009);

28. On April 12, 2005, Burberry and Designers entered into a settlement agreement ("Settlement Agreement") regarding Designers' sales of items that Burberry contented were counterfeit. The agreement was amended on May 4, 2005. The agreement was received in evidence (Ex. 185).

29. After the agreement was signed, Burberry bought products from Defendant to determine whether it was complying with the agreement.

30. On February 23, 2006, Burberry's attorney sent a letter to Defendant's attorney contending that Designers sold two counterfeit scarves that infringed the Burberry Trademarks. Designers' lawyer responded that the goods were purchased from a Burberry store and that the goods were not counterfeit.

31. On March 8, 2006, Burberry's lawyer sent another letter to Defendant's counsel contending that Designers sold a counterfeit bikini and three counterfeit polo shirts that infringed the Burberry Trademarks. Designers' counsel responded (Ex. 177).

32. On May 9, 2007, Burberry's attorney sent a letter to Defendant's counsel contending that Designers sold two counterfeit quilted coats and two counterfeit white shirts with check trim that infringed the Burberry Trademarks. Designers' counsel responded (Ex. 178).

33. On July 9, 2007, Burberry's attorney sent a letter to Defendant's counsel contending that Designers sold two counterfeit scarves that infringed the Burberry Trademarks. Defendant's counsel received this letter (Ex. 179).

34. Investigators acting on behalf of Burberry purchased the following Burberry-branded articles of clothing from Designers' website, www.designersimports.com (the "Purchased Goods"):

   **\*4** • One bikini with check trim purchased on March 1, 2006;

   • Three polo shirts, one each in white, black, and gray purchased on March 1, 2006;

   • One "Constance" padded jacket purchased on February 7, 2007;

   • A second padded jacket, in the longer "Langford" style, purchased on April 7, 2007;

   • One cashmere "Baby Blue Happy Scarf" and one cashmere "Classic Plaid Scarf," purchased on June 9, 2007;

   • One "Nova Check Cashmere Scarf" purchased on October 11, 2007;

   • One cashmere Cream–White Check "Plaid Mini Scarf" purchased on April 7, 2008; and

   Two white t-shirts with checked trim purchased on February 7, 2007 and April 7, 2007.

35. Designers shipped the Purchased Goods to Burberry's investigators.

Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d...
2010 WL 199906

36. Burberry's investigators shipped the Purchased Goods to Burberry at its New York offices.

37. An employee in Burberry's New York office received the Purchased Goods.

38. On June 28, 2005, Kate McKinnon, an Investigator for Abacus Security, sent three (3) Burberry-branded handbags that had been purchased from Designers to Burberry's New York Office. Burberry determined that these three (3) handbags were not counterfeit, but rather genuine.

39. On December 15, 2005, Ayodele Akingbade, an Investigator for Abacus Security, sent three (3) Burberry-branded handbags that had been purchased from Designers to Burberry's New York Office. Burberry determined that these three (3) handbags were not counterfeit, but rather genuine.

**ISSUES AT TRIAL AND FINDINGS OF FACT**

Defendant stipulated to the counterfeit nature of substantially all of the products that Burberry found to be counterfeit, except for two scarves, purchased in December, 2005. Accordingly, Burberry had two goals at trial: (a) to establish that Defendants were the source of the counterfeit products; and (b) to establish that Defendant's violations were willful or the result of willful blindness. Defendant's goal was to minimize its damages to the extent possible.

**a. Proof Regarding the Source of Products**

Burberry engaged a series of investigators to buy certain products from Defendant and submit these products, along with the packing slips, invoices, and shipping information, to Burberry (Trial Tr. 95–100). Burberry would then attach a security tag bearing a unique number to these products, photograph the products, and prepare a chain of custody form (Trial Tr. 95–96). The chain of custody form listed the source of the product, the date of receipt, and the date the recipient sent the product to another party (Trial Tr. 96). For everything but the most obvious counterfeits, Burberry would ship the suspect products to its London office, where Burberry's expert would examine them and determine whether a product was genuine or counterfeit (Trial Tr. 98).

Burberry submitted twenty products for their expert to review (Trial Tr. 41, 46). Burberry's expert found that six products (all handbags) were genuine but that the balance of fourteen were counterfeit (Trial Tr. 36, 42, 44). As previously indicated, Defendant does not contest the counterfeit nature of twelve of the fourteen products.

**\*5** Defendant does contend, however, that two of the Burberry expert's counterfeit determinations were erroneous: the determinations relating to a blue "happy" scarf and a check cashmere scarf, both purchased in December, 2005 (Trial Tr. 248–52). Mr. Horowitz testified that he suspected that J. Burke was a possible investigator for Burberry when he saw Burke's name on an order for two scarves and a coat (Trial Tr. 248, 271–72). While Defendant was aware that Burberry scarves in stock at the time, Designers was aware that Burberry was monitoring its compliance with the Settlement Agreement, so Mr. Horowitz enlisted his wife to buy two Burberry scarves from a Burberry store in Boca Raton, Florida (Trial Tr. 249). Mr. Horowitz filled Mr. Burke's order with the two scarves his wife had purchased (Trial Tr. 249–51). Burberry tested these scarves and found them to be counterfeit (Trial Tr. 251–52). Mr. Horowitz challenges Burberry's determinations (Trial Tr. 251–52).

Since Burberry's findings on the two scarves were erroneous, Defendant argues that Burberry's twelve other determinations of counterfeit must be wrong as well. Defendant's argument is *falsus in uno; falsus in omnibus;* but that is inconsistent with Defendant's stipulation that it had no factual basis for challenging Burberry's other determinations. Even if Burberry's determinations regarding the two scarves were incorrect, moreover, this would not impair the validity of Burberry's separate determinations made at different times, on twelve different products, that the Defendant's goods were in fact counterfeit. Finally, Defendant did not establish that the determinations were wrong: Defendant cannot prove that it sent Mr. Burke the two authentic Burberry scarves that Mrs. Horowitz purchased in the Boca Raton Burberry store.

Based on the routine procedures Burberry took to protect its trademarks, and its carefully devised and methodically applied procedures to test the authenticity of Burberry-branded merchandise, the Court finds that Designers sold the following twelve items of counterfeit merchandise to Burberry:

*Date of Purchase*                  *Goods Sold*

March 1, 2006                       1. Bikini

Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d...

2010 WL 199906

| | |
|---|---|
| | 2. White Polo Shirt |
| | 3. Black Polo Shirt |
| | 4. Gray Polo Shirt |
| February 7, 2007 | 5. "Constance" Jacket |
| | 6. White Shirt—Checked Trim |
| April 7, 2007 | 7. Quilted Langford Coat |
| | 8. White Shirt—Checked Trim |
| | 9. Cashmere Cream–White Check Mini Scarf |
| June 9, 2007 | 10. Cashmere Baby Blue Happy Scarf |
| | 11. Cashmere Classic Plaid Scarf |
| October 11, 2007 | 12. Nova Check Cashmere Scarf |

**b. Proof of Defendant's Willfulness or Willful Blindness**

Burberry has demonstrated Defendant's willfulness based on its conduct spanning several years during which Defendant repeatedly sold a variety of counterfeit Burberry merchandise. In addition to the April 2005 Settlement Agreement (Ex. 185), Burberry submitted a series of letters and emails proving that it repeatedly placed Defendant on notice that Defendant was violating the trademark law by selling counterfeit Burberry merchandise (Ex. 177–79). Additionally, Mr. Horowitz testified that, even after the Settlement Agreement, he occasionally purchased Burberry items from anonymous internet vendors and from vendors whose last names he did not know (Trial Tr. 282–84). Mr. Horowitz also testified that he did not always question his vendors about the source of their Burberry merchandise (Trial Tr. 284–85); that he used suppliers whose goods had been seized by the Customs Department (Trial Tr. 286–87; 289–90; 292–93); and that he purchased a substantial amount of Burberry goods from Moda Oggi, a known seller of counterfeit merchandise (Trial Tr. 295). In fact, the United States Customs Service repeatedly notified Defendant that it was seizing Burberry-branded goods addressed to Designers because the goods were counterfeit (Exs. 223–25; 302–05).

**\*6** Defendant introduced testimony, however, that mitigates the willfulness of his trademark violations. Mr. Horowitz testified, for example, that he often traveled overseas to purchase branded merchandise (Trial Tr. 242); that he visited the offices of his suppliers (Trial Tr. 242); that, following the Settlement Agreement, he ceased selling items that Burberry claimed were counterfeit (Trial Tr. 248); that he generally complied with his obligations under the Settlement Agreement (Trial Tr. 247–48; 300–01); that all the Burberry items he currently sells originated in Burberry outlet centers (Trial Tr. 254); that all the non-Burberry branded produces he recently added to his website originated with authorized distributors or manufacturers (Trial Tr. 257); that he made numerous, sincere efforts to authenticate his merchandise before offering them for sale (Trial Tr. 277–82; 288–89; 292); and that he was unaware that Moda Oggi was a seller of counterfeit items (Trial Tr. 295). Defendant also introduced a supplier's deposition testimony, stating that Mr. Horowitz insisted on buying only authentic goods (Trial Tr. 304–06).

**CONCLUSIONS OF LAW**

The Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction under 28 U.S.C. § 1367(a).

Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d...

2010 WL 199906

*Trademark Counterfeiting and Infringement under the Lanham Act (Counts I and II)*

Burberry alleges that Defendant committed trademark counterfeiting and infringement under section 32(1)(a) of the Lanham Act through its unauthorized use of the Burberry trademarks. Section 32(1)(a) of the Lanham Act provides that a person shall be civilly liable if, without the registrant's consent, such person:

> use[s] in commerce any reproduction, counterfeit, or copy or colorable limitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

Defendant is liable for trademark counterfeiting and infringement if Burberry establishes that: (1) Burberry had valid registered marks entitled to protection under the Lanham Act; and (2) Defendant used a similar mark in commerce in a way that would likely cause confusion among the relevant consuming public. *Cartier Int'l B.V. v. Ben–Menachem,* 2008 WL 64005, at *10 (S.D.N.Y. Jan.3, 2008).

Burberry has met its burden. The parties stipulated that Burberry had valid registered marks entitled to protection under the Lanham Act. These marks include the BURBERRY® word mark; the BURBERRY CHECK mark; and the EQUESTRIAN KNIGHT DESIGN. Defendant has offered for sale and has sold merchandise displaying spurious designations that are identical to, or substantially indistinguishable from, Burberry's famous, registered trademarks on goods for which Burberry trademarks are registered, including: a bikini; a jacket; a coat; five shirts; and four scarves. Defendant intentionally used these spurious designations without authorization and in connection with the advertising, sale, offering for sale and distribution of goods for its own financial gain.

 **\*7** Defendant's use of the Burberry trademarks is likely to cause confusion among the relevant consuming public. To determine whether confusion is likely to arise, a court need only determine that the items at issue are counterfeit and that

Defendant distributed, offered for sale, and sold the items. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 287 (S.D.N.Y.2003).

The Court finds that Defendant is liable for trademark counterfeiting and infringement.

*False Designation of Origin, Trade Name, Infringement, and False Description and Representation under the Lanham Act (Count III)*

The Court also finds Defendant liable under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A):

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, terms, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to "deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person....

Having established its claim for federal trademark infringement under Section 32, it is unnecessary for the plaintiff to make any additional showing to satisfy Section 43(a). *Russian Kurier, Inc. v. Russian Am. Kurier, Inc.,* 899 F.Supp. 1204, 1208 (S.D.N.Y.1995).

*Trademark Dilution under the Lanham Act and Dilution and Likelihood of Injury under Section 360–1 of N.Y. Gen. Bus. Law (Counts IV and VI)*[1]

A trademark holder claiming dilution under 15 U.S.C. § 1125(c) must show that: (1) the senior mark is famous; (2) the defendants are making commercial use of the junior mark in commerce (under the Federal Trademark Dilution Act, the "FTDA") or use of the junior mark in commerce (under the Trademark Dilution Revision Act of 2006, the "TDRA"); (3) defendant's use of the junior mark began after the senior mark became famous; and (4) actual dilution (under the FTDA) or a likelihood of dilution (under the TDRA). *See e.g., Malletier v. Dooney & Bourke, Inc.,* 561 F.Supp.2d 368, 380–81 (S.D.N.Y.2008).

Plaintiffs have met their burden on their trademark dilution claim, based on the parties' stipulations: the fame of Burberry's mark; Defendant's commercial use of Burberry's mark in commerce; and Defendant's use of Burberry's mark

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 22 of 144 PageID #:3281

Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d....

2010 WL 199906

subsequent to Burberry's mark becoming famous. Further, Burberry has established a presumption of actual and likely dilution by showing that Defendant's used counterfeit marks that were identical to the Burberry trademarks. *See Savin Corp. v. Savin Corp.,* 391 F.3d 439, 452–53 (2d Cir.2005).

Dilution by tarnishment reflects an "association arising from the similarity between a mark or a trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c). Defendant tarnished Burberry's marks by using them on inferior products (Tr. 18:23–22:19; 36:17–37:4). *See e.g., Hormel Foods v. Jim Henson Products, Inc.* 73 F.3d 497, 507 (2d Cir.1996) (a trademark may be tarnished when linked to products of shoddy quality). Accordingly, the Court finds Defendant liable for trademark dilution by tarnishment under both the FTDA and the TDRA.

**\*8** Since Burberry has established that (1) the Burberry trademarks are famous, and (2) there is a likelihood of dilution, Defendants are also liable under New York State Business Law § 360–1 for dilution and likelihood of injury to business reputation. *See Malletier,* 561 F.Supp.2d at 381.

### Deceptive Acts and Practices under New York Law (Count V)

New York General Business Law § 349 forbids "[d]eceptive acts and practices." Burberry has satisfied the three-factor test for establishing a § 349 violation: (1) that Defendant engaged in a consumer-oriented act (sale of Burberry-branded merchandise); (2) that was misleading in a material way (the products were counterfeit); and (3) Burberry suffered injury. *See Vitabiotics, Ltd. V. Krupka,* 606 F.Supp. 779, 785 (E.D.N.Y.1984) (sale of infringing products creates presumption of injury under Section 349). Accordingly, the Court finds Defendant liable under Section 349 of the New York General Business Law.

### Trademark Infringement and Unfair Competition under New York Common Law (Counts VII and VIII)

The New York common law on trademark infringement and unfair competition claims mirrors the Lanham Act. To prevail on its common law claim of trademark infringement, Burberry need only present evidence sufficient to establish a violation of section 32(1) of the Lanham Act. *Standard & Poor's Corp., Inc. v. Commodity Exch., Inc. .,* 683 F.2d 704, 708 (2d Cir.1982). Since Burberry has established liability under the Lanham Act, it has also established liability under New York's common law of trademark infringement.

The same principle is applicable to the New York State unfair competition claim. A claim under the Lanham Act, coupled with a showing of bad faith or intent, establishes a claim for unfair competition. *Girl Scouts of U.S.A. v. Bantam Doubleday Dell Publ'g Group, Inc.,* 808 F.Supp. 1112, 1131 (S.D.N.Y.1992). Use of a counterfeit mark creates a presumption of bad faith under New York law. *Philip Morris U.S.A., Inc. v. Filizardo,* 2004 WL 1375277 (S.D.N.Y. June 18, 2004), at \*6. Accordingly, Burberry's evidence of Defendant's sale of counterfeit Burberry-branded merchandise creates a presumption of bad faith, satisfying the elements of Burberry's common law unfair competition claim.

### Common Law Breach of Contract (Count IX)

The April 12, 2005 Settlement Agreement is governed by New York law (Ex. 185 ¶ 11). The parties do not dispute the existence or validity of the April 12, 2005 Settlement Agreement, nor does Defendant argue that Burberry failed to perform under the Settlement Agreement.

Burberry has also established Defendant's non-performance. Paragraph 2.6 of the Settlement Agreement provides that Defendant will not "knowingly infringe or dilute Burberry's trademarks." The same paragraph defines "knowingly" as occurring when Defendant "knows or should have known that their actions violate Burberry's trademark rights."

**\*9** The Court has already found that Defendant committed trademark infringement. It now finds that the same infringing conduct establishes a breach of contract. *See e.g., Heisman Trophy Trust v. Smack Apparel Co.,* 595 F.Supp.2d 320, 329 (S.D.N.Y.2009) (evidence of trademark infringement shows the likelihood of success on breach of settlement agreement claim).

Regarding damages, Section 12 of the Settlement Agreement contains a liquidated damages clause providing that Defendant is obligated to pay "$1,500.00 per day for each day a breach occurs."

Defendant's breach of contract liability, however, is limited to violations that occurred prior to Burberry's commencement of the lawsuit. Under New York's doctrine of the election of remedies, when a party breaches a contract, the adverse party has to make an election: to either treat the entire contract as breached and pursue damages for the breach or, alternatively, to reject the proposed breach, demand performance, and continue to treat the contract as valid. *See e.g., Inter–Power of*

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 23 of 144 PageID #:3282
Burberry Ltd. and Burberry USA v. Designers Imports, Inc., Not Reported in F.Supp.2d...
2010 WL 199906

*New York Inc. v. Niagara Mohawk Power Corp.,* 259 A.D.2d 932, 934, 686 N.Y.S.2d 911 (3d Dept.1999).

Accordingly, Defendant is liable only for trademark violations occurring prior to May 22, 2007, the date Burberry commenced this lawsuit. These pre-commencement violations include nine of the twelve items: the four items Defendant sold on March 1, 2006 (Bikini; White Polo Shirt; Black Polo Shirt; and Gray Polo Shirt); the two items Defendant sold on February 7, 2007 (the "Constance" Jacket and the White Shirt—Checked Trim); and the three items Defendant sold on April 7, 2007 (the Quilted Langford Coat; the White Shirt–Checked Trim; and the Cashmere Cream– White Check Mini Scarf).

***Common Law Unjust Enrichment (Count X)***

The Court dismisses Burberry's unjust enrichment claim because a party cannot prevail on remedies under both contract and quasi-contract theories. *See e.g., Clark– Fitzpatrick, Inc. v. Long Is. R.R. Co.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment).

***Defendant's Willfulness or Willful Blindess***

The Court finds that Defendant acted willfully in selling twelve counterfeit Burberry-branded items of merchandise. Actual knowledge is not necessary for willful trademark infringement liability; rather, "[i]nfringement is willful when the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Hermes Int'l v. Kiernan,* 2008 WL 4163208, at *3 (E.D.N.Y. Aug.28, 2008).

Here, Burberry established Defendant's willfulness by demonstrating a course of conduct spanning several years during which Defendant repeatedly sold a variety of counterfeit Burberry merchandise. Defendant repeatedly and knowingly violated its obligations under the Settlement Agreement. Defendant willfully failed to investigate the bona fides of Burberry-branded goods it purchased for sale and by failing to implement procedural safeguards against the sale of counterfeit goods. When Defendant became aware that Burberry, through its agent J. Burke, placed a test order for Burberry items, Defendant did not fill the order from its own inventory, but rather sent Mrs. Horowitz to an authorized Burberry store to purchase items to fill the order. This is further evidence that Defendant was not confident in the authenticity of its own Burberry-branded inventory. Accordingly, the Court finds that Defendant's trademark violations were willful.

**\*10** Defendant, however, has introduced some evidence of compliance with the terms of the Settlement Agreement and of some level of diligence. These factors mitigate the degree of Defendant's willfulness.

## DAMAGES

The Court asked the parties to provide summations of their damages. Burberry claimed statutory damages under 15 U.S.C. § 1117(c) in the amount of $6.5 million (Dkt. # 30, at 2, 10). Defendants argued that its maximum exposure is $18,000 (Dkt. # 32 at 13).

Section 15 U.S.C. § 1117(c) provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (2004) (amended 2008).[2]

In determining the amount of statutory damages, courts consider several factors, including:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

2010 WL 199906

*Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.* 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006).

Several of these factors support a substantial award. Defendant has acted willfully in selling twelve counterfeit Burberry-branded items of merchandise. Burberry's trademarks are highly valuable and of worldwide renown. The goal of deterring others from similar conduct requires a significant award. *Louis Vuitton Malletier, S.A. v. LY USA,* 2008 WL 5637161, at *2 (S.D.N.Y. Oct.3, 2008). A large award is also necessary because the Settlement Agreement failed to deter Defendant and because of Defendant's ability to reach a vast customer base through internet advertising. *See e.g., Rolex Watch U.S.A., Inc. v. Jones,* 2002 WL 596354, at *5 (S.D.N.Y. Apr.17, 2002).[3]

There are other factors which mitigate the degree of Defendant's willfulness. Defendant cooperated in providing financial records. These records indicate that Defendant reported sales of $4,276,581 for Burberry-branded merchandise sold between March 29, 2005 and June 26, 2008 (Ex. 308). Defendant also reported net income of $1,158,295 for scarves, shorts, jackets, and coats sold between March 29, 2005 and May 13, 2008 (Ex. 220).[4] Burberry-branded merchandise, however, represented only a percentage of Defendant's entire business, and not all Burberry-branded items were counterfeit .[5] Finally, few courts have awarded maximum statutory damages on the basis of a per mark, per type of good calculation. *See e.g., Gucci Am., Inc. v. MyReplicaHandbag.com,* 2008 WL 512789, at *5 (S.D.N.Y. Feb.26, 2008) (collecting cases to note that "[M]ost judges have issued awards well below the maximum available on the basis of per-mark-per-type-of-goods").

**\*11** Having considered all relevant factors, the Court awards Burberry statutory damages in the amount of $1,500,000. This amount represents $100,000 per mark per types of goods sold. Specifically, Defendant infringed three of Burberry's registered trademarks (the Burberry name, the Burberry Check design, and the Burberry "Equestrian Knight" on horseback device) and sold five types of counterfeit Burberry-branded merchandise (Bikini; Shirts; Jacket; Coat; and Scarves). An award of $100,000 per mark per type of good sold totals $1,500,000.

Since there was willful infringement and no "extenuating circumstances," the Court allows Burberry attorneys' fees and costs, as required by 15 U.S.C. § 1117(b). *Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 170 (S.D.N.Y.1999). Burberry's counsel should submit an

itemized fee application, supported by time-sheets, along with a statement of the nature of the work performed, as well as explanations of each attorney's expertise and any other relevant factors. *See e.g., Pressman v. Estate of Steinworth,* 886 F.Supp. 365, 367 (S.D.N.Y.1999).

## INJUNCTIVE RELIEF

Section 34(a) of the Lanham Act provides for injunctive relief to prevent trademark violations "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Courts may grant permanent injunctions where a plaintiff demonstrates actual success on the merits and irreparable harm. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d at 290. As indicated, Burberry has established success on the merits. Burberry has also established irreparable harm by establishing a likelihood of confusion. *See Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997). Accordingly, the Court permanently enjoins Defendant from infringing on any Burberry trademarks.

The Court denies Burberry's request to completely bar Defendant from selling Burberry goods. Defendant may continue to participate in the secondary market provided Defendant sells only legitimate products. In light of Defendant's continuing pattern of trademark infringement, however, any further violation of the injunction will result in Defendant's being permanently enjoined from selling, offering for sale, advertising, or distributing any Burberry-branded merchandise.

## CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law. Defendant is liable to Burberry for a total of $1,500,000 in statutory damages. Defendant is further liable for Burberry's reasonable attorneys' fees and costs, in an amount to be determined by the Court, after Burberry's counsel submits contemporaneous time records, reflecting the work done in this litigation. Finally, Defendant is hereby permanently enjoined from infringing on any Burberry trademarks. If Defendant violates Burberry's trademarks in the future, then Defendant will automatically be permanently enjoined from selling, offering for sale, advertising, or distributing any Burberry-branded merchandise.

**\*12** Plaintiff is directed to submit a proposed order of judgment on 10 days notice.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 199906

Footnotes

1    The Court will analyze Burberry's federal and state law dilution claims together. The New York State anti-dilution statute, N.Y. Gen. Bus. L. § 360–1, and the Federal Trademark Dilution Act, the federal anti-dilution statute in effect prior to October 6, 2006, are alike. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 119 (2d Cir.2006). This analysis is essentially unchanged under the Trademark Dilution Revision Act of 2006, effective October 6.2006. *Tiffany (NJ) Inc. v. eBay, Inc.,* 576 F.Supp2d 463, 523 (S.D.N.Y.2008). Some courts have held that the New York State statute provides greater protection against dilution than the TDRA. *See GMA Accessories,* 2008 WL 591803, at *11. But the Court need not engage in a separate analysis for Burberry's New York State claims because the Court concludes that Burberry's dilution claim succeeds under the more exacting FDTA standard.

2    Prior to October 13, 2008, the minimum for § 1117(c)(1) was $500 and the maximum was $1,00,000; and the maximum for § 1117(c) (2) was $1,000,000. *See* Prioritizing Resources and Organization for Intellectual Property Act of 2008, Title I, sec. 104, § 1117, 122 Stat 4256, 4259 (Oct. 13, 2008). Defendant's sales of counterfeit Burberry items occurred prior to October 13, 2008. Accordingly, the Court applies the pre-amendment statutory amounts. *See e.g., Century 21 Real Estate LLC v. Bercosa Corp.,* 666 F.Supp.2d 274, 2009 WL 3111759, at *12n.9 (E.D.N.Y. Sept. 18, 2009).

3    Plaintiffs' Ex. 300 indicates that between September 13, 2003 and June 11, 2008, Designer's Burberry advertising in Google had been clicked 1,021,744 times.

4    Plaintiffs' Ex. 220 was not introduced at trial. After the trial, however, on September 25, 2009, the Court reopened the trial record to admit this exhibit into evidence (Dkt.# 28).

5    Plaintiffs' Ex. 308 indicates that Burberry-branded merchandise represents the following percentages of Designer's overall sales: 65 .13% between March 29, 2005 and December 31, 2005; 34.44% between January 1, 2006 and December 31, 2006; 21.35% between January 1, 2007 and December 31, 2007; and 6.97% between January 1, 2008 and June 26, 2008.

---

**End of Document**                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BURBERRY LIMITED, a United Kingdom
corporation, and BURBERRY LIMITED, a New
York corporation,

             Plaintiffs,

      v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 14-cv-8220

**Judge John W. Darrah**

**Magistrate Judge Geraldine Soat Brown**

## FINAL JUDGMENT ORDER

This action having been commenced by Plaintiffs Burberry Limited, a United Kingdom

corporation ("Burberry UK"), and Burberry Limited, a New York corporation ("Burberry US"),

together, "Burberry" or "Plaintiffs," against the Partnerships and Unincorporated Associations

identified on Amended Schedule A attached hereto (collectively, the "Defendants"), and using

the Defendant Domain Names and Online Marketplace Accounts (collectively, the "Defendant

Internet Stores");

This Court having entered upon a showing by Burberry, a temporary restraining order

and preliminary injunction against Defendants which included a domain name transfer order and

asset restraining order;

Burberry having properly completed service of process on Defendants, the combination

of providing notice via electronic publication or email, along with any notice that Defendants

received from domain name registrars and payment processors, being notice reasonably

calculated under all circumstances to apprise Defendants of the pendency of the action and affording them the opportunity to answer and present their objections; and

None of the Defendants identified in Amended Schedule A attached hereto (collectively, the "Defaulting Defendants") having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

THIS COURT HEREBY FINDS that Defaulting Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), cybersquatting (15 U.S.C. § 1125(d)) and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.).

IT IS HEREBY ORDERED that Plaintiffs' Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendants are deemed in default and that this Final Judgment is entered against Defaulting Defendants.

IT IS FURTHER ORDERED that:

1. Defaulting Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

   a. using Burberry's BURBERRY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Burberry Product or not authorized by Burberry to be sold in connection with Burberry's BURBERRY Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Burberry Product or any other product produced by Burberry, that is not Burberry's

or not produced under the authorization, control or supervision of Burberry and approved by Burberry for sale under Burberry's BURBERRY Trademarks;

c. committing any acts calculated to cause consumers to believe that Defaulting Defendants' products are those sold under the authorization, control or supervision of Burberry, or are sponsored by, approved by, or otherwise connected with Burberry;

d. further infringing Burberry's BURBERRY Trademarks and damaging Burberry's goodwill;

e. otherwise competing unfairly with Burberry in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Burberry, nor authorized by Burberry to be sold or offered for sale, and which bear any of Burberry's BURBERRY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names or any other domain name or online marketplace account that is being used to sell or is the means by which Defaulting Defendants could continue to sell Counterfeit Burberry Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defaulting Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the BURBERRY Trademarks or any reproductions, counterfeit copies or

colorable imitations thereof that is not a genuine Burberry Product or not authorized by Burberry to be sold in connection with Burberry's BURBERRY Trademarks.

2.    The Defendant Domain Names are permanently transferred to Burberry's control.  The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet and the Public Interest Registry, within three (3) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Burberry's selection, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to Burberry's account at a registrar of Burberry's selection.

3.    Those in privity with Defendants and with actual notice of this Order, including any online marketplaces such as iOffer, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

   a.  disable and cease providing services for any accounts through which Defaulting Defendants engage in the sale of counterfeit and infringing goods using the BURBERRY Trademarks, including any accounts associated with the Defaulting Defendants listed on Amended Schedule A attached hereto;

   b.  disable and cease displaying any advertisements used by or associated with Defaulting Defendants in connection with the sale of counterfeit and infringing goods using the BURBERRY Trademarks; and

4

c. take all steps necessary to prevent links to the Defendant Domain Names identified on Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

4. Pursuant to 15 U.S.C. § 1117(c)(2), Burberry is awarded statutory damages from each of the Defaulting Defendants in the amount of two million dollars ($2,000,000) for willful use of counterfeit BURBERRY Trademarks on products sold through at least the Defendant Internet Stores.

5. Western Union shall, within two (2) business days of receipt of this Order, permanently block any Western Union money transfers and funds from being received by the Defaulting Defendants identified in Amended Schedule A.

6. PayPal, Inc. ("PayPal") shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any China or Hong Kong based accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

7. All monies currently restrained in Defaulting Defendants' financial accounts, including monies held by PayPal, are hereby released to Burberry as partial payment of the above-identified damages, and PayPal is ordered to release to Burberry the amounts from Defaulting Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

8. Until Burberry has recovered full payment of monies owed to it by any Defaulting Defendant, Burberry shall have the ongoing authority to serve this Order on PayPal in the

event that any new PayPal accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, PayPal shall within two (2) business days:

    a. Locate all accounts and funds connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites, including, but not limited to, any PayPal accounts;

    b. Restrain and enjoin such accounts or funds that are China or Hong Kong based from transferring or disposing of any money or other of Defaulting Defendants' assets; and

    c. Release all monies restrained in Defaulting Defendants' PayPal accounts to Burberry as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

9.     Until Burberry has recovered full payment of monies owed to it by any Defaulting Defendant, Burberry shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, the Financial Service Providers shall within two (2) business days:

    a. Locate all accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites;

    b. Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defaulting Defendants' assets; and

    c. Release all monies restrained in Defaulting Defendants' financial accounts to Burberry as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

10. In the event that Burberry identifies any additional online marketplace accounts, domain names or financial accounts owned by Defaulting Defendants, Burberry may send notice of any supplemental proceeding to Defaulting Defendants by email at the email addresses identified in Amended Schedule A attached hereto.

11. The ten thousand dollar ($10,000) cash bond posted by Burberry, including any interest minus the registry fee, is hereby released to Burberry or its counsel, Greer Burns & Crain, Ltd. The Clerk of the Court is directed to return the cash bond previously deposited with the Clerk of the Court to Burberry or its counsel by check made out to the Greer Burns & Crain IOLTA account.

This is a Final Judgment.

DATED: December _/ /_ , 2014

U.S. District Court Judge John W. Darrah

Burberry Limited, a United Kingdom corporation, and Burberry Limited, a New York corporation v. The Partnerships and Unincorporated Associations Identified on Schedule "A" Case No. 14-cv-8220

# Amended Schedule A

## Defendant Domain Names

| No. | Domain Name |
|-----|-------------|
| 1 | burberry-india.biz |
| 2 | burberry-handbags-uk.biz |
| 3 | australia-burberry.biz |
| 4 | usa-burberry-handbags.biz |
| 5 | canada-burberry.biz |
| 6 | ukburberryoutlet.biz |
| 7 | burberry-singapore.biz |
| 8 | burberryfactoryoutletusa.biz |
| 9 | binti.biz |
| 10 | tastyrecipes.biz |
| 11 | dailystock.biz |
| 12 | joyousbuy.cn |
| 13 | burberryscarf.co |
| 14 | replicabagshome.co |
| 15 | replicaburberryscarf.co.uk |
| 19 | inburberry.co.uk |
| 21 | florist-romford.co.uk |
| 22 | buymmlv.co.uk |
| 23 | idolreplicas.co.uk |
| 24 | robertsbridgehall.co.uk |
| 25 | paypsl.co.uk |
| 27 | stylecapture.co.uk |
| 29 | bagsoutlet.co.uk |
| 30 | dorodigital.co.uk |
| 31 | michian.co.uk |
| 32 | celticdance.co.uk |
| 33 | rajpauljewellers.co.uk |
| 34 | lancasterchryslerjeep.co.uk |
| 35 | replicahandbags-uk.co.uk |
| 36 | replicabagsgood.co.uk |
| 37 | doshopsell.com |
| 38 | burberry-outletonline.com |
| 39 | burberry-outletinc.com |

| 40 | burberryhandbags2014.com |
| 41 | womennewburberry.com |
| 42 | kobburberrytaske.com |
| 43 | burberrysaldiborse.com |
| 44 | burberry-mall.com |
| 45 | burberrypaschersolde.com |
| 46 | shopdiscountburberry.com |
| 47 | burberryvenditaitalia.com |
| 48 | burberryclassicbags.com |
| 49 | jpburberrybag.com |
| 50 | burberry-clothingsale.com |
| 51 | kobburberrykvinder.com |
| 52 | burberryretailshop.com |
| 53 | burberrysretail.com |
| 54 | xn--burberrykbenhavn-txb.com |
| 55 | burberryoutletpro.com |
| 56 | burberryoutletonlines2014.com |
| 57 | burberryfactoryoutlets2014.com |
| 58 | outletonline-burberry.com |
| 59 | discountburberrystore.com |
| 60 | burberryshows.com |
| 61 | buycheapburberryonline.com |
| 62 | shopburberryshoes.com |
| 63 | shopburberrysale.com |
| 64 | okcheapburberry.com |
| 65 | burberrysalemall.com |
| 66 | burberryonlinestore.com |
| 67 | cheapburberryvipsale.com |
| 68 | fashionburberryshirts.com |
| 69 | achatventeburberry.com |
| 70 | buynewburberry.com |
| 71 | shopcheapburberry.com |
| 72 | burberrylocations.com |
| 73 | burberrysstoreonline.com |
| 74 | burberrybagsforsale.com |
| 75 | wholesaleburberry.com |
| 76 | burberryonsalestore.com |
| 77 | burberrysalenow.com |
| 78 | burberrywomen.com |
| 79 | burberryoutletonline2014.com |
| 80 | burberryfactory2015.com |

9

| 81  | burberrybdubai.com              |
|-----|---------------------------------|
| 82  | cheapburberryoutletsstore.com   |
| 83  | handel-de.com                   |
| 84  | luxuryzsale.com                 |
| 85  | sacfendisoldes.com              |
| 86  | uomotimberland.com              |
| 87  | doudounenorthfacevente.com      |
| 88  | findbagss.com                   |
| 89  | bagsoutletretail.com            |
| 90  | handbags-greece.com             |
| 91  | thehandbagsforcheap.com         |
| 92  | canada-goose-paris.com          |
| 93  | spaccioborsedonna.com           |
| 94  | jeans-germany.com               |
| 95  | ralphlaurenpolopris.com         |
| 96  | classicdiscounthats.com         |
| 97  | botteshommes.com                |
| 98  | danmarktilsalg.com              |
| 99  | northfaceparisfrance.com        |
| 100 | topfashionscarf.com             |
| 101 | buberrybagscheapsale.com        |
| 102 | tiffanyoutlet-store.com         |
| 103 | handtaschen-de.com              |
| 104 | newbagsstore2014.com            |
| 105 | myfashiononlinestore.com        |
| 106 | magasindoudounepascher.com      |
| 107 | imarquefr.com                   |
| 108 | fashionikeshoes.com             |
| 109 | luxurybagsfashion.com           |
| 110 | goleathermall.com               |
| 111 | modatimberlandonline.com        |
| 112 | marquesensolde.com              |
| 113 | 2014luxurybags.com              |
| 114 | interlineagency.com             |
| 115 | fashionshopping888.com          |
| 116 | 1flag.com                       |
| 117 | bbsbroadcaster.com              |
| 118 | sundaysline.com                 |
| 119 | loudsbags.com                   |
| 120 | menlinda2014us.com              |
| 121 | tangmirbags.com                 |

| 122 | ladygagamall.com |
| 123 | cheapcoatfr.com |
| 124 | muffler-shawl-scarf.com |
| 125 | prixtimberland.com |
| 126 | doudounes-magasin.com |
| 127 | discountwomenbags.com |
| 128 | venditastivaliuomo.com |
| 129 | taschendamen-schweiz.com |
| 130 | womensbagsretail.com |
| 131 | vesker-norway.com |
| 132 | tilkvinnerogvesker.com |
| 133 | lovebuyoakleys.com |
| 134 | terminatetickets.com |
| 135 | handbagscm.com |
| 136 | binocshop.com |
| 137 | marquescle.com |
| 138 | sacmarquemagasin.com |
| 139 | amodait.com |
| 140 | beerducate.com |
| 141 | sacmodeluxe.com |
| 142 | infomonnaie.com |
| 143 | lovevida.com |
| 144 | iskconkl.com |
| 145 | replicahandbagshow.com |
| 146 | replicadesignerhandbags4u.com |
| 147 | likehandbagsonline.com |
| 148 | babyclotheswholesalers.com |
| 149 | blackmerpompa.com |
| 150 | handbags-belts-mall.com |
| 151 | marquelinks2014.com |
| 152 | newmarquekey.com |
| 153 | newmarqueskey.com |
| 154 | newmarquesweb.com |
| 155 | newmarquesite.com |
| 156 | freshpickups.com |
| 157 | horancorak.com |
| 158 | lvmarts.com |
| 159 | onlinelong.com |
| 160 | brand-hot-sale.com |
| 161 | soldespaschere.com |
| 162 | favouritebagcollection.com |

| 163 | outlethandbagsale.com |
| 164 | jewefashion.com |
| 165 | shoppingbagsvip.com |
| 166 | begsvip2014.com |
| 167 | luxufocus.com |
| 168 | eshopclothes.com |
| 169 | cheapbagsmall.com |
| 170 | cheaphandbagswomen.com |
| 171 | borsevenditamilano.com |
| 172 | chemisebelgique.com |
| 173 | greekwomenhandbags.com |
| 174 | topsneakerworld666.com |
| 175 | borseoutlet2014.com |
| 176 | handbagshomeonline.com |
| 177 | sacfemmesolde.com |
| 178 | discountbeltforsale.com |
| 179 | bestreplicahandbag2.com |
| 180 | discountclassicbelt.com |
| 181 | bagsonline2014.com |
| 182 | myloveshoppingmall.com |
| 183 | taschensaleshop.com |
| 184 | discounthandbagsshow.com |
| 185 | bberry2014outlet.com |
| 186 | borseoutletdonna.com |
| 187 | watchshopok.com |
| 188 | bagsus2u.com |
| 189 | riverladycruises.com |
| 190 | perfectpensale.com |
| 191 | perfectbagsale.com |
| 192 | forfelixrocksites.com |
| 193 | marke-cl.com |
| 194 | orchardcheckbags.com |
| 195 | christiandiorhandbags.com |
| 196 | ventefrmarque.com |
| 197 | yeahropa.com |
| 198 | watcheselife.com |
| 199 | outletslondon.com |
| 200 | online-brandshop.com |
| 201 | handbaguk.com |
| 202 | lvmensbags.com |
| 203 | decentheels.com |

| 204 | goodguystransmissions-ny.com |
| 205 | topmybag.com |
| 206 | hervedresses2012.com |
| 207 | jerseyfr.com |
| 208 | shoxtnmall.com |
| 209 | cheaptnmall.com |
| 210 | salediscountbag.com |
| 211 | cheapestwholesaleoutlets.com |
| 212 | eshop2015.com |
| 213 | burebags.com |
| 214 | buybaggujp.com |
| 215 | buycheapsneakeronline.com |
| 216 | shopcheapsneaker.com |
| 217 | cheapbrandtshirt.com |
| 218 | jiayi506.com |
| 219 | epibags.com |
| 220 | stylishboston.com |
| 221 | messengerhangdbags.com |
| 222 | nikeky.com |
| 223 | toponeaaa.com |
| 224 | fashioneasyget.com |
| 225 | repmallsneaker.com |
| 226 | savingmore-online.com |
| 227 | bagsen.com |
| 228 | gbuybags.com |
| 229 | handbagsbar.com |
| 230 | hip-hopvip.com |
| 231 | coatsfrance.com |
| 232 | jacketfr.com |
| 233 | baguiotour.com |
| 234 | diamondsnap.com |
| 235 | ccwatches.com |
| 236 | sonnenoutlet.com |
| 237 | desonnenbrillen.com |
| 238 | markende.com |
| 239 | brands-shoes.com |
| 240 | sinvacas.com |
| 241 | bedsidebags.com |
| 242 | pumpsshirts.com |
| 243 | buydiscountbrand.com |
| 244 | nltassen.com |

| 245 | developbags.com |
| 246 | brandfactoryshop.com |
| 247 | onsale-bags.com |
| 248 | uloveshares.com |
| 249 | yiandahanbags.com |
| 250 | 24salebag.com |
| 251 | alicelady.com |
| 252 | alicebagshop.com |
| 253 | cheapclothingcharm.com |
| 254 | offcialnikeshop.com |
| 255 | guccibeltsoutletbcus.com |
| 256 | tinashops.com |
| 257 | giubbottoit.com |
| 258 | freehotgirlsall.com |
| 259 | bellarineestate.com |
| 260 | childreni.com |
| 261 | replicahandbagsus.com |
| 262 | replicahandbags888.com |
| 263 | transoffering.com |
| 264 | buell-potsdam.com |
| 265 | ezidwatches.com |
| 266 | 2014guccibeltsonsale.com |
| 267 | cheapbelts2014.com |
| 268 | pickhandbagsale.com |
| 269 | livinginmiamibeach.com |
| 270 | edesignerhandbagstrend.com |
| 271 | hotsneakersonsale.com |
| 272 | fauxtotebags.com |
| 273 | copy-bags.com |
| 274 | shopplazaonline.com |
| 275 | replicadream.com |
| 276 | fashionbrands-store.com |
| 277 | onlines-outletstore.com |
| 278 | luxurybrandsonlines.com |
| 279 | vetitrendy.com |
| 280 | 386advice.com |
| 281 | sacfinfo.com |
| 282 | plusdealmart.com |
| 283 | topsalebag.com |
| 284 | aplusbag.com |
| 285 | abmbags.com |

| 286 | shopmybag.com |
|---|---|
| 287 | replicas-boutique.com |
| 288 | onecopyone.com |
| 289 | nbalebron11.com |
| 290 | nbalebron6.com |
| 291 | ozylc8.com |
| 292 | apparelare.com |
| 293 | essentialdress.com |
| 294 | knowncoat.com |
| 295 | withapparel.com |
| 296 | apparelsight.com |
| 297 | affordablecoat.com |
| 298 | famouscoat.com |
| 299 | apparelsome.com |
| 300 | dressalong.com |
| 301 | cheapguccibeltshop.com |
| 302 | totodress.com |
| 303 | clothesform.com |
| 304 | namebranddress.com |
| 305 | dressmallon.com |
| 306 | dressesforum.com |
| 307 | stylebeltssale.com |
| 308 | madbecause.com |
| 309 | scarfsaleing.com |
| 310 | burberry-discount.info |
| 311 | buycheapbag.info |
| 312 | sacschanel.info |
| 313 | shoppingluxury.info |
| 314 | handbags-replicas.info |
| 315 | marcasciarpa.info |
| 316 | burberrys-outletonline.net |
| 317 | burberryoutletstore2014.net |
| 318 | handbagsburberryaustralia.net |
| 319 | burberrys-outlet.net |
| 320 | 1burberryoutlet.net |
| 321 | freetousa.net |
| 322 | replicapradahandbags.net |
| 323 | shopdesignerbagmalls.net |
| 324 | sale-swiss.net |
| 325 | bagsfactoryoutlet.net |
| 326 | tshirtmarque.net |

| 327 | lvnikes.net |
| 328 | nicescarf.net |
| 329 | replicaluxury.net |
| 330 | louisvuittonhandvaskorsverige.net |
| 331 | qiqifashions01.net |
| 332 | replicawatcheview.net |
| 333 | achatmarques.net |
| 334 | replica-clothing.net |
| 335 | brandsclothing.net |
| 336 | shoplvmonogramidylle.net |
| 337 | lezizsofralar.net |
| 338 | designerbaghome.net |
| 339 | fashionhandbagsshopping.net |
| 340 | designer-shop.net |
| 341 | cheap-burberry.org |
| 342 | bestburberrybags.org |
| 343 | classicburberrybags.org |
| 344 | cheapburberryhandbags.org |
| 345 | burberryfactoryoutlet.org |
| 346 | burberry-walletsale.org |
| 347 | burberrytaschenoutlets.org |
| 348 | bags88.org |
| 349 | handbags-discount.org |
| 350 | soyoyo.org |
| 351 | vetementdoudoune.org |
| 352 | tshirthommefemme.org |
| 353 | tshirtbon.org |
| 354 | vetementsralphlauren.org |
| 355 | polonorge.org |
| 356 | tilbudtasker.org |
| 357 | doudouneparis.org |
| 358 | handtaskopen.org |
| 359 | doudounemoinscher.org |
| 360 | buycheaphandbags.org |
| 361 | scarvesonline.org |
| 362 | sacmarque.org |
| 363 | best-bags.org |
| 364 | vaskorreaonline.org |
| 365 | sacpascherenligne.org |
| 366 | laukutfinland.org |
| 367 | replicashandbags.org |

| 368 | replicaahandbags.org.uk |
|-----|-------------------------|
| 369 | burberryfactoryoutlets.us |
| 370 | burberryoutletstores.us |
| 371 | burberryoutletstore.us |
| 372 | burberrywallet.us |
| 373 | ccgrass.us |
| 374 | bbhandbags-outlet.us |
| 375 | pacificgp.us |
| 376 | bboutletbagssale.us |

## Defendant Domain Names Registrants

| No. | Defendant / Registrant Name | Registrant Email |
|-----|-----------------------------|------------------|
| 1 | terrfic. co., ltd. | usedfortesting2011@gmail.com |
| 2 | chen songlin | 1310893816@qq.com |
| 3 | Stephanie Meier | info@yahei.net |
| 4 | lin lian lian | dailystock@hotmail.com |
| 5 | joyousbuy.cn | oyousbuy@163.com |
| 6 | xialin chen | jisfee9988@126.com |
| 7 | wen ben zhou | e59e@qq.com |
| 8 | BESTDFDD SSLIN | |
| 12 | kaiye chen | |
| 13 | renywing | |
| 14 | may may | |
| 15 | Hildegarde MacMillan | |
| 16 | Craig Abdullah | |
| 18 | Adam Rosser | |
| 20 | Haiwen Yang | |
| 21 | ifb Americas Steffi Engels | |
| 22 | Jodi Fasnacht | |
| 23 | NAET TEC UK Limited Comapny | |
| 24 | Oliver Beckford | |
| 25 | Tezira Nabongo | |
| 26 | Samira benbrika | |
| 27 | huachao chen | |
| 28 | qing hua | qdjhdh@yahoo.com |
| 29 | wang xiaoli | 1286096313@qq.com |
| 30 | sox bks | 1925857046@qq.com |
| 31 | li zhipeng | hejuir@163.com |
| 32 | yang qingzhao | hurndee@163.com |
| 33 | zheng chunwang | 1254611787@qq.com |
| 34 | fang xingai | 1444817228@qq.com |

| 35 | Huang Tian | ronice988@163.com |
|----|-----------|-------------------|
| 36 | Chen Fang | haorenjies@163.com |
| 37 | gu meihua | liujiudaili@163.com |
| 38 | zhang han | summerswimer@163.com |
| 39 | jackhuang | 1947618173@qq.com |
| 40 | YANG GONGFEI | NHUENS@SINA.COM |
| 41 | biglove | 564268297@qq.com |
| 42 | zhao hao | zhaohao3g@163.com |
| 43 | Linpain | 463956089@qq.com |
| 44 | lin anxiao | burberry1719@163.com |
| 45 | xiang xiang | xb20140807@163.com |
| 46 | yule | 2286028183@qq.com |
| 47 | Caroline Riahi | bidu9575@163.com |
| 48 | MoMo Too | domian@sina.cn |
| 49 | Amy Bloom | yangsi2010@126.com |
| 50 | Bennie Jeans | 2020114203@qq.com |
| 51 | leon hartlebury | leonhartlebury3b@outlook.com |
| 52 | han wu | registrar@mail.zgsj.com |
| 53 | guoqin yang | prclarisse@hotmail.com |
| 54 | wu genglong | ronice1899@gmail.com |
| 55 | lorenzo hogan | jimmsab@hotmail.com |
| 56 | xiao xi gua | grongttew@yahoo.com |
| 57 | leigh avery | lilleigh13@hotmail.co.uk |
| 58 | Wang ShanShi | replicawatches0@gmail.com |
| 59 | chen guanghua | ronice1982@gmail.com |
| 60 | Elsa Swift | mvv8klrc03nu9@gmail.com |
| 61 | peter louis | peter.louis58@gmail.com |
| 62 | Dan Custer | patrickjn376@gmail.com |
| 63 | WHOISGUARD, INC. | 048B4AE2FAA34A54A6A3D933561E2C14.PROTECT@WHOISGUARD.COM |
| 64 | Guo Ai E | cantadukkan.com@qq.com |
| 65 | black jack | 1786567174@qq.com |
| 66 | luo xiaolan | gtrkdsss@163.com |
| 67 | li bai | a252152@126.com |
| 68 | wang dingchang | bjjth@163.com |
| 69 | liu xiaofeng | buhrrr@163.com |
| 70 | yang gongfei | dhuess@163.com |
| 71 | fan huake | frejudf@163.com |
| 72 | he xiaozhu | jirjds@163.com |
| 73 | meng baokang | mujdhe@163.com |
| 74 | zhang zhengcong | mujjke@163.com |
| 75 | deng yuqin | shenhhs@163.com |

| 76 | jiang zhenbiao | shuangmingzhen@163.com |
|---|---|---|
| 77 | zheng chunsheng | 554767874@qq.com |
| 78 | wang shijie | anytimes2012@qq.com |
| 79 | han yingying | liujiudaili@163.com |
| 80 | chen xiaosheng | rongsheng124@126.com |
| 81 | cai xiang yong | ah1k23@126.com |
| 82 | ewasddsd dsad | andy@163.com |
| 83 | Li Zheng | goleathermall@163.com |
| 84 | han boya | puhuyr@163.com |
| 85 | CaiLiMing | rqb@dingdian.cn |
| 86 | Dehui Liu | wangrong@163.com |
| 87 | gold lynn | shoppingmango@126.com |
| 88 | Guang zhou bai hui peng fei you xian gong si | feicaliu168@126.com |
| 89 | xiejifei | 1536491564@qq.com |
| 90 | hongpuyi | 527109571@qq.com |
| 91 | linsan trading | 1272555204@qq.com |
| 92 | xiao bin | 1182188602@qq.com |
| 93 | HUANGJIELIN | william611@qq.com |
| 94 | zhang jinxian | 50472063@qq.com |
| 95 | LOUSHANG | BABURY458@163.COM |
| 96 | TU XIAOGUANG | FEMUKS@163.COM |
| 97 | ZHANG WEINA | JHYHFLK@SINA.COM |
| 98 | LU JINZHAO | KUIDHUR@SINA.COM |
| 99 | ZHENG ZHONGHUI | TENTESE@SINA.COM |
| 100 | ZHANG HAIBIN | YENHUNS@SINA.COM |
| 101 | Sun chen | 68780991@qq.com |
| 102 | lian chuang | 87512587@qq.com |
| 103 | xiao chen | bagsfor88@163.com |
| 104 | feng lu | binocshop@126.com |
| 105 | brands key | chinareplica2@163.com |
| 106 | dfsgfds dfgdsfgd | dsfsafdfsafdsaf@163.com |
| 107 | wen ben zhou | e59e@qq.com |
| 108 | 73021 jing8 | jing873021@163.com |
| 109 | Ludwig Rhys | qw20140804@qq.com |
| 110 | Jinmei Lei | xiaomei_514862703@qq.com |
| 111 | lin tao | xiaosadye@126.com |
| 112 | jasson jasson | zhao_jasson@126.com |
| 113 | zou yali | zou329942051@live.cn |
| 114 | Li Fangqing | 119225101@qq.com |
| 115 | bagsfirst | 157505829@qq.com |

| 116 | albini1949phy | albini1949phy@163.com |
|-----|---------------|------------------------|
| 117 | lin mu | 356759658@qq.com |
| 118 | qian bao | 75369388@qq.com |
| 119 | sun bao | 75769388@qq.com |
| 120 | zeng bao | 79169288@qq.com |
| 121 | liu bao | 79169388@qq.com |
| 122 | Domain Whois Privacy Protection Service | whoisprivacyprotect@whoisservices.cn |
| 123 | Giacomo ramon Foti Giacomo ramon Foti | oefiel21@163.com |
| 124 | weng junpeng | 1192798773@qq.com |
| 125 | chen zhiyi | 1605897911@qq.com |
| 126 | yang yanglong | 1071976692@qq.com |
| 127 | lin yang | 1163552143@qq.com |
| 128 | Huang AiXian | 1935236037@qq.com |
| 129 | zhang san | 411153946@qq.com |
| 130 | Li ning | 4821482@qq.com |
| 131 | zhangkanhai | 707146509@qq.com |
| 132 | wu huihuan | 815170689@qq.com |
| 133 | xujing | 842031288@qq.com |
| 134 | Liu Yang | bfsyrr@163.com |
| 135 | LiuYang | bfsyrr@163.com |
| 136 | Yan Zuihong | budhude@126.com |
| 137 | lin chenqing | feedsky002@163.com |
| 138 | Yu Yang | hfuuio@163.com |
| 139 | fashionholicz Co Ltd | houniaorr@163.com |
| 140 | Chen Lifen | huridh@163.com |
| 141 | David | resshiei@126.com |
| 142 | Zeng Ming | vbnfrd@163.com |
| 143 | Liu Zhonghui | xunahue@163.com |
| 144 | Zhang YingXin | 913537054@qq.com |
| 145 | alessiolungarella | 1536491564@qq.com |
| 146 | Zhong Jia Xing | 112440270@qq.com |
| 147 | Romi Uppal | landukous@163.com |
| 148 | huanglei | 2403258750@qq.com |
| 149 | kilo grati | kilo2011grati@163.com |
| 150 | soros corre | soros2029corre@163.com |
| 151 | maria albito | albito369@126.com |
| 152 | XiaoHui Lin | marke-cl.com@hotmail.com |
| 153 | ai xiaomi | salessnell@gmail.com |
| 154 | liu hua | replicastores@gmail.com |
| 155 | Organization | private-whois-service@tjvps.com |
| 156 | LI MEILIAN | yeahropa@outlook.com |

| 157 | Organization | langloaypja@hotmail.com |
| 158 | Zhang Yaowei | agsgsdg8956@hotmail.com |
| 159 | sunmingcai | online-brandshop@yahoo.com |
| 160 | Wen Enhao | sgjjhwet@yahoo.com |
| 161 | Yun Li Ru | haffenden2212@gmail.com |
| 162 | Li Sheng | jayleetrade@gmail.com |
| 163 | bena switte | tingtinglove65@hotmail.com |
| 164 | deng huang | peterhuangdeng@hotmail.com |
| 165 | xin xinyu | hervedresses2012@gmail.com |
| 166 | fangqin liu | registrar@mail.zgsj.com |
| 167 | Yue Li | registrar@mail.zgsj.com |
| 168 | Liao Zhen Shan | registrar@mail.zgsj.com |
| 169 | Jiang Min Jie | michelle2212@outlook.com |
| 170 | Shen Wen Feng | scarlett222@outlook.com |
| 171 | Wei Yi Yu | scarlett222@outlook.com |
| 172 | DOMAIN WHOIS PROTECTION SERVICE | domainadm@hichina.com |
| 173 | YinSi BaoHu Yi KaiQi (Hidden by Whois Privacy Protection Service) | YuMing@YinSiBaoHu.AliYun.com |
| 174 | tom suey | kerytony@hotmail.com |
| 175 | chen mr | meifang0594@aliyun.com |
| 176 | huang min | vikingssportsjerseys@gmail.com |
| 177 | zhangjinxian | customer-server@hotmail.com |
| 178 | zhangzongze | customer-server@hotmail.com |
| 179 | SACLOUISVUITTON | XM9292@HOTMAIL.COM |
| 180 | cao yiqian | cao3711@qian.com |
| 181 | cherry fang | cherryfang0712@gmail.com |
| 182 | jiarui zou | clairezoie@hotmail.com |
| 183 | huachao chen | dddpppeee@yahoo.com |
| 184 | Shoes bags store | f8605gdfsg@hotmail.com |
| 185 | zhang cengyun | jxiaoyou@gmail.com |
| 186 | molly hill | mollyhill123@hotmail.com |
| 187 | wu zhaofeng | onlineserve2014@gmail.com |
| 188 | xiaoshan yang | pthsm@hotmail.com |
| 189 | zhonghang | watchfulling@gmail.com |
| 190 | WEIYUNMIN | sikemall@hotmail.com |
| 191 | jason | totedhandbags@gmail.com |
| 192 | Jarrod Tucker | jarrod.tucker@aol.com |
| 193 | Steven Jiang | jianglanbo@maoyt.com |
| 194 | ZhangDaZhou | caonima911@yeah.net |
| 195 | huang jincou | handbags3a@hotmail.com |
| 196 | chen huafeng | huafeng5360569@hotmail.com |
| 197 | zhou xinche | 498756@gmail.com |

| 198 | weng junpeng | btbshop@hotmail.com |
|-----|--------------|---------------------|
| 199 | wang zhijun | wangzhijun1@hotmail.com |
| 200 | Wang Lin | 700sdsd890@gmail.com |
| 201 | de hua | bassoalice.it@gmail.com |
| 202 | Han Yong Guang | leo-han@hotmail.com |
| 203 | zhao hengxin | myt20@outlook.com |
| 204 | www.Juming.Com | admin@Juming.Com |
| 205 | huang jun | qingdyong9328@yahoo.com |
| 206 | George Kendrick | asdfeqwe10@yahoo.com |
| 207 | Dennis Kern | asdfeqwe185@yahoo.com |
| 208 | John Rhymes | choosechanelbags@hotmail.com |
| 209 | coco kiss | mondeleine@gmail.com |
| 210 | deng lingtao | qtivbbv@yahoo.com |
| 211 | wu tmac | ronice1899@gmail.com |
| 212 | wanfang | lovershandbagsale@gmail.com |
| 213 | jason | lovershandbagsale@gmail.com |
| 214 | W.N.T | zkin2007@hotmail.com |
| 215 | Roman Kaushinskiy | rtommy.75@gmail.com |
| 216 | Xiansheng Maoyi | verriksever@hotmail.com |
| 217 | Unzhaqa Buchzna | vertutut@hotmail.com |
| 218 | Xiansheng Maoyi | vertutut@hotmail.com |
| 219 | mania factor | info.fashionkleding@gmail.com |
| 220 | Chen XiuQiang | ptt660nv@outlook.com |
| 221 | Li MeiXiang | ptv260fd@outlook.com |
| 222 | Domain.com | support@domain-inc.net |
| 223 | WHOISGUARD, INC. | 312DDE190DA848C79DFC0770133667D3.PROTECT@WHOISGUARD.COM |
| 224 | WHOISGUARD, INC. | 66A7AD9575CA4FB49E0F2751F21AE437.PROTECT@WHOISGUARD.COM |
| 225 | WHOISGUARD, INC. | C97C8AC328C64B1C982152E54309FBB3.PROTECT@WHOISGUARD.COM |
| 226 | Domains By Proxy, LLC | SHOPMYBAG.COM@domainsbyproxy.com |
| 227 | Fundacion Private Whois | 52969ddf1tb3b2kl@5225b4d0pi3627q9.privatewhois.net |
| 228 | Whois Privacy Corp. | 542e9780ajamwew4@5225b4d0pi3627q9.whoisprivacycorp.com |
| 229 | Whois Privacy Protection Service, Inc. | nbalebron11.com@protecteddomainservices.com |
| 230 | Whois Privacy Protection Service, Inc. | nbalebron6.com@protecteddomainservices.com |
| 231 | Whois Privacy Protection Service, Inc. | ozylc8.com@protecteddomainservices.com |
| 232 | See PrivacyGuardian.org | pw-007c15cb83c307387279451b6ee1405a@privacyguardian.org |

| 233 | See PrivacyGuardian.org | pw-5bb23a86070057108de75396ecdf8c12 @privacyguardian.org |
| 234 | See PrivacyGuardian.org | pw-8b76e48fa5b5542460cd184d4fbeab20 @privacyguardian.org |
| 235 | See PrivacyGuardian.org | pw-9a59f7ac8a74a4f05143ea2829669517 @privacyguardian.org |
| 236 | See PrivacyGuardian.org | pw-b7bce009724c373cdddc92b8888f6a5b @privacyguardian.org |
| 237 | See PrivacyGuardian.org | pw-be43d4e0b2949bdbbfa5df391c553a9d @privacyguardian.org |
| 238 | See PrivacyGuardian.org | pw-d4e1b46fa0aad5848b886da59fdc5d09 @privacyguardian.org |
| 239 | Privacy Protection Service INC d/b/a PrivacyProtect.org | contact@privacyprotect.org |
| 240 | Private Registration | scarfsaleing.com@NameBrightPrivacy.com |
| 241 | yiheng | fordomain1@163.com |
| 242 | king torison | 1715640390@qq.com |
| 243 | Norman L. Harris | janejuju0921@gmail.com |
| 244 | bo yang | clshoesfr@gmail.com |
| 245 | chen huihu | burberrysoutlet@163.com |
| 246 | zheng lanxiao | burberry0719@163.com |
| 247 | jin long | jinlongqq@outlook.com |
| 248 | TopThink | zzqtrade3@gmail.com |
| 249 | dai jixiang | 492551427@qq.com |
| 250 | liu hua | 1652216734@qq.com |
| 251 | mao jun | 1243763592@qq.com |
| 252 | cheng yong | Bbaochen123@163.com |
| 253 | Lanny Tyndall | qw20140723@sina.com |
| 254 | chenjingqi | 342799703@qq.com |
| 255 | Chanel, Inc | 1652216734@qq.com |
| 256 | Wang Yan | moriceyaawsny@hotmail.com |
| 257 | sanyou | br0920@gmail.com |
| 258 | zuopeng li | goulrahkbu@gmail.com |
| 259 | haiyang zhang | frmarie@hotmail.com |
| 260 | peter zhong | replica-sales@hotmail.com |
| 261 | Mosais Cole | huting169@gmail.com |
| 262 | ghgfh tghcf | rasionin@gmail.com |
| 263 | chuang wash | chuangwash@outlook.com |
| 264 | DAVISLWL | ANDY_WTO@HOTMAIL.COM |
| 265 | zhang yundong | service@fashionhandbagshopping.net |
| 266 | jack huang | 1947618173@qq.com |
| 267 | Zhang Xian | shudkes@163.com |
| 268 | hairuli | jiutans3074@163.com |

| 269 | Kong Wei Ming | ghdprice@hotmail.com |
|---|---|---|
| 270 | ailong xiong | watches2015@163.com |
| 271 | Su Ding Fang | niketnpascher@163.com |
| 272 | Guo Jiachen | feuiur@163.com |
| 273 | info com | Xixin01cw@163.com |
| 274 | Zhang Ye Ying | hjdures@163.com |
| 275 | He Lin | huanhes@163.com |
| 276 | Fu jiangyu | poeurs@163.com |
| 277 | Bai Shaolan | quancue@163.com |
| 278 | Lin Pinggang | safsgfj@163.com |
| 279 | zhen tian | m0823com@yeah.net |
| 280 | xingbang wang | annagathe@hotmail.com |
| 281 | samenzhen | lovershandbagsale@gmail.com |
| 282 | WallaceKeynes | Wallacekeynes03@outlook.com |
| 283 | Terry Anderson | |
| 284 | yujujjn btrjtr | 1013535078@qq.com |
| 285 | Diane H. Rodriguez | RobertDMaples092@gmail.com |
| 286 | YILIGAO | 441659145@qq.com |
| 287 | Ludwig Rhys | qw20140825@qq.com |
| 288 | wang Geary | xiaoli789789@yahoo.com |
| 289 | micaa formino | bgoisequinf@yahoo.com |

## Online Marketplace Accounts

| No | URL | Account Name | Email Address |
|---|---|---|---|
| 1 | aliexpress.com/store/1018590 | Smile Face Store | donglinsheng@gmail.com |
| 2 | aliexpress.com/store/1020550 | Women Handbag shop | fengyushanco@163.com |
| 3 | aliexpress.com/store/1020976 | Nice&Fashion Handbag Shop | sxfjjx2004@163.com |
| 4 | aliexpress.com/store/1039199 | 365 days online | xuanxuan1102@hotmail.com |
| 5 | aliexpress.com/store/1077078 | Z&Y 100% real leather bag shop | jiangsh_520@163.com |
| 6 | aliexpress.com/store/1091402 | Happy Ruily | shorelinecn@gmail.com |
| 7 | aliexpress.com/store/1112661 | Glory electronics firm | 281021701@qq.com |
| 8 | aliexpress.com/store/1146072 | Soltrue Family Apparel | gzsuchu1928@gmail.com |
| 9 | aliexpress.com/store/1154160 | Fruit fruit Fashion Design | 919137475@qq.com |
| 10 | aliexpress.com/store/1158622 | Peggy fashion house | liuxueqing520@hotmail.com, |
| 11 | aliexpress.com/store/1167022 | Just one for all | zf.nicole517@hotmail.com |
| 12 | aliexpress.com/store/1169521 | Lucky style jewelry | 1225535765@qq.com |
| 13 | aliexpress.com/store/1184450 | Glow Stars | wonson6@163.com |
| 14 | aliexpress.com/store/1195315 | ishirtiestyle | 2353007329@qq.com |
| 15 | aliexpress.com/store/1195315 | ISHIRTIE STYLE | 932663000@qq.com |

| 16 | aliexpress.com/store/121072 | iBeauty Jewelry Co., LTD. | doodo.design@gmail.com |
|----|------------------------------|---------------------------|------------------------|
| 17 | aliexpress.com/store/1211367 | Fashion Eight man base | mkhe-FACTORY@hotmail.com |
| 18 | aliexpress.com/store/1228280 | yulunstore | songfenggai28@163.com |
| 19 | aliexpress.com/store/1262707 | S' Shopping Garden | woshishenzhiqi@126.com |
| 20 | aliexpress.com/store/1292788 | The world Natural beauty | dh13822108988@163.com |
| 21 | aliexpress.com/store/1293020 | Best Show | celiajwon@gmail.com |
| 22 | aliexpress.com/store/1294198 | Outlets brand factory | gzsuchu1928@gmail.com |
| 23 | aliexpress.com/store/1303339 | Beautiful costumes will | yinping0826@hotmail.com |
| 24 | aliexpress.com/store/1306076 | Designer Fashion Shop | zhaoyangaitu@163.com |
| 25 | aliexpress.com/store/1317586 | Glamorous fashion clothing store | lihongna147258@hotmail.com |
| 26 | aliexpress.com/store/1318177 | White horse trade | dh13822108988@163.com |
| 27 | aliexpress.com/store/1337027 | Famous brand clothing. | xiaoli0922@hotmail.com |
| 28 | aliexpress.com/store/1342088 | ellyse | 13489453451@163.com |
| 29 | aliexpress.com/store/1353295 | KIDS FUN | 349338781@qq.com |
| 30 | aliexpress.com/store/1357962 | Kung Hei Fat Choy 8858 | zhuhongzhen1965@163.com |
| 31 | aliexpress.com/store/1382821 | mangofashion | 85481380@qq.com |
| 32 | aliexpress.com/store/1422232 | Fashion Lemon Tree | jerryzou29@21cn.com |
| 33 | aliexpress.com/store/1454646 | seraph | billing@captainmro.com |
| 34 | aliexpress.com/store/204191 | Top fashion designer jewelry wholesale | jennyshuyangyang@gmail.com |
| 35 | aliexpress.com/store/208325 | Yiwu Zenga Accessory Firm | lleejewelry@gmail.com |
| 36 | aliexpress.com/store/322972 | Small fashion boutique-No.322972 | gunningojrp@163.com |
| 37 | aliexpress.com/store/324650 | Fashion Flash | 15000120511@163.com |
| 38 | aliexpress.com/store/329890 | Daisie wholesale baby's store | annadj@outlook.com |
| 39 | aliexpress.com/store/422159 | Baby and Mami | ta2_piercing@yahoo.com |
| 40 | aliexpress.com/store/520863 | ma marry | easyfornetlife@163.com |
| 41 | aliexpress.com/store/523937 | Online Store 523937 | wuwenping0613@163.com |
| 42 | aliexpress.com/store/526102 | wang song's store | wangsong0304@163.com |
| 43 | aliexpress.com/store/532825 | YOYO Fashion Show | tinachang187@gmail.com |
| 44 | aliexpress.com/store/538539 | Kau per honglimintianlei | 292450388@qq.com |
| 45 | aliexpress.com/store/622688 | jay liu | yiode2011@gmail.com |
| 46 | aliexpress.com/store/633955 | YOYO's Beauty Store | angie198725@163.com |
| 47 | aliexpress.com/store/716954 | BASIC HOUSE | vicky_sumaitong@163.com |
| 48 | aliexpress.com/store/716970 | Han sports store | 31318753@qq.com |
| 49 | aliexpress.com/store/721017 | xue xufen | guzhe222@163.com |
| 50 | aliexpress.com/store/817189 | Chinese Bao's Industrial Co. Ltd. | bcd0702@163.com |
| 51 | aliexpress.com/store/818741 | Maureen Fashion Store | 450501142@qq.com |

| 52 | aliexpress.com/store/839440 | KARAN | 997065746@qq.com |
| 53 | aliexpress.com/store/839440 | KARAN | mcwyq1991@hotmail.com |
| 54 | aliexpress.com/store/919000 | Global Way | cherny@live.cn |
| 55 | aliexpress.com/supplier-fm/wholesale-products/214670553-productlist.html | xiaohong liu | yayapei0122@126.com |
| 56 | c2coffer.com/store/bagmarket.html | bagmarket | merryme001@hotmail.com |
| 57 | aliexpress.com/store/1266216 | Meng Jiang | hui0509hao@hotmail.com |
| 58 | ioffer.com/selling/baby521baby | baby521baby | qiqixixiha808@yeah.net |
| 59 | ioffer.com/selling/baby521baby | baby521baby | wwwmiao819@yeah.net |
| 60 | ioffer.com/selling/beltmall | beltmall | tujish183@163.com |
| 61 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | cisarejves6582@hotmail.com |
| 62 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | faserdyew45741@hotmail.com |
| 63 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | guperfnews5487@hotmail.com |
| 64 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | hakertwusty5456@hotmail.com |
| 65 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | juratfers45778@hotmail.com |
| 66 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | lerewtasfr54822@hotmail.com |
| 67 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | nerfuscerw5487@hotmail.com |
| 68 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | olerascrtw@hotmail.com |
| 69 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | saregtusw45787@hotmail.com |
| 70 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | versxedu2012@hotmail.com |
| 71 | ioffer.com/selling/bestoftrade2011 | bestoftrade2011 | vurotmesw6487@hotmail.com |
| 72 | ioffer.com/selling/guccimall | guccimall | daoxia943@163.com |
| 73 | ioffer.com/selling/guccimall | guccimall | weizid760@163.com |
| 74 | ioffer.com/selling/haishi | haishi | jeanchen8016@163.com |
| 75 | ioffer.com/selling/haishi | haishi | niushan1988@126.com |
| 76 | ioffer.com/selling/hyermonrs | hyermonrs | haiyueming259@126.com |

| 77 | ioffer.com/selling/hyermonrs | hyermonrs | ronghua319@126.com |
|---|---|---|---|
| 78 | ioffer.com/selling/hyermonrs | hyermonrs | yansuo382@126.com |
| 79 | ioffer.com/selling/ipad8s | ipad8s | demadadi807@yeah.net |
| 80 | ioffer.com/selling/isarkstore | isarkstore | specialmarket1@hotmail.com |
| 81 | ioffer.com/selling/jaydrage | jaydrage | bedeage@hotmail.com |
| 82 | ioffer.com/selling/jaydrage | jaydrage | chamas@sina.com |
| 83 | ioffer.com/selling/jaydrage | jaydrage | joneslescote@outlook.com |
| 84 | ioffer.com/selling/jtome38 | jtome38 | ttdk863@hotmail.com |
| 85 | ioffer.com/selling/lindejie6853 | lindejie6853 | xcverg0835@outlook.com |
| 86 | ioffer.com/selling/lindejie6853 | lindejie6853 | YANYANSUN |
| 87 | ioffer.com/selling/longhua688 | longhua688 | baidu5188@126.com |
| 88 | ioffer.com/selling/longhua688 | longhua688 | guihuaxiang929@yeah.net |
| 89 | ioffer.com/selling/longhua688 | longhua688 | guokecongcong33@163.com |
| 90 | ioffer.com/selling/longhua688 | longhua688 | shenzhouxing5689@126.com |
| 91 | ioffer.com/selling/longhua688 | longhua688 | shuguang2668@163.com |
| 92 | ioffer.com/selling/longhua688 | longhua688 | taoshengyijiu68@yeah.net |
| 93 | ioffer.com/selling/longhua688 | longhua688 | tianruoyouqing89@163.com |
| 94 | ioffer.com/selling/mytrade111 | mytrade111 | balaqian@163.com |
| 95 | ioffer.com/selling/mytrade111 | mytrade111 | gooffer2014@163.com |
| 96 | ioffer.com/selling/newbiaozhi408 | newbiaozhi408 | qqdhwef4@126.com |
| 97 | ioffer.com/selling/newbiaozhi408 | newbiaozhi408 | zuoxiangqichengy@126.com |
| 98 | ioffer.com/selling/normandie19440606 | normandie19440606 | dong88815@163.com |
| 99 | ioffer.com/selling/normandie19440606 | normandie19440606 | vipme_1@126.com |
| 100 | ioffer.com/selling/prettystore0918 | prettystore0918 | shaieshaie34@gmail.com |
| 101 | ioffer.com/selling/timesup | timesup | zamancan14@mynet.com |
| 102 | ioffer.com/selling/wanju62ra | wanju62ra | le258le@163.com |
| 103 | ioffer.com/selling/warmhome518 | warmhome518 | alkkshd@163.com |
| 104 | ioffer.com/selling/yiluxiangqiankan1546 | yiluxiangqiankan1546 | JEFFREYFORD024@hotmail.com |
| 105 | user.qzone.qq.com/934296491/4 | user.qzone.qq.com/934296491/4 | susan@teenessentialz.com |
| 106 | 46497165.v.yupoo.com | 46497165.v.yupoo.com | trustme8188@yahoo.com |
| 107 | gomq.v.yupoo.com | gomq.v.yupoo.com | chengcheng0306@outlook.com |
| 108 | q77138867.v.yupoo.com | q77138867.v.yupoo.com | buyerspace@hotmail.com |
| 109 | wjixing88.v.yupoo.com | wjixing88.v.yupoo.com | wjixing88@tom.com |

| PayPal Accounts | |
|---|---|
| **No** | **Email Address** |
| 1 | donglinsheng@gmail.com |
| 2 | fengyushanco@163.com |
| 3 | sxfjjx2004@163.com |
| 4 | xuanxuan1102@hotmail.com |
| 5 | jiangsh_520@163.com |
| 6 | shorelinecn@gmail.com |
| 7 | 281021701@qq.com |
| 8 | gzsuchu1928@gmail.com |
| 9 | 919137475@qq.com |
| 10 | liuxueqing520@hotmail.com, |
| 11 | zf.nicole517@hotmail.com |
| 12 | 1225535765@qq.com |
| 13 | wonson6@163.com |
| 14 | 2353007329@qq.com |
| 15 | 932663000@qq.com |
| 16 | doodo.design@gmail.com |
| 17 | mkhe-FACTORY@hotmail.com |
| 18 | songfenggai28@163.com |
| 19 | woshishenzhiqi@126.com |
| 20 | dh13822108988@163.com |
| 21 | celiajwon@gmail.com |
| 22 | gzsuchu1928@gmail.com |
| 23 | yinping0826@hotmail.com |
| 24 | zhaoyangaitu@163.com |
| 25 | lihongna147258@hotmail.com |
| 26 | dh13822108988@163.com |
| 27 | xiaoli0922@hotmail.com |
| 28 | 13489453451@163.com |
| 29 | 349338781@qq.com |
| 30 | zhuhongzhen1965@163.com |
| 31 | 85481380@qq.com |
| 32 | jerryzou29@21cn.com |
| 33 | billing@captainmro.com |
| 34 | jennyshuyangyang@gmail.com |
| 35 | lleejewelry@gmail.com |
| 36 | gunningojrp@163.com |
| 37 | 15000120511@163.com |
| 38 | annadj@outlook.com |
| 39 | ta2_piercing@yahoo.com |

| 40 | easyfornetlife@163.com |
|----|------------------------|
| 41 | wuwenping0613@163.com |
| 42 | wangsong0304@163.com |
| 43 | tinachang187@gmail.com |
| 44 | 292450388@qq.com |
| 45 | yiode2011@gmail.com |
| 46 | angie198725@163.com |
| 47 | vicky_sumaitong@163.com |
| 48 | 31318753@qq.com |
| 49 | guzhe222@163.com |
| 50 | bcd0702@163.com |
| 51 | 450501142@qq.com |
| 52 | 997065746@qq.com |
| 53 | mcwyq1991@hotmail.com |
| 54 | cherny@live.cn |
| 55 | yayapei0122@126.com |
| 56 | merryme001@hotmail.com |
| 57 | hui0509hao@hotmail.com |
| 58 | qiqixixiha808@yeah.net |
| 59 | wwwmiao819@yeah.net |
| 60 | tujish183@163.com |
| 61 | cisarejves6582@hotmail.com |
| 62 | faserdyew45741@hotmail.com |
| 63 | guperfnews5487@hotmail.com |
| 64 | hakertwusty5456@hotmail.com |
| 65 | juratfers45778@hotmail.com |
| 66 | lerewtasfr54822@hotmail.com |
| 67 | nerfuscerw5487@hotmail.com |
| 68 | olerascrtw@hotmail.com |
| 69 | saregtusw45787@hotmail.com |
| 70 | versxedu2012@hotmail.com |
| 71 | vurotmesw6487@hotmail.com |
| 72 | daoxia943@163.com |
| 73 | weizid760@163.com |
| 74 | jeanchen8016@163.com |
| 75 | niushan1988@126.com |
| 76 | haiyueming259@126.com |
| 77 | ronghua319@126.com |
| 78 | yansuo382@126.com |
| 79 | demadadi807@yeah.net |
| 80 | specialmarket1@hotmail.com |

| 81 | bedeage@hotmail.com |
| 82 | chamas@sina.com |
| 83 | joneslescote@outlook.com |
| 84 | ttdk863@hotmail.com |
| 85 | xcverg0835@outlook.com |
| 86 | YANYANSUN |
| 87 | baidu5188@126.com |
| 88 | guihuaxiang929@yeah.net |
| 89 | guokecongcong33@163.com |
| 90 | shenzhouxing5689@126.com |
| 91 | shuguang2668@163.com |
| 92 | taoshengyijiu68@yeah.net |
| 93 | tianruoyouqing89@163.com |
| 94 | balaqian@163.com |
| 95 | gooffer2014@163.com |
| 96 | qqdhwef4@126.com |
| 97 | zuoxiangqichengy@126.com |
| 98 | dong88815@163.com |
| 99 | vipme_1@126.com |
| 100 | shaieshaie34@gmail.com |
| 101 | zamancan14@mynet.com |
| 102 | le258le@163.com |
| 103 | alkkshd@163.com |
| 104 | JEFFREYFORD024@hotmail.com |
| 105 | paysellbuy@gmail.com |
| 106 | susan@teenessentialz.com |
| 107 | superangeloh@gmail.com |
| 108 | 995077426@qq.com |
| 109 | paypal@casesfactory.com |
| 110 | ideweesrywt@yahoo.com |
| 111 | mhschroen@yahoo.com |
| 112 | 882235003@139.com |
| 113 | linmeifang1985@hotmail.com |
| 114 | bdanleyvxlb@yahoo.com |
| 115 | whlnolaserna@yahoo.com |
| 116 | baocwang@163.com |
| 117 | sophiaclf@yahoo.cn |
| 118 | feixia6100@126.com |
| 119 | newgogo@126.com |
| 120 | villanuevaroy80@yahoo.com |
| 121 | caoaguishui@163.com |

| 122 | xiazheyuan@hotmail.com |
|-----|------------------------|
| 123 | ckl20148@126.com |
| 124 | joyousbuy@163.com |
| 125 | degroo8907@yahoo.com |
| 126 | seakmyeenr@yahoo.com |
| 128 | outletbagsonlinesale365@gmail.com |
| 129 | johnsming1018@gmail.com |
| 130 | omar_fly@outlook.com |
| 131 | cargo.service@hotmail.com |
| 132 | oodbags@hotmail.com |
| 133 | katesqkrz@hotmail.com |
| 134 | watcheswhy@hotmail.com |
| 135 | admin@cc.cc |
| 136 | shelley353@gmail.com |
| 137 | lovefashionfu@hotmail.com |
| 138 | chooseitem123@163.com |
| 139 | dahanchina008008@163.com |
| 140 | trustme8188@yahoo.com |
| 141 | chengcheng0306@outlook.com |
| 142 | buyerspace@hotmail.com |
| 143 | wjixing88@tom.com |
| 144 | mohong122@qq.com |

| Other Email Addresses | |
|-----|------------------------|
| **No** | **Email Address** |
| 1 | achatmarque@hotmail.com |
| 2 | altas1991@yahoo.co.jp |
| 3 | annaservicesacs@hotmail.com |
| 4 | appareltop@hotmail.com |
| 5 | appareltops@gmail.com |
| 6 | bagsonlinesalecontact@gmail.com |
| 7 | beltsgift@163.com |
| 8 | bestreplicahandbags2@gmail.com |
| 9 | brandsalescustomercenter@gmail.com |
| 10 | brandsbagsbuy@hotmail.com |
| 11 | brandshoescap@hotmail.com |
| 12 | burberryoutletpro@gmail.com |
| 13 | burberryoutletstoresbo@hotmail.com |
| 14 | burberrysaleau.com@gmail.com |
| 15 | buycheaptee@gmail.com |

| 16 | buywatchshop@gmail.com |
|----|------------------------|
| 17 | cheapshop88@yahoo.cn |
| 18 | cheaptnmall@hotmail.com |
| 19 | Childsalon@hotmail.com |
| 20 | clothinghutchina@hotmail.com |
| 21 | cnreplica4u@gmail.com |
| 22 | customerservice-online24hs@hotmail.com |
| 23 | eshoptimes@gmail.com |
| 24 | FashionHandbagsonSale@hotmail.com |
| 25 | hervelegercheapsale@gmail.com |
| 26 | info@replicabagsnow.com |
| 27 | jerseyfrsale@hotmail.com |
| 28 | kerytony@hotmail.com |
| 29 | leo-han@hotmail.com |
| 30 | lovebagshome@gmail.com |
| 31 | luxurybrandscustomerservice@gmail.com |
| 32 | lvnike9@gmail.com |
| 33 | marquelinks@hotmail.com |
| 34 | meifang0594@ymail.com |
| 35 | muffler-shawl-scarf@hotmail.com |
| 36 | mustluxe1@gmail.com |
| 37 | newmarquekey@hotmail.com |
| 38 | onlineservice24hs@gmail.com |
| 39 | rachelwatchbag@gmail.com |
| 40 | replicabagshome@hotmail.com |
| 41 | replicabagsnow@hotmail.com |
| 42 | replica-clothing@hotmail.com |
| 43 | replicahiphop@gmail.com |
| 44 | replicahiphop@yahoo.com |
| 45 | replicastores@gmail.com |
| 46 | sacmarque@hotmail.com |
| 47 | sales@2014luxurybrand.com |
| 48 | sales@shop.com |
| 49 | sales@yoursorder.com |
| 50 | service.scarf@hotmail.com |
| 51 | Service@wholesale0086.com |
| 52 | servicesonline2013@gmail.com |
| 53 | sessoebasta@hotmail.com |
| 54 | shoesbagcn@hotmail.com |
| 55 | shoeslead@hotmail.com |
| 56 | shoesnfl@hotmail.com |

| 57 | shoesnfl@yahoo.com.cn |
| 58 | shoppingserviceonline@gmail.com |
| 59 | shoppingyours1866@hotmail.com |
| 60 | shoxtnmall@hotmail.com |
| 61 | support@newbagmall.com |
| 62 | support@shop.com |
| 63 | tangfei158@yahoo.cn |
| 64 | top1stores@gmail.com |
| 65 | transoffer@hotmail.com |
| 66 | tshirtbon@hotmail.com |
| 67 | tshirtmarque@hotmail.fr |
| 68 | ventefrmarque@hotmail.com |
| 69 | victoryltd@hotmail.com |
| 70 | vindyzhao@gmail.com |
| 71 | viphelpcenter@hotmail.com |
| 72 | wholesalebar@hotmail.com |
| 73 | Wholesaleok@hotmail.com |

🏴 KeyCite Yellow Flag - Negative Treatment

Distinguished by Buzz Bee Toys, Inc. v. Swimways Corp., D.N.J., May 15, 2014

2010 WL 2521444
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

COACH, INC. and Coach
Services, Inc., Plaintiff,

v.

OCEAN POINT GIFTS and
Does 1 Through 10, Defendant.

Civil Action No. 09–4215 (JBS).
|
June 14, 2010.

West KeySummary

1   **Trademarks** 🔑 Measure and amount

A designer handbag manufacturer was entitled to $200,000.00 in damages against a store that sold counterfeit handbags bearing the manufacturer's trademarks. The manufacturer was entitled to an award of $10,000 per infringement for 20 infringements based on the wilfulness shown by the store which continued to sell the counterfeit bags after receiving the manufacturer's complaint and its culpability of failing to respond to the manufacturer's complaint. Lanham Act, § 35(a–b), 15 U.S.C.A. § 1117(a–b).

24 Cases that cite this headnote

**Attorneys and Law Firms**

Erica Susan Helms, Esq., Sterns & Weinroth, PC, Trenton, NJ, for Plaintiffs.

***OPINION***

SIMANDLE, District Judge.

**\*1** This matter comes before the Court on Plaintiffs Coach, Inc. and Coach Services, Inc.'s ("Coach") motion for default judgment (Docket No. 9) as against Defendant Ocean Point Gifts ("Defendant"). For the reasons expressed below, the Court will grant Plaintiffs' motion.

**I. BACKGROUND**

**A. Facts**[1]

For over sixty years Coach has been in the trade of luxury fashion accessories. Coach manufactures, markets, and sells a variety of goods including, most prominently, handbags. Coach sells its goods through its own specialty retail stores, department stores, catalogs, and via the Internet at www.coach.com. Coach owns a number of trademarks, trade dresses, and design elements/copyrights that it uses on its products.

Based on information obtained from a private investigator and Coach staff, Coach alleges that Defendant Ocean Point Gifts has sold counterfeit Coach items at its store located at 1631 Boardwalk, Atlantic City, New Jersey. (Compl. ¶ 28; Smith Decl. ¶¶ 3–4.) For example, Defendant sold a $12.99 imitation of a $200 Coach wallet that included a paper insert reading "The Coach Signature Collection" with contact information for Coach Consumer Service. (Smith Decl. ¶¶ 5–6.) Ocean Point Gifts has not been given permission to use the Coach trademarks. (Pyatt Decl. ¶ 11; Compl. ¶ 33.)

Plaintiffs served Defendant Ocean Point Gifts with a copy of the summons and complaint on August 23, 2009. (Docket No. 5.) On November 20, 2009, nearly three months after process was served, the investigator returned to the store and found that the Defendant was still selling counterfeit Coach products. (Smith Decl. ¶ 8.) Coach alleges that Defendant Ocean Point Gifts has engaged in selling counterfeit goods knowingly and intentionally for the purpose of trading on the reputation of Coach and that Defendant will continue to do so unless otherwise restrained. (Compl.¶¶ 34, 36.)

**B. Procedure**
On August 18, 2009, the Plaintiffs filed a nine-count Complaint against Ocean Point Gifts and ten John Does presenting claims of trademark counterfeiting (15 U.S.C. § 1114), trademark infringement (15 U.S.C. § 1114),

Coach, Inc. v. Ocean Point Gifts, Not Reported in F.Supp.2d (2010)

2010 WL 2521444

trade dress infringement (15 U.S.C. § 1125(a)), false designation of origin and false advertising (15 U.S.C. § 1125(a)), trademark dilution (15 U.S.C. § 1125(c)), copyright infringement (17 U.S.C. §§ 501–513), trafficking in counterfeit trademarks (N.J.Stat.Ann. § 56:3–13.16), unfair competition (N.J.Stat.Ann. §§ 56:4–1, 56:4–2), and unjust enrichment. The Defendant was properly served on August 23, 2009, but has failed to respond. On November 10, 2009, Coach filed a request for default, which the Clerk of Court entered pursuant to Rule 55(a), Fed.R.Civ.P., on November 12, 2009. Coach now moves the Court to enter a default judgment against Defendant and seeks a permanent injunction, statutory damages, and an award of attorney fees, investigator fees, and costs.

## II. DISCUSSION

**\*2** Fed.R.Civ.P. 55(b)(2) authorizes the entry of a default judgment against a party that has defaulted. However, default judgment is not a right. *Franklin v. Nat'l Mar. Union of Am.,* No. 91–480, 1991 WL 131182, at \*1–2 (D.N.J. July 16, 1991) (quoting 10A Wright, Miller, & Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)), *aff'd,* 972 F.2d 1331, 1331 (3d Cir.1992). The decision about whether default judgment is proper is primarily within the discretion of the district court. *Hritz v. Woma Corp.,* 732 F.2d 1178, 1180 (3d Cir.1984).

### A. Standard of Review

Once a party has defaulted, the consequence is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir.1990) (internal quotations omitted) (citing *Thomas v. Wooster,* 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885)). Entry of default judgment where damages are not a sum certain requires an application to the court to prove, *inter alia,* damages. Fed.R.Civ.P. 55(b) (2); *Comdyne,* 908 F.2d at 1149. In addition, liability is not established by default alone. *D.B. v. Bloom,* 896 F.Supp. 166, 170 n. 2 (D.N.J.1995) (citing Wright, *supra,* § 2688). The Court must determine whether a sufficient cause of action was stated, *Chanel, Inc. v. Gordashevsky,* 558 F.Supp.2d 532, 535 (D.N.J.2008), and whether default judgment is proper. *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir.2000).

### B. Sufficiency of Causes of Action

In the present case, after being properly served on August 23, 2009 (Docket No. 5), the Defendant failed to appear or otherwise defend and the Clerk of the Court entered a default. Therefore, the first issue is whether the Plaintiffs have stated a sufficient cause of action. As will be explained below, the Court determines that Coach has established Defendant's liability for the purposes of this default judgment motion.

#### 1. *Federal Claims*

In their Complaint, Plaintiffs have asserted six federal claims against the Defendant: trademark counterfeiting (15 U.S.C. § 1114(1)(a)); trademark infringement (15 U.S.C. § 1114(1) (a)); trade dress infringement (15 U.S.C. § 1125(a)); false designation of origin and false advertising (15 U.S.C. § 1125(a)(1)(A)); trademark dilution (15 U.S.C. § 1125(c)); and copyright infringement (17 U.S.C. §§ 501–513). Each was stated sufficiently to establish liability based on federal law.

#### a. Trademark Infringement (15 U.S.C. § 1114(1)(a)) and False Designation (15 U.S.C. § 1125(a)(1)(A))

Trademark infringement (Count II) and false designation (Count IV) are measured by identical standards. *A & H Swimwear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 210 (3d Cir.2000). The record must show: (1) the plaintiff has a valid and legally protectable mark, (2) the plaintiff owns the mark, and (3) the defendant's use of the mark causes a likelihood of confusion. *Id.*

**\*3** The first two elements are satisfied by registration and ownership of the relevant trademarks. (Compl.¶¶ 14–15.) The third element is also satisfied. In the Complaint (Compl.¶ 49) and through exhibits, (*e.g.* Smith Decl., Ex. B) the record has uncontested assertions and evidence that are sufficient to show a likelihood of confusion between the counterfeit handbags and genuine Coach product. Further, it is reasonable to believe that some consumers would be confused by these counterfeit products. *See Coach, Inc. v. Cellular Planet,* No. 2:09–cv–00241, 2010 WL 1853424, at \*1, \*4 (S.D.Ohio, May 7, 2010) (holding that although the counterfeit items could be distinguished from genuine Coach items because they were being sold out of a trunk of a car, the counterfeit nature of the products meant they were inherently likely to cause confusion). Therefore, a cause of action for trade infringement and false designation has been sufficiently established.

#### b. Trademark Counterfeiting (15 U.S.C. § 1114(1)(a))

To establish trademark counterfeiting (Count I) the record must show (1) the defendant infringed a registered trademark

Coach, Inc. v. Ocean Point Gifts, Not Reported in F.Supp.2d (2010)

2010 WL 2521444

in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (2) the defendant intentionally used the trademark knowing it was counterfeit or was willfully blind to such use. *Chanel v. Gordashevsky,* 558 F.Supp.2d at 537. "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." *Chanel v. Gordashevsky,* 558 F.Supp.2d at 536–537. Intent can be inferred from continued use after being given notice. *Platypus Wear, Inc. v. Bad Boy Club, Inc.,* No. 08–02662, 2009 WL 2147843, at *6 (D.N.J. July 15, 2009)

Here, both elements of trademark counterfeiting are met. As discussed above, a trademark was infringed. The alleged willfulness of the Defendant (Compl.¶ 41) is confirmed by evidence showing the Defendant continuing to sell the handbags nearly three months after being served with notice of the Complaint. (Smith Decl. ¶ 8, Ex. C.) Therefore, a cause of action for trademark counterfeiting has been sufficiently established.

### c. Trade Dress Infringement (15 U.S.C. § 1125(a))

To establish trade dress infringement (Count III), a plaintiff must show: (1) the allegedly infringing design is nonfunctional, (2) the design is inherently distinctive or has acquired secondary meaning, and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product. *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC,* 511 F.3d 350, 357 (3d Cir.2007).

Each of these elements was stated in the Complaint, (Compl.¶¶ 57–59) and was not contested. The Court is therefore satisfied that the Plaintiffs have a meritorious claim for trade dress infringement based on the non-functional nature of the infringement, the distinctiveness of the Coach elements, and the likelihood of confusion.

### d. Trademark Dilution (15 U.S.C. § 1125(c))

**\*4** To establish trademark dilution under the Lanham Act a plaintiff must prove:

(1) the plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of eight factors listed in § 1125(c)(1); (2) the defendant is making commercial use in interstate commerce of a mark or trade name; (3) defendant's use began after the plaintiff's mark

became famous; and (4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

*Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC,* 212 F.3d 157, 163 (3d Cir.2000); *800–JR–Cigar, Inc. v. GoTo.com, Inc.,* 437 F.Supp.2d 273, 293 (D.N.J.2006).

As set forth in Count V of the Complaint, the Plaintiff has shown that the relevant Coach marks are "famous" and Defendant's actions lessen the capacity of such marks to identify and distinguish Coach products. (Compl.¶¶ 75–76.) The interstate nature of the commerce and the timing of the Defendant's use of the mark is not perfectly clear from the record. Private investigator Erin Smith, employed by a Pennsylvania investigative firm, purchased a wallet at Defendant's store. (Smith Decl. ¶¶ 2, 5.) This is evidence that the Defendant is involved in interstate commerce. Similarly, although uncertain due to the Defendant's failure to respond, the Defendant's use almost certainly began following the time when the Plaintiffs' marks became famous. Therefore, the Court will accept that these elements are satisfied and a cause of action for trademark dilution has been established.

### e. Copyright Infringement (17 U.S.C. §§ 501–513)

To establish copyright infringement pursuant to 17 U.S.C. §§ 501–513, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Dam Things from Denmark v. Russ Berrie & Co., Inc.,* 290 F.3d 548, 561 (3d Cir.2002). The copying element can be proven by showing that the defendant had access to the work and there are substantial similarities between the two works. *Dam Things,* 290 F.3d at 561. Both elements have been sufficiently asserted to state a cause of action for copyright infringement. (Compl.¶¶ 84–86.) Therefore, a cause of action for copyright infringement has been established.

### 2. *State Claims*

In their Complaint Plaintiffs have also asserted three state law claims: trademark counterfeiting (N.J.Stat.Ann. § 56:3–13.16); unfair competition (N.J.Stat.Ann. §§ 56:4–1, 56:4–2); and unjust enrichment. The state common law claim was sufficiently stated and because federal liability has already been established, state statutory liability is also met.

### a. State Statutory Claims

N.J. Stat. Ann. § 56:3–13.16 provides civil liability against a person who engages in trafficking of counterfeit marks and N.J. Stat. Ann. § 56:4–2 provides civil liability against a person who appropriates trademarks. These state law claims are similar to the federal Lanham Act claims and this Court has found liability under federal law to be sufficient to establish liability under state law. *See Axelrod v. Heyburn,* No. 09–5627, 2010 WL 1816245, at *3 (D.N.J. May 3, 2010); *Zinn v. Seruga,* No. 05–3572, 2009 WL 3128353, at *27–*28 (D.N.J. Sept.28, 2009); *N.V.E., Inc. v. Day,* No. 07–4283, 2009 WL 2526744, at *2 (D.N.J. Aug.18, 2009). Therefore, because Plaintiffs have established liability for their federal claims for trademark counterfeiting, the Plaintiffs have also established trademark counterfeiting under N.J. Stat. Ann. § 56:3–13.16 and unfair competition under N.J. Stat. Ann. §§ 56:4–1, 56:4–2.

**b. Unjust Enrichment**

**\*5** The Plaintiffs have stated a claim under New Jersey common law for unjust enrichment. (Compl.¶ 107.) Here the Defendant was profiting from counterfeit items based on Coach's reputation. It would be unjust for the Defendant to enrich itself without compensating the Plaintiffs, so a cause of action for unjust enrichment has been established. *See Howard Johnson Int'l, Inc. v. Vraj Brig, LLC,* No. 08–1466, 2010 WL 215381, at *9 (D.N.J. Jan.14, 2010) (citing *Kopin v. Orange Prod.s, Inc.,* 297 N.J.Super. 353, 366–68, 688 A.2d 130 (N.J.Super.Ct.App.Div.1997)).

In sum, each count of the complaint stated a sufficient cause of action that is supported by evidence in the record. The Court now turns to whether default judgment is proper.

**C. Default Judgment**

"Before imposing the extreme sanction of default [judgment], district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,* 250 F.R.D. 171, 177 (D.N.J.2008) (citing *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir.1987)).

The current record does not show any meritorious defenses. Because the Defendant did not respond, the Court cannot determine whether the Defendant had meritorious defenses that are not reflected in the record. The Plaintiffs have been prejudiced by the Defendant's failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion. Defendant was properly served, yet failed to appear or defend itself in any fashion and has continued to sell bags. (*See* Smith Decl. ¶ 8.) It has been nearly a year and the Defendant has failed to contact the Court or the Plaintiffs. This shows the Defendant's culpability in its default. *See Platypus Wear,* 2009 WL 2147843 at *5. Plaintiff is entitled to default judgment against Defendant Ocean Point Gifts.

**D. Remedies**

*1. Statutory Damages*

The Lanham Act provides that a plaintiff can elect to recover either actual damages based on the defendant's profits and the plaintiff's damages (15 U.S.C. § 1117(a)) or statutory damages (15 U.S.C. § 1117(c)). The Plaintiffs have elected to recover statutory damages. (Mem. in Supp. of Mot. for Default J. and Permanent Inj., 11.) As discussed below, after considering past awards in this District, the point of sale, the extent of sales, and the lack of evidence concerning plaintiffs' losses, the Court will award $200,000 in statutory damages.

For statutory damages the plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1)). If the use of the counterfeit mark was willful, the maximum increases to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2). For use to be willful, a defendant must show an "aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark ... in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *SecuraComm Consulting Inc. v. Securacom Inc.,* 166 F.3d 182, 187 (3d Cir.1999) (citations and internal marks omitted), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky,* 399 F.3d 182, 187 (3d Cir.1999).

**\*6** "In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors considered for statutory damages in copyright infringement." *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 583–84 (E.D.Pa.2002) (citing cases showing wide range of statutory damages awarded by district courts). Because statutory damages are meant to serve as a substitute for actual damages the Court should discern whether the requested damages

2010 WL 2521444

"bear some relation to the actual damages suffered." *Bly v. Banbury Books, Inc.,* 638 F.Supp. 983, 987 (E.D.Pa.1986); *see also Gucci Am. V. Duty Free Apparel, Ltd.,* 315 F.Supp.2d 511, 520 (S.D.N.Y.2004) ("To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'") (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[E][1], at 14–69 (2003.))

To assess whether the request is appropriate, the Court may be guided by past statutory damage awards. *See Louis Vuitton Malletier, S.A. v. Mosseri,* No. 07–2620, 2009 WL 3633882, at *3 (D.N.J. Oct.28, 2009); *N.V.E.,* 2009 WL 2526744, at *3–*4; *Louis Vuitton & Oakley,* 211 F.Supp.2d at 583–84. The recent Lanham Act cases in this District for counterfeit products can be generally grouped under two categories: Internet cases and cigarette cases.

The typical Internet case involves a suit against someone selling counterfeit luxury items on the Internet. These cases often have high damage awards due in part to the wide market exposure that the Internet can provide. *See Louis Vuitton v. Mosseri,* 2009 WL 3633882, at *3 (awarding $25,141.31 per infringement for $4,072,892.22 total); *Chanel, Inc. v. Guetae,* 2009 WL 1653137, at *5 (D.N.J. June 8, 2009) (awarding $490,818.45 total); *Chanel, Inc. v. Mosseri,* No. 07–2619, Order at 2 (D.N.J. May 20, 2008) (awarding $180,000 per infringement for $3,780,000 total); *Chanel v. Gordashevsky,* 558 F.Supp.2d at 538 (awarding $2,238,624.50 total); *Chanel, Inc. v. Craddock,* No. 05–1593, 2006 WL 1128733, at *1 (D.N.J. April 27, 2006) (awarding $100,000 per infringement for $8,100,000 total); *see also Louis Vuitton & Oakley,* 211 F.Supp.2d 567, 584–85 (awarding $1,500,000 total and stating "the point of sale is very relevant to the statutory damages discussion").

The typical cigarette case involves a small retail store selling counterfeit cigarettes. These cases have dramatically lower damage awards. *See Philip Morris USA, Inc. v. Jaritza Supermarket, Inc.,* No. 09–CVS–2372, 2009 WL 4496047, at *2 (D.N.J. Nov.9, 2009) (awarding $4,000 total); *Philip Morris USA, Inc. v. Dorta Bars & Liquor, Inc.,* No. 07–4599, Order of June 1, 2009 at 3 (D.N.J. June 1, 2009) (awarding $1,000 each against two defendants). These awards were similar to cigarette case settlement amounts enforced by this Court. *See Lorillard Tobacco Co. v. Asian Am. Mkt.,* No. 06–cv–00948, Order at 2 (D.N.J. July 7, 2008) (settlement of $3,000); *Lorillard Tobacco Co. v. Atlantic Produce &*

*Supermarket,* No. 06–cv–951, Consent Judgment at 1 (D.N.J. Feb. 13, 2008) (settlement of $20,000).

**\*7** This case falls somewhere between the Internet cases and the cigarette cases. While the counterfeit products at issue were not widely distributed via the Internet, they are counterfeit luxury items of far greater value than cigarettes. If the Internet cases represent "the new era of counterfeiting," *Louis Vuitton & Oakley,* 211 F.Supp.2d at 584, this case reminds us that there are still hucksters on the boardwalk capitalizing on the famous marks of others. To determine damages when there is less guidance from other cases this Court has adopted factors that have been used in the Second Circuit:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Platypus Wear,* 2009 WL 2147843, at *7; *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1117 (2d Cir.1986).

As discussed earlier in the context of trademark counterfeiting, the Defendant's conduct was willful, so the maximum award of $2,000,000 per counterfeit mark per type of good sold is available. Four types of goods were sold by the Defendant that carried counterfeit Coach marks: handbags, wallets, scarves, and hats[2]. Five Coach trademarks were infringed: the "Signature C;"[3] "Coach Leatherware Est.1941;"[4] "COACH;"[5] "Coach & Lozenge Design;"[6] and "Coach Op Art"[7]).

Because there are four types of goods and five marks, the statutory damage amount must be not less than $20,000 or more than $40,000,000. The Plaintiffs have requested one hundred times the minimum statutory damages, $100,000 per mark per good for a total of $2,000,000. However, the Plaintiffs have provided no information about their lost revenue or the value of their trademarks, trade dresses, and copyrights. While the Court is tempted to follow the approach of *Philip Morris v. Dorta Bars* and ask for an affidavit supporting its damage request, 2009 WL 872026, at *3 (D.N.J. Mar.30, 2009), the Court recognizes that the root of this deficiency is Defendant's failure to respond.

The Court chooses to follow the approach of *Platypus Wear* and award $10,000 per infringement for $200,000 total, ten times the minimum statutory damages. 2009 WL 2147843, at *7. This amount is within the guidelines established by Congress, takes into account the wilfulness shown by continuing to sell bags after receiving the Complaint and the culpability of failing to respond, and is significant enough to serve as compensation to the Plaintiffs and a deterrent to both the Defendant and others. This award also acknowledges that the sales take place at a small shop on the boardwalk rather than the Internet. This award is consistent with another recent case in this District which only increased the award beyond $10,000 per infringement due to the mass-distribution of a banned substance using the Internet. *N.V.E.,* 2009 WL 2526744, at *4 (awarding $250,000 even though plaintiff requested $2,000,000). Because neither the Internet nor a banned substance is present here, ten times the minimum, namely $10,000 per infringement, is appropriate, for each of the twenty infringements.

**\*8** To check whether this amount "bears some relation," *Bly,* 638 F.Supp. at 987, the Court will approximate what the Plaintiff may have gotten based on an "actual damages" calculation under 15 U.S.C. §§ 1117(a)-(b). *See Malletier v. Apex Creative Int'l Corp.,* 687 F.Supp.2d 347, 355–356 (S.D.N.Y.2010).

During the November 20, 2009 visit[8] by Investigator Smith there were 25 bags priced at $24.99, 60 handbags priced from $39.00 to $59.00 and 5 scarf and hat matching sets with an unstated price. (Smith Decl. ¶ 8.) If the Court assumes that the scarf and hat sets were also priced $39.00 to $59.00, then the value of the displayed inventory that day was between $3,159.75 and $4,459.75. Assuming the store sold this volume of displayed inventory each week and the store had a 300% profit margin, then the amount of trebled damages would be between $7,109.44 and $10,034.44 per week. Thus, the "actual damages" would equal the Court's determination of statutory damages at some point between 20 and 28 weeks of sales. This period of time is approximately equal to the tourist season on the Jersey Shore. The Court's determination is more reasonable than the requested award of $2,000,000 which would not approximate actual damages without four to six years of brisk year-round sales of counterfeit items.

Thus, considering the limited record of losses, the point of sale, and the likely extent of the Defendant's business and consistent with other awards in this District, the Court will award $10,000 per infringement for $200,000 total.

### 2. *Costs and Attorney Fees*

In addition to statutory damages, Coach asks for both attorney fees and costs, which their evidence shows to be $7,648 for attorney fees, $443.33 for investigative fees, and $434.95 for costs.

The costs of actions brought under § 43(a), § 43(d), or a willful violation under § 43(c) of the Lanham Act (codified at 15 U.S.C. § 1117(a), (d), & (c), respectively) can be recovered pursuant to § 35(a) (codified at 15 U.S.C. § 1117(a)). In "exceptional cases" the court may award reasonable attorney fees. 15 U.S.C. § 1117(a). "Exceptional" has been interpreted by the Court to mean involving culpable conduct. *Securacomm,* 224 F.3d at 280. Because this case involved the culpable conduct of continuing to sell goods after the Complaint was received, then consistent with other decisions by this Court, attorney fees and costs will be awarded to the Plaintiffs.[9] *See Louis Vuitton v. Mosseri,* 2009 WL 3633882, at *4; *Chanel v. Gordashevsky,* 558 F.Supp.2d at 539.

Attorneys fees can includes fees for investigators working under the direction of an attorney. *Chanel v. Gordashevsky,* 558 F.Supp.2d at 539 (citing *Louis Vuitton S.A. v. Downtown Luggage Ctr. .,* 706 F.Supp. 839, 842 (S.D.Fla.1988); 130 Cong. Rec. H12076, H12083 (Oct. 10, 1984) (*J. Explanatory Statement on Trademark Counterfeiting Legis.)* ). Thus, in this case the fees that the Plaintiffs have paid to the investigative firm can be included in damages.

### 3. *Permanent Injunction*

**\*9** Coach also seeks the equitable relief of a permanent injunction to enjoin the Defendant from infringing Coach's trademarks. This request is consistent with 15 U.S.C. § 1116(a). The Supreme Court requires that any plaintiff seeking a permanent injunction to show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (citations omitted).

Coach, Inc. v. Ocean Point Gifts, Not Reported in F.Supp.2d (2010)

2010 WL 2521444

#### a. Irreparable Injury

The Third Circuit has explicitly stated that "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan Enter.s, Inc. v. Hardee's Food Sys.s, Inc.,* 143 F.3d 800, 805 (3d Cir.1998) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 1976 (3d Cir.1990). Thus, because a likelihood of confusion has been shown, the requirement of irreparable harm has been met.

#### b. Inadequacy of Remedies at Law

While a remedy at law would provide a degree of monetary relief, it will not compensate for the injury to Coach's reputation or necessarily prevent future trademark infringement. *Louis Vuitton v. Mosseri,* 2009 WL 3633882 at *5; See also *Audi AG v. D'Amato,* 469 F.3d 534, 550 (6th Cir.2006) (stating when there is potential for future harm there is no adequate remedy at law). A remedy at law would be inadequate to compensate Coach.

#### c. Balancing of Hardships

The only hardship imposed upon the Defendant is that they obey the law. On the other hand if an injunction were not issued then Coach suffers the hardships that gave rise to this suit, loss of reputation and sales. *Louis Vuitton v. Mosseri,* 2009 WL 3633882 at *5 (citing *Microsoft Corp. v. McGee,* 490 F.Supp.2d 874, 882–83 (S.D.Ohio 2007).

#### d. Public Interest

The Third Circuit has recognized that the public has an interest in trademark and copyright protection.

Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources that are invested in the protected work.

*Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3d Cir.1983) (quoting *Klitzner Indus., Inc. v. H.K. James & Co.,* 535 F.Supp. 1249, 1259–60 (E.D.Pa.1982). Issuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest. *Microsoft,* 490 F.Supp.2d at 883. Here the public interest is served by issuing an injunction.

**\*10** Because each of the *eBay* requirements have been met by Coach, the Court will grant Coach the relief it seeks by enjoining Defendant Ocean Point Gifts from infringing Coach's trademarks and copyrights. Ocean Point Gifts must also surrender the infringing products for destruction by freight prepaid to Coach.

In sum, the Court will grant $200,000 in statutory damages under the Lanham Act and $8,526.28 in attorney fees and litigation costs, bringing Plaintiffs' total recovery from Defendant Ocean Point Gifts to $208,526.28. In addition, the Court will permanently enjoin Ocean Point Gifts from infringing Coach's trademarks and copyrights in the future and require it to surrender all infringing products it currently possesses.

### III. CONCLUSION

For the foregoing reasons the Court will grant the Plaintiffs' motion for default judgment, award a default judgment of $208,526.28, and issue a permanent injunction. The accompanying order for default judgment and permanent injunction shall be entered.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 2521444

Footnotes

1    The facts recited herein are derived from the Plaintiffs' supporting declaration, including private investigator Richard H. Smith and Coach's Manager of Intellectual Property April E. Pyatt, and documents attached thereto.

2    Neither scarves nor hats are explicitly listed as a class of goods that the "Signature C" mark, Registration 2,822,318, is registered for under International Class 24. But because the class is broad and scarves and hats could be considered "clothing," then this will be sufficient.

3    Registration No. 2,822,318

4    Registration No. 3,441,671

5    Registration No. 1,071,000

2010 WL 2521444

6    Registration No. 1,309,779

7    Registration No. 3,696,470

8    This visit identified the largest inventory of any of the investigator's visits. During the July 13, 2009 visit by Investigator Smith there were "at least 50 different counterfeit Coach products" but no price was entered into evidence. (Smith Decl. ¶ 4.)

9    In their brief, Plaintiffs request $8,113.25 in attorney fees. The supporting documents (Davis Decl. ¶ 8; Confoy Decl. ¶ 8) show attorney costs as $7,648. The Court will only award what the evidence shows.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 169998
United States District Court,
N.D. Illinois,
Eastern Division.

DECKERS OUTDOOR
CORPORATION, Plaintiff,
v.
DOES 1–100 d/b/a the aliases
identified on Schedule "A", Defendants.

No. 12 C 10006.
|
Jan. 16, 2013.

**Attorneys and Law Firms**

Justin R. Gaudio, Kevin W. Guynn, Amy Crout Ziegler, Greer, Burns & Crain, Ltd., Chicago, IL, for Plaintiff.

*MEMORANDUM OPINION AND ORDER*

JOHN Z. LEE, District Judge.

**\*1** Plaintiff Deckers Outdoor Corporation ("Plaintiff" or "Deckers") has sued Defendants DOES 1–100 ("Defendants") for federal trademark infringement, counterfeiting and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), cyberpiracy in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and deceptive practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. § 510, *et seq.* Plaintiff is a fashion brand that produces and distributes high-end footwear products, most prominently UGG® brand products. Deckers sells UGG® brand products throughout the United States and in Illinois via a network of authorized retailers, Concept Stores and on its website, with the domain name <www.uggaustralia.com>. Deckers holds the registration for the UGG® trademark in more than 100 countries worldwide, including U.S. Trademark Registration No. 3,050,925.

Plaintiff alleges that Defendants, individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions, operate commercial websites targeting Illinois residents with offers to sell counterfeit UGG®

products. Deckers contends that Defendants use a variety of domain names set up by registrants (the "Accused Domain Names") and create websites that incorporate copyright-protected content, images, and product descriptions to mislead consumers into believing that they are purchasing genuine UGG® products.

On December 20, 2012, the Court granted Deckers' *ex parte* motion for entry of (1) a temporary restraining order ("TRO"); (2) a domain name transfer order; (3) an asset restraining order; (4) an expedited discovery order; and (5) an order permitting service of process by email and electronic publication. Defendants were served with notice of the preliminary injunction proceedings and the TRO. On December 28, 2012, this Court extended the time for the TRO to remain in effect (through 3:00 p.m. on January 16, 2013) on Plaintiff's motion, finding that Plaintiff had demonstrated good cause for the extension. On January 15, 2013, the Court held a hearing on Plaintiffs' motion for a preliminary injunction. No Defendant appeared at the preliminary injunction hearing or submitted any written objection to the motion. For the reasons set forth below, Plaintiffs' motion for entry of a preliminary injunction is granted.

**Discussion**

A party seeking a preliminary injunction must show (1) that its case has "some likelihood of success on the merits," and (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chi.,* 651 F.3d 684, 694 (7th Cir.2011). If the moving party meets these threshold requirements, the district court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* The district court's weighing of the facts is not mathematical in nature; rather, it is "more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895–96 (7th Cir.2001) (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 12 (7th Cir.1992)). The Court addresses each factor in turn.

**I. Likelihood of Success on the Merits**

**A. Trademark Claims**

Deckers Outdoor Corp. v. Does 1-100, Not Reported in F.Supp.2d (2013)

2013 WL 169998, 105 U.S.P.Q.2d 1894

**\*2** Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the defendant "without the consent of the registrant ... use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a)(1). Under the UDPTA, a defendant is liable for, among other things, (1) passing of goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a).

Deckers' Lanham Act and UDTPA claims involve the same elements. See Packaging Supplies, Inc. v. Harley–Davidson, Inc., No. 08 C 400, 2011 WL 1811446, at \*5 (N.D.Ill. May 12, 2011); Morningware, Inc. v. Hearthware Home Prods., Inc., 673 F.Supp.2d 630, 639 (N.D.Ill.2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claims under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.") (citing Gimix, Inc. v. JS & A Group, Inc., 699 F.2d 901, 908 (7th Cir.1983)). Moreover, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks .... Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (internal citations omitted).

A trademark infringement claim under the Lanham Act has two elements. See 15 U.S.C. § 1125(a). First, the plaintiff must show "that its mark is protected under the Lanham Act." Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1043 (7th Cir.2000). Second, the plaintiff must show that "the challenged mark is likely to cause confusion among consumers." Id. A court will not reach the second element "until persuaded that the mark is sufficiently distinctive to warrant prima facie protection as a trademark." Spraying Sys. Co. v. Delavan, Inc., 975 F.2d 387, 392 (7th Cir.1992).

**\*3** When considering whether a particular mark is protected under the Lanham Act, the law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. See Two Pesos, 505 U.S. at 768; Packman v. Chi. Tribune Co., 267 F.3d 628, 638 (7th Cir.2001). A plaintiff with a trademark registered in accordance with the Lanham Act is entitled to one of two presumptions: (1) that his registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning. See Packman, 267 F.3d at 638. Secondary meaning exists "only if most consumers have come to think of the mark not as descriptive at all but as the name of the product." Id. at 639. A defendant may overcome this presumption with evidence that the mark is merely generic or descriptive, or that it lacks secondary meaning. Id.

In this case, Deckers is entitled to the presumption that its marks are protected under the Lanham Act because it holds valid and subsisting registrations for trademarks in the United States. (Evert–Burks Decl. ¶ 3.) Deckers has not licensed or authorized Defendants to use any of its UGG® trademarks. (Id. ¶ 20.) Defendants have put forth no evidence that the UGG® trademarks registered by Deckers are merely generic or descriptive. Thus, Deckers satisfies the first element of its Lanham Act claim.

In determining whether a plaintiff satisfies the second element of a Lanham Act claim, that the challenged mark is likely to cause confusion among consumers, the Seventh Circuit has identified seven relevant factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. AutoZone, Inc. v. Strick, 543 F.3d 923, 929 (7th Cir.2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." Id.

Here, Deckers has submitted extensive documentation showing that Defendants are selling counterfeit versions of UGG® products. (Evert–Burks Decl. ¶ 17.) Both Deckers and Defendants advertise and sell their products over the Internet, targeting consumers looking for UGG® merchandise. (*Id.* ¶¶ 11, 17–20.) Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing authentic UGG® merchandise from counterfeit products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine UGG® products to purchase fake products instead. In that regard, Defendants use the UGG® trademark in many of their Accused Domain Names, and they advertise products that look almost exactly like authentic UGG® products and bear the UGG® logo. (Compl., Schedule A.) Although Deckers does not offer evidence of actual consumer confusion at this time, such evidence is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine UGG® merchandise. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 685 (7th Cir.2001).

**\*4** Taking the evidence as a whole, the Court believes that Deckers is likely to establish a prima facie case of trademark infringement and false designation of origin under the Lanham Act and the UDPTA sufficient to support the entry of a preliminary injunction.

### B. Cyberpiracy

Deckers also sues Defendants for cyberpiracy in violation of the ACPA. The ACPA was enacted to combat "cybersquatting," which is "the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another." *Vulcan Golf, LLC v. Google Inc.,* 726 F.Supp.2d 911, 915 (N.D.Ill.2010) (quoting *Solid Host, NL v. Namecheap, Inc.,* 652 F.Supp.2d 1092, 1099 (C.D.Cal.2009)). Cybersquatters "register well-known marks to prey on customer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site." *Id.* To state a claim under the ACPA, Deckers must show that "(1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant[s] registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant[s] had a bad faith intent to profit from that mark."[1] *MasterCard Int'l Inc. v. Trehan,* 629 F.Supp.2d 824, 830 (N.D.Ill.2009) (quoting *Flentye v. Kathrein,* 485 F.Supp.2d 903, 914 (N.D.Ill.2007)).

Here, the UGG® trademarks are well-known among fashion consumers worldwide, as evidenced by the extensive media coverage of the brand, including popular magazines like *Time, Vogue* and *Elle.* (Evert–Burks Decl. ¶¶ 12–13.) International celebrities including Kate Moss and Jennifer Aniston are frequently photographed in UGG® products. (*Id.* ¶ 13.) Additionally, Defendants register, traffic in and use domain names that are identical or confusingly similar to the well-known UGG® mark. As described above, many of Defendants' Accused Domain Names directly incorporate the word "UGG" and Defendants use copyrighted photographs of UGG® products and logos in order to sell counterfeit versions of them. These facts manifest a bad-faith intent to profit from the UGG® mark. Therefore, the Court finds that Deckers is likely to succeed on the merits of its ACPA claim.

### II. Irreparable Harm/Inadequate Remedy at Law

Having determined Deckers is likely to succeed on the merits of its claims, the Court next considers whether the company will suffer irreparable harm without a preliminary injunction, and whether the company has an adequate remedy at law. There is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss." *Abbott Labs.,* 971 F.2d at 16; *see also AM Gen. Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 805 (7th Cir.2002) (confirming "the law's presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law."). "This willingness to find irreparable harm in trademark cases stems from an understanding that the 'most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.' " *7–Eleven, Inc. v. Spear,* No. 10 C 6697, 2011 WL 830069, at \*6 (N .D. Ill. Mar. 3, 2011) (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir.1988)).

**\*5** Deckers has submitted evidence that it has spent substantial sums of money to market the UGG® brand in the United States and abroad. (Evert–Burks Decl. ¶¶ 5–7.) The UGG® brand has earned numerous awards and accolades, including Brand or Boots of the Year awards for the years 2004, 2007, 2008, 2010 and 2011 from *Footwear Plus,* and was selected as one of Forbes Best 200 Small Companies numerous times. (*Id.* ¶ 8.) As noted, popular magazines and television shows have covered the success of the UGG®

brand, celebrities are frequently photographed wearing UGG® footwear, and Deckers regularly promotes its products with extensive, international advertising campaigns. (*Id.* ¶ 10, 12–15.) The Court finds that Defendants' unauthorized use of the UGG® trademark threatens to irreparably harm the reputation and goodwill Deckers has developed with respect to its merchandise. This risks diluting the mark and undermining the years Deckers has spent "nurturing its business." *Ty, Inc.,* 237 F.3d at 903. Thus, the Court finds that Deckers will suffer irreparable harm without a preliminary injunction, and that there is no adequate remedy at law for this harm.

### III. Balancing the Harms/Public Interest

Because Deckers has met the threshold requirements necessary for the Court to grant its request for a preliminary injunction, the Court now weighs the factors against one another and assesses whether the balance of harms favors Deckers or whether the harm to the Defendants or the public is sufficiently weighty that the injunction should be denied. In balancing the harms between Deckers and Defendants, the Court applies a "sliding scale: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Girl Scouts of Manitou Council v. Girl Scouts of U.S. of Am., Inc.,* 549 F.3d 1079, 1086 (7th Cir.2008) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387 (7th Cir.1984)). Here, Deckers has a strong likelihood of prevailing on the merits, leaving Defendants with a proportionately small chance of showing that they have any right to sell or market counterfeit UGG® merchandise. As a result, Defendants have little basis for arguing that they will suffer any harm by virtue of the preliminary injunction. Indeed, as one court has noted, "one who adopts the marks of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F.Supp. 994, 1006 (S.D.Fla.1992) (internal quotations omitted).

The public interest also weighs in favor of entering a preliminary injunction. See *Girl Scouts of Manitou Council,* 549 F.3d at 1086 (the balancing process should encompass "any effects that granting or denying the preliminary injunction would have on nonparties."). In trademark infringement cases such as this, "the public interest is served

by [an] injunction because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000). The public has an interest in not being confused or defrauded into buying counterfeit UGG® products.

**\*6** In sum, Deckers is likely to succeed on the merits of its claims, and the balance of the harms weighs in its favor. On these facts, the Court holds that Deckers has satisfied its burden of establishing the prerequisites for entry of a preliminary injunction.

### IV. Specific Equitable Relief

Deckers asks that the TRO entered by this Court on December 20, 2012 be converted into a preliminary injunction so that Defendants remain enjoined from the manufacture, importation, distribution, offer for sale, and sale of products bearing counterfeit UGG® trademarks during the pendency of this litigation. Pursuant to the TRO, Deckers caused dozens of PayPal accounts associated with Defendants' websites to be frozen. (Gaudio Decl. ¶ 2.) Deckers also served the TRO on the relevant domain-name registries, requesting transfer of the Defendants' names. (*Id.*) Deckers argues that a preliminary injunction is necessary so that the domain names remain in Deckers' control and the Defendants' PayPal and other accounts remain frozen until completion of these legal proceedings. Without this relief, Defendants would be able to continue to sell counterfeit UGG® products and move monies from such sales to offshore accounts.

In sum, the Court holds that, under all the circumstances presented, the preliminary injunction that Deckers seeks is necessary and appropriate.

### V. Conclusion

For these reasons, the Court grants Plaintiff's motion for entry of a preliminary injunction.

### SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 169998, 105 U.S.P.Q.2d 1894

Footnotes

**Deckers Outdoor Corp. v. Does 1-100, Not Reported in F.Supp.2d (2013)**

2013 WL 169998, 105 U.S.P.Q.2d 1894

1    The ACPA identifies nine factors to consider in assessing bad-faith intent, including: (1) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark; (2) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (3) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (4) the extent to which the mark incorporated in the person's domain name is not distinctive or famous. 15 U.S.C. § 1125(d)(1)(B)(i). A court is not limited to considering only the enumerated factors, and "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case.' " *Virtual Works, Inc. v. Volkswagen of America, Inc.,* 238 F.3d 264, 268 (4th Cir.2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.,* 202 F.3d 489, 499 (2d Cir.2000)).

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DEN-MAT HOLDINGS, LLC,

     Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

     Defendants.

Civil Action No.: 1:20-cv-06194

Judge Thomas M. Durkin

Magistrate Judge Susan E. Cox

## DEFAULT JUDGMENT ORDER

This action having been commenced by DEN-MAT HOLDINGS, LLC ("DEN-MAT") against the defendants identified in the attached First Amended Schedule A and using the Defendant domain names and online marketplace accounts (collectively, the "Defendant Internet Stores"), and DEN-MAT having moved for entry of Default and Default Judgment against the defendants identified in the First Amended Schedule A attached hereto (collectively, the "Defaulting Defendants");

This Court having entered upon a showing by DEN-MAT, a temporary restraining order and preliminary injunction against Defaulting Defendants which included an infringement injunction order and asset restraining order;

DEN-MAT having properly completed service of process on Defaulting Defendants, the combination of providing notice via electronic publication and e-mail, along with any notice that Defaulting Defendants received from payment processors, being notice reasonably calculated under all circumstances to apprise Defaulting Defendants of the pendency of the action and affording them the opportunity to answer and present their objections; and

None of the Defaulting Defendants having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

THIS COURT HEREBY FINDS that it has personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. "In the context of cases like this one, that means a plaintiff must show that each defendant is actually operating an interactive website that is accessible in Illinois and that each defendant has aimed such site at Illinois by standing ready, willing and able to ship its counterfeit goods to customers in Illinois in particular (or otherwise has some sufficient voluntary contacts with the state)." *Am. Bridal & Prom Indus. Ass'n v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F.Supp.3d 924, 934 (N.D. Ill. 2016). In this case, Plaintiff has presented screenshot evidence that each Defendant Internet Store is reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can and do purchase products using counterfeit versions of Plaintiff's trademarks. *See* Docket No. 11 which includes screenshot evidence confirming that each Defendant Internet Store does stand ready, willing, and able to ship its counterfeit goods to customers in Illinois bearing infringing and/or counterfeit versions of the SNAP-ON SMILE trademark, which is covered by U.S. Trademark Registration No. 3,252,363 (the "SNAP-ON SMILE Trademark").

THIS COURT FURTHER FINDS that Defaulting Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), and false designation of origin (15 U.S.C. § 1125(a)).

IT IS HEREBY ORDERED that DEN-MAT's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendants are deemed in default and that this Default Judgment is entered against Defaulting Defendants.

IT IS FURTHER ORDERED that:

1. Defaulting Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

   a. using the SNAP-ON SMILE Trademark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine DEN-MAT Product or not authorized by DEN-MAT to be sold in connection with the SNAP-ON SMILE Trademark;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine DEN-MAT Product or any other product produced by DEN-MAT, that is not DEN-MAT's or not produced under the authorization, control or supervision of DEN-MAT and approved by DEN-MAT for sale under the SNAP-ON SMILE Trademark;

   c. committing any acts calculated to cause consumers to believe that Defaulting Defendants' products are those sold under the authorization, control or supervision of DEN-MAT, or are sponsored by, approved by, or otherwise connected with DEN-MAT;

   d. further infringing the SNAP-ON SMILE Trademark and damaging DEN-MAT's goodwill;

   e. otherwise competing unfairly with DEN-MAT in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for DEN-MAT, nor authorized by DEN-MAT to be sold or offered for sale, and which bear any of the SNAP-ON SMILE Trademark or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts or any other online marketplace account that is being used to sell or is the means by which Defaulting Defendants could continue to sell Counterfeit/Infringing Products; and

h. operating and/or hosting websites that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the SNAP-ON SMILE Trademark or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine DEN-MAT Product or not authorized by DEN-MAT to be sold in connection with the SNAP-ON SMILE Trademark.

2. Those in privity with Defaulting Defendants and with actual notice of this Order, including any online marketplaces such as, but not limited to, Amazon or Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, shall within ten (10) days of receipt of this Order:

a. disable and cease providing services for any accounts through which Defaulting Defendants engage in the sale of counterfeit and infringing goods using the SNAP-ON SMILE Trademark, including any accounts associated with the Defaulting Defendants listed on First Amended Schedule A attached hereto;

b. disable and cease displaying any advertisements used by or associated with Defaulting Defendants in connection with the sale of counterfeit and infringing goods using the SNAP-ON SMILE Trademark; and

c. take all steps necessary to prevent links to the Defendant identified on First Amended Schedule A from displaying in search results.

3. Pursuant to 15 U.S.C. § 1117(c)(2), DEN-MAT is awarded statutory damages from each of the Defaulting Defendants in the amount of two hundred fifty thousand dollars ($250,000) for willful use of counterfeit SNAP-ON SMILE Trademark on products sold through at least the Defendant Internet Stores.

4. The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within ten (10) days of receipt of this Order, shall, at DEN-MAT's choosing:

a permanently transfer the Defendant Domain Names to DEN-MAT's control, including unlocking and changing the registrar of record for the Defendant Domain Names to a registrar of DEN-MAT's selection, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to a registrar of DEN-MAT' selection; or

b cancel the registrations for the Defendant Domain Names and make them inactive.

5. eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal"), ContextLogic, Inc. ("WISH"), Amazon Payments, Inc. ("Amazon"), and Heguang International Limited or Dunhuang Group d/b/a DHGATE, DHGate.com, DHPORT, DHLINK and DHPAY ("DHGate"), shall, within ten (10) days of receipt of this Order, permanently restrain and enjoin any

5

accounts connected to Defaulting Defendants, Defaulting Defendants' online marketplace accounts or Defaulting Defendants' websites identified on First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

6. All monies currently restrained in Defaulting Defendants' financial accounts, including monies held by eBay, PayPal, WISH, Amazon, and DHGate, are hereby released to DEN-MAT as partial payment of the above-identified damages, and eBay, PayPal, WISH, Amazon, and DHGate is ordered to release to DEN-MAT the amounts from Defaulting Defendants' eBay, PayPal, WISH, Amazon, and DHGate accounts within ten (10) days of receipt of this Order.

7. Until DEN-MAT has recovered full payment of monies owed to it by any Defaulting Defendant, DEN-MAT shall have the ongoing authority to serve this Order on eBay, PayPal, WISH, Amazon, and DHGate in the event that any new eBay, PayPal, WISH, Amazon, and DHGate accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, eBay, PayPal, WISH, Amazon, and DHGate shall within ten (10) days:

   a. Locate all accounts and funds connected to Defaulting Defendants, Defaulting Defendants' online marketplace accounts or Defaulting Defendants' websites, including, but not limited to, any eBay, PayPal, WISH, Amazon, and DHGate accounts;

   b. Restrain and enjoin such accounts or funds that are Asia based from transferring or disposing of any money or other of Defaulting Defendants' assets; and

   c. Release all monies restrained in Defaulting Defendants' eBay, PayPal, WISH, Amazon, and DHGate accounts to DEN-MAT as partial payment of the above-identified damages within ten (10) days of receipt of this Order.

8. Upon Plaintiff's request, the Internet marketplace website operators and/or administrators for the Seller IDs shall disable and/or cease facilitating access to the Seller IDs, including any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of Plaintiff's SNAP-ON SMILE Trademark.

9. Until DEN-MAT has recovered full payment of monies owed to it by any Defaulting Defendant, DEN-MAT shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, the Financial Service Providers shall within ten (10) days:

   a. Locate all accounts connected to Defaulting Defendants, Defaulting Defendants' online marketplace accounts or Defaulting Defendants' websites;

   b. Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defaulting Defendants' assets; and

   c. Release all monies restrained in Defaulting Defendants' financial accounts to DEN-MAT as partial payment of the above-identified damages within ten (10) days of receipt of this Order.

   d. Upon Plaintiff's request, the Internet marketplace website operators and/or administrators for the Seller IDs shall disable and/or cease facilitating access to the Seller IDs, including any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of Plaintiff's SNAP-ON SMILE Trademark.

7

10. In the event that DEN-MAT identifies any additional online marketplace accounts, or financial accounts owned by Defaulting Defendants, DEN-MAT may send notice of any supplemental proceeding to Defaulting Defendants by e-mail at the email addresses identified in Exhibit 2 to the Declaration of Todd Tiberi and any e-mail addresses provided for Defaulting Defendants by third parties.

11. The bond posted by Plaintiff in the amount of $10,000.00 is hereby ordered released by the Clerk to Plaintiff or Plaintiff's counsel.

This is a Default Judgment.

Dated: December 15, 2020

_Thomas M Durkin_
_____
United States District Court Judge

## FIRST AMENDED SCHEDULE A

| No. | Defendants |
|---|---|
| 1 | Noemigal |
| 2 | |
| 3 | |
| 4 | |
| 5 | WORDyong |
| 6 | DONGJU |
| 7 | Hainan Yidiantong Technology Co., Ltd. |
| 8 | TYSXHLQGWWWJD |
| 9 | |
| 10 | |
| 11 | Jaco-US |
| 12 | |
| 13 | Awesome Things LLC |
| 14 | |
| 15 | VA-S |
| 16 | |
| 17 | lin xian mu gua ping xiang yu lin cun |
| 18 | |
| 19 | |
| 20 | |
| 21 | Shiny Jewelry 30 |
| 22 | ruoyong Song2019 |
| 23 | Meikai |
| 24 | GLVHG |
| 25 | SDSGFDTRC |
| 26 | ARCE |
| 27 | Icing cake |
| 28 | Summer hope |
| 29 | UhappyBuy |
| 30 | pastalo |
| 31 | qingyun's shop |
| 32 | XIAOPY |
| 33 | |
| 34 | |
| 35 | topshowbeauty |
| 36 | fashion_shopaa |

9

| | |
|---|---|
| 37 | verynicegirl |
| 38 | |
| 39 | |
| 40 | jewelrybestgift |
| 41 | |
| 42 | bestsellerpro |
| 43 | wholesalesdhgates |
| 44 | pick_what_to_buy |
| 45 | we.are.open |
| 46 | |
| 47 | prestontalton91 |
| 48 | big.dealstore |
| 49 | imperiall11 |
| 50 | modern-online-store |
| 51 | magg_store |
| 52 | cohenstore999 |
| 53 | |
| 54 | |
| 55 | ph_love_store |
| 56 | dnwholesal3 |
| 57 | adamshopp20 |
| 58 | |
| 59 | |
| 60 | seedekstore |
| 61 | |
| 62 | |
| 63 | |
| 64 | |
| 65 | |
| 66 | supersonic_e_store |
| 67 | |
| 68 | vikver25 |
| 69 | |
| 70 | onjetplane |
| 71 | benabetis |
| 72 | |
| 73 | |
| 74 | motiohayon |
| 75 | shop2009mb |

| | |
|---|---|
| 76 | |
| 77 | |
| 78 | ariel8497ariel |
| 79 | |
| 80 | |
| 81 | |
| 82 | |
| 83 | |
| 84 | |
| 85 | |
| 86 | we_r_bay |
| 87 | |
| 88 | |
| 89 | smart-pro-shop |
| 90 | |
| 91 | markaugin |
| 92 | |
| 93 | anas-2000-store |
| 94 | ebuytrade2 |
| 95 | rmdus.rmdus |
| 96 | insane-deal |
| 97 | |
| 98 | dealstore* |
| 99 | zmistore |
| 100 | best-items-shop |
| 101 | 1lt_pdzm9d9zz |
| 102 | quick*market |
| 103 | astarasalesinc |
| 104 | |
| 105 | |
| 106 | thili.2015 |
| 107 | alosolomo-0 |
| 108 | usagoodstore* |
| 109 | bestdeals728 |
| 110 | racelou-80 |
| 111 | |
| 112 | orbelii |
| 113 | |
| 114 | |

| 115 | berryshop9 |
| 116 | |
| 117 | edi1001il |
| 118 | |
| 119 | avifr-423789 |
| 120 | home*heaven*co |
| 121 | il2014_naha |
| 122 | |
| 123 | storekv |
| 124 | |
| 125 | |
| 126 | hanz_arcade |
| 127 | allbestproduct102 |
| 128 | dengtal-online |
| 129 | |
| 130 | jhonstorex |
| 131 | locus_store |
| 132 | lahirdila-0 |
| 133 | sam_shop8 |
| 134 | lidamoux_deals |
| 135 | since.2020 |
| 136 | mayolly |
| 137 | bestroofsface |
| 138 | maciejmwarc_0 |
| 139 | memorycardsforyou |
| 140 | |
| 141 | kope94 |
| 142 | gobigstore2018 |
| 143 | all.you.needstore |
| 144 | kifliy |
| 145 | *_kavindulakmal_* |
| 146 | |
| 147 | metriturs |
| 148 | ferguson.hihi |
| 149 | |
| 150 | |
| 151 | harsdil_49 |
| 152 | |
| 153 | sonlight.shop |

| 154 | tcser-0 |
| 155 | shakewais-0 |
| 156 | |
| 157 | |
| 158 | Maomaodegudou |
| 159 | byeond store |
| 160 | |
| 161 | |
| 162 | |
| 163 | |
| 164 | |
| 165 | yandolgino0 |
| 166 | needyouknow |
| 167 | |
| 168 | |
| 169 | |
| 170 | lahiru_96 |
| 171 | inm_store |
| 172 | imixcity |
| 173 | |
| 174 | hot-deals2568 |
| 175 | wondersonline |
| 176 | summer_sky17 |
| 177 | |
| 178 | ldszyz |
| 179 | |
| 180 | |
| 181 | |
| 182 | vika-7750 |
| 183 | |
| 184 | |
| 185 | houbing |
| 186 | qwehobo |
| 187 | All for all Co.Ltd |
| 188 | renjunqiangshop |
| 189 | |
| 190 | dfwedfq |
| 191 | Tabe Dream Home |
| 192 | haimla |

| 193 | wangliang8 |
| 194 | zhangqin-zhubao |
| 195 | |
| 196 | |
| 197 | GT-Power |
| 198 | Shenzhen Right Grand Jewelry Co., Ltd. |
| 199 | |
| 200 | WLL926940 |
| 201 | Xiao Mu DI |
| 202 | |
| 203 | BenBenYU |
| 204 | AT T-Power |
| 205 | Meet You Varitystore |
| 206 | |
| 207 | misszhong |
| 208 | |
| 209 | meran359 |
| 210 | hanxiucao223 |
| 211 | zhangjie000888 |
| 212 | zijinmla |
| 213 | |
| 214 | |
| 215 | xiaominl |
| 216 | rbeagvwesdbresd |
| 217 | zongqun |
| 218 | |
| 219 | |
| 220 | |
| 221 | liujiulei |
| 222 | NIKI Your |
| 223 | |
| 224 | |
| 225 | |
| 226 | yonghongUS |
| 227 | Karea |
| 228 | |
| 229 | STCORPS7 CO., LTD |
| 230 | |
| 231 | zahupu |

| 232 | novior |
| 233 | Bonwuno Brand Store |
| 234 | guojingGao |
| 235 | |
| 236 | |
| 237 | moodlove1723 |
| 238 | biig-deals |
| 239 | gzy1_2706 |
| 240 | |
| 241 | |
| 242 | liord1 |
| 243 | sun5395 |
| 244 | teehthclub_us |
| 245 | brimal_4930 |
| 246 | |
| 247 | |
| 248 | 19babydeals |
| 249 | ultrapire |
| 250 | |
| 251 | |
| 252 | |
| 253 | sahaprageet0 |
| 254 | |
| 255 | jieke1962 |
| 256 | |
| 257 | amiamit23 |
| 258 | |
| 259 | passionfruit24 |
| 260 | |
| 261 | luckshop888 |
| 262 | lk2015-nadis |
| 263 | |
| 264 | lebresilien365 |
| 265 | |
| 266 | nanchangyingjie1850 |
| 267 | nk_online_store99 |
| 268 | t_s_design_store |
| 269 | |
| 270 | sonrisaq-75 |

| 271 | bravoclassic |
| 272 | |
| 273 | |
| 274 | shopping-home888 |
| 275 | qiyie-71 |
| 276 | tektek2222 |
| 277 | technical.jrs |
| 278 | |
| 279 | |
| 280 | |
| 281 | |
| 282 | |
| 283 | zoom-more |
| 284 | adamhihi1122 |
| 285 | hugox-shop |
| 286 | dempsey_4525 |
| 287 | taprobana-store |
| 288 | poeqnrg |
| 289 | cos-sky |
| 290 | rajapcha0 |
| 291 | |
| 292 | nyliyan |
| 293 | windylegend |
| 294 | |
| 295 | christinebet |
| 296 | sxdf32 |
| 297 | ilruska0 |
| 298 | nyzhan_87 |
| 299 | romeogogogo |
| 300 | |
| 301 | upforbest |
| 302 | gracefulvara |
| 303 | |
| 304 | |
| 305 | |
| 306 | dcnv_83 |
| 307 | fhpq_16 |
| 308 | astromarket99 |
| 309 | |

| 310 | |
| 311 | topmail123 |
| 312 | |
| 313 | Everyone OK |
| 314 | qinghengchen |
| 315 | Factory Direct A |
| 316 | xqbaoei |
| 317 | |
| 318 | A18 |
| 319 | |
| 320 | |
| 321 | Factory Direct Sales S |
| 322 | liduliyunye |
| 323 | my cool store |
| 324 | zongfua |
| 325 | hgtarewTD67 |
| 326 | |
| 327 | |
| 328 | |
| 329 | |
| 330 | |
| 331 | allbluego |
| 332 | crtyuia |
| 333 | Andy1688 |
| 334 | |
| 335 | anngege |
| 336 | Donaldaa |
| 337 | Make something you love |
| 338 | usaynothingatall |
| 339 | kalamantus |
| 340 | Polaken kecksan Finten |
| 341 | yinxun trade |
| 342 | Wangzhe6023 |
| 343 | Tayloraaee |
| 344 | kim001313 |
| 345 | golligent |
| 346 | |
| 347 | krngye6 |
| 348 | |

| 349 | zeri |
| 350 | |
| 351 | World nice |
| 352 | romantic-jewelry |
| 353 | yanzhaojiu754 |
| 354 | dongnghiyy406 |
| 355 | Patrickcosmetics |
| 356 | lucky yan mei |
| 357 | |
| 358 | |
| 359 | |
| 360 | Mariannakkk |
| 361 | zeqi |
| 362 | |
| 363 | Mamihlapinayu |
| 364 | StockInto |
| 365 | Uptown Town |
| 366 | bassamfive |
| 367 | |
| 368 | JIUYUEHUNLING |
| 369 | pezi |
| 370 | corsetforu |
| 371 | |
| 372 | broother |
| 373 | |
| 374 | SiLH |
| 375 | ahfmsi12 |
| 376 | |
| 377 | xiaoanan |
| 378 | zhanlanlan123 |
| 379 | sixstations |
| 380 | jkfjudfxhrty |
| 381 | bassamone |
| 382 | zhumei |
| 383 | |
| 384 | QIZHSH |
| 385 | |
| 386 | iskdifhsufc |
| 387 | Arturo.garcia35 |

| 388 | chen anny |
| 389 | BAZARR |
| 390 | zefi |
| 391 | fezi |
| 392 | Billion world |
| 393 | bassamthree |
| 394 | xingyunbaihuo |
| 395 | |
| 396 | xiaoxingxing9 |
| 397 | Majestic_Trader1 |
| 398 | AdjudicatevX |
| 399 | vezi |
| 400 | |
| 401 | metallica |
| 402 | aezi |
| 403 | xezi |
| 404 | tezi |
| 405 | VHJYDTJTY |
| 406 | bassamggood |
| 407 | WOWPRODUCTCART |
| 408 | longpinzubei |
| 409 | 23sd46h57ds65. |
| 410 | dezi |
| 411 | qezi |
| 412 | jiangbinbin55321 |
| 413 | zeeshan clothes |
| 414 | Treasureofasia328 |
| 415 | wezi |
| 416 | cezi |
| 417 | nezi |
| 418 | zeni |
| 419 | bassamfour |
| 420 | GongjiuxianvIu |
| 421 | zhenglei236 |
| 422 | |
| 423 | chkanqa |
| 424 | ruvja |
| 425 | MTONJIAMfan8953 |
| 426 | iphone.my |

| 427 | chongzhou |
|-----|-----------|
| 428 | waq05 |
| 429 | F88 |
| 430 | |
| 431 | PPPenny |
| 432 | shiju |
| 433 | nianzeshop |
| 434 | |
| 435 | |
| 436 | fenwutu |
| 437 | DLKKLB |
| 438 | |
| 439 | |
| 440 | xng99 |
| 441 | Jayaaee |
| 442 | guojingshop |
| 443 | Stevenaa |
| 444 | Boutique Store Everyone |
| 445 | spire shoping |
| 446 | Kaylaaaee |
| 447 | Sandraaaee |
| 448 | JosephUUaa |
| 449 | zongliaoa |
| 450 | God |
| 451 | Courtneyyy |
| 452 | yubodedianstore |
| 453 | |
| 454 | liyufangoj |
| 455 | |
| 456 | wangzhipingshop |
| 457 | Fashion Ruby |
| 458 | qinsiwoaini |
| 459 | gaoyiboshop |
| 460 | tootuebbrs |
| 461 | girl secrets |
| 462 | losekkgy |
| 463 | Brynn Cainq |
| 464 | Maryaaee |
| 465 | |

| 466 | Leannaaaee |
| 467 | jingliangdedian |
| 468 | sheshiriemc |
| 469 | Little Shop-001 |
| 470 | Cynthiauu |
| 471 | toheeaneh |
| 472 | yizhuangshou |
| 473 | Clothing men's women's maternal and infant stores |
| 474 | |
| 475 | Breadstretors |
| 476 | Caitlinaa |
| 477 | Kristina}yya |
| 478 | Jaysonyy |
| 479 | bashou |
| 480 | Tang Mobile Accessories |
| 481 | adixiaodian |
| 482 | Enedinauu |
| 483 | |
| 484 | |
| 485 | pataaee |
| 486 | Jacobaaee |
| 487 | |
| 488 | Jamesaaasa |
| 489 | Aimaim |
| 490 | Jamesaaee |
| 491 | shonneegkyv |
| 492 | luq0569shop |
| 493 | jishanty |
| 494 | huilitao |
| 495 | AndrewUU |
| 496 | |
| 497 | tongxiaodadan |
| 498 | anyqiqiq1 |
| 499 | Kelseyaa |
| 500 | Deidrauu |
| 501 | nesheighoyroe |
| 502 | |
| 503 | beijingjinaocoltd |
| 504 | Sherkeyrayy |

| 505 | haishengal |
|---|---|
| 506 | opopbea |
| 507 | Canishauu |
| 508 | patitoughmexaa |
| 509 | changlingmi463 |
| 510 | jianjiertys |
| 511 | watchmenluxhry |
| 512 | wenhuaqianliu |
| 513 | batiao |
| 514 | Homeruu |
| 515 | Crazyruby |
| 516 | junioraaee |
| 517 | E88 |
| 518 | gdjftjd |
| 519 | Davidaass |
| 520 | CharlesUUa |
| 521 | tateswlwg |
| 522 | |
| 523 | slithesbnoosj |
| 524 | https://www.wish.com/merchant/5ab3a22fc989494ce115d69a |
| 525 | pwoemrovjnr |
| 526 | |
| 527 | Johnaaee |
| 528 | |
| 529 | |
| 530 | titateskixles |
| 531 | Meirenyuanji |
| 532 | |
| 533 | heuboee |
| 534 | Oliviaaaee |
| 535 | wendins |
| 536 | Markuu |
| 537 | Greatwomendkret |
| 538 | Samlisy |
| 539 | |
| 540 | wangwenhuangi |
| 541 | just enjoy shopping |
| 542 | JYOARAshop |
| 543 | hsfow98fw |

| 544 | le mei you |
| 545 | lishichun6868 |
| 546 | Zjjyuaa |
| 547 | |
| 548 | zhangjingay |
| 549 | Richarduu |
| 550 | meetyourneed |
| 551 | |
| 552 | gaisiqiudaiyi |
| 553 | Neciayy |
| 554 | 121q |
| 555 | vrfgg |
| 556 | maningmayun |
| 557 | |
| 558 | wukaixi |
| 559 | |
| 560 | |
| 561 | |
| 562 | newintrend.com |
| 563 | princessdressworld.com |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Kiesque, Incorporated | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-7761 |
| | ) | |
| THE PARTNERSHIPS and | ) | Judge: Hon. Charles P. Kocoras |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A" | ) | Magistrate:  Hon. Mary M. Rowland |
| | ) | |
| _____ | ) | |

## FINAL JUDGMENT ORDER

This action having been commenced by Plaintiff, Kiesque ("Plaintiff") against the

defendants operating the websites/webstores identified on Schedule "A" to Plaintiff's Complaint

(collectively, the "Infringing Webstores"), and Plaintiff having moved for entry of Default and

Default Judgment against the defendants not already dismissed, identified in Appendix "A"

(collectively, the "Defaulting Defendants");

This Court having entered upon a showing by Plaintiff a temporary restraining order and

preliminary injunction against Defaulting Defendants;

Plaintiff having properly completed service of process on Defaulting Defendants,

providing notice via e-mail, along with any notice that Defaulting Defendants received from the

ecommerce platforms, hosts, and payment processors, being notice reasonably calculated under

all circumstances to apprise Defaulting Defendants of the pendency of the action and affording

them the opportunity to answer and present their objections; and

Defaulting Defendants having failed to answer the Complaint or otherwise

plead, and the time for answering the Complaint having expired;

THIS COURT HEREBY FINDS that it has personal jurisdiction over Defaulting Defendants because Defaulting Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Infringing Websites through which Illinois residents can purchase products bearing counterfeit versions of LIQUID PALISADE trademark, U.S. Reg. No. 5314847.

The registration is valid, unrevoked, and uncancelled. Defendants use the mark and display images protected by trademark and copyright on the infringing websites without Plaintiff's permission or consent.

THIS COURT FURTHER FINDS that Defaulting Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.).

IT IS HEREBY ORDERED that Plaintiff's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendants are deemed in default and that this Final Judgment is entered against Defaulting Defendants.

IT IS FURTHER ORDERED that

1. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be permanently enjoined and restrained from:

   a. using the LIQUID PALISADE trademark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing,

advertising, offering for sale, or sale of any product that is not a genuine Kiesque product or not authorized by Plaintiff to be sold in connection with the LIQUID PALISADE Trademark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Kiesque product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control or supervision of Kiesque and approved by Plaintiff for sale under the LIQUID PALISADE Trademark;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Kiesque, or are sponsored by, approved by, or otherwise connected with Kiesque;

d. further infringing the LIQUID PALISADE trademark and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of the LIQUID PALISADE trademark, or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the infringing webstores, websites, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

h. operating and/or hosting infringing webstores, websites and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the LIQUID PALISADE

trademark or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine Kiesque product or not authorized by Kiesque to be sold in connection with the LIQUID PALISADE trademark;

i. registering any additional stores, websites, or domain names that use or incorporate any of the LIQUID PALISADE trademark; and

j. using images covered by the PLAINTIFF's Copyrights or any of PLAINTIFF's original photographs that Kiesque uses to advertise the sale of original Kiesque products.

2. Those in privity with Defaulting Defendants and with actual notice of this Order, including ecommerce platform providers, such as Alibaba, Ali-Express, Amazon, eBay, Wish, etc., shall within three (3) business days of receipt of this Order:

a. disable and cease providing services for any accounts through which Defaulting Defendants, in the past, currently or in the future, engage in the sale of goods using the LIQUID PALISADE Trademarks, including, but not limited to, any accounts associated with the Defaulting Defendants listed on Schedule "A" not dismissed from this action; and

b. disable any account linked to Defaulting Defendants, linked to any e-mail addresses used by Defaulting Defendants, or linked to any of the Infringing webstores/websites.

Pursuant to 15 U.S.C. § 1117(c)(1), Plaintiff is awarded statutory damages from each of the Defaulting Defendants in the amount of Two-Million Dollars (U.S.) and No Cents ($2,000,000.00) for using counterfeit LIQUID PALISADE Trademarks on products sold through at least the Infringing webstores/websites. As to each Defaulting Defendant, until such Defaulting Defendant has paid in full the award of statutory damages against it:

a. Alibaba, Ali-Express, Amazon, eBay, Wish (collectively the "Platforms") and PayPal, Payoneer, WorldFirst, World First Asia Limited, World First Markets Limited, World First USA, Inc., Bill.com, Pingpong, Payeco, Umpay/Union Mobile Pay, Moneygram, Western Union and any of their subsidiaries (collectively the "Payment Processors") shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Infringing webstores/websites identified in Schedule "A", except those dismissed, from transferring or disposing of any money or other of Defaulting Defendants' assets.

b. All monies currently restrained in Defaulting Defendants' financial accounts, including monies held by the Platforms or the Payment Processors are hereby released to Plaintiff as partial payment of the above-identified damages, and are ordered to release to Plaintiff the amounts from Defaulting Defendants' Platform or Payment Processor accounts within ten (10) business days of receipt of this Order.

c. Plaintiff shall have the ongoing authority to serve this Order on the Platforms or the Payment Processors in the event that any new accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, the Platforms or the Payment Processors shall within two (2) business days:

    i. Locate all accounts and funds connected to Defaulting Defendants, Defaulting Defendants' Infringing webstores/websites, including, but not limited to, any accounts connected to the information listed in Schedule "A" of the Complaint, the e-mail addresses identified in Exhibit 1 to the Declaration of David Gulbransen, and any e-mail addresses provided for Defaulting Defendants by third parties;

ii. Restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defaulting Defendants' assets; and

iii. Release all monies restrained in Defaulting Defendants' accounts to Plaintiff as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

4. Until Plaintiff has recovered full payment of monies owed to it by any Defaulting Defendant, Plaintiff shall have the ongoing authority to serve this Order on any banks, savings and loan associations, payment processors, or other financial institutions (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, the Financial Service Providers shall within two (2) business days:

a. Locate all accounts and funds connected to Defaulting Defendants, Defaulting Defendants' Infringing webstores/websites, including, but not limited to, any accounts connected to the information listed in Schedule "A" of the Complaint, the e-mail addresses identified in Exhibit 1 to the Declaration of David Gulbransen, and any e-mail addresses provided for Defaulting Defendants by third parties;

b. Restrain and enjoin such accounts or funds from receiving, transferring or disposing of any money or other of Defaulting Defendants' assets; and

c. Release all monies restrained in Defaulting Defendants' financial accounts to Plaintiff as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

5. In the event that Plaintiff identifies any additional webstores, websites, domain names or financial accounts owned by Defaulting Defendants, Plaintiff may send notice of any

supplemental proceeding to Defaulting Defendants by e-mail at the email addresses identified in

Exhibits 1 to the Declaration of David Gulbransen and any e-mail addresses provided for

Defaulting Defendants by third parties.

**IT IS SO ORDERED.**

**Dated: 5/14/2019**

_____
Hon. Charles P. Kocoras

**Appendix A**

| Doe | Store Name | Store/Merchant ID |
|-----|-----------|-------------------|
| 2 | beautycosmetic | beautycosmetic |
| 4 | canni | canni |
| 6 | chevy | chevy |
| 7 | chvwco | chvwco |
| 9 | fantasticnail | fantasticnail |
| 10 | gzbogel | gzbogel |
| 11 | jiaoyan | jiaoyan |
| 12 | pinpaibeauty3 | pinpaibeauty3 |
| 14 | ransheng | ransheng |
| 16 | yisuhappybuy | yisuhappybuy |
| 17 | yusam | yusam |
| 18 | ywob | ywob |
| 19 | -Sunflower- | 133597 |
| 20 | 5A International Trade - 24 Hours | 1749400 |
| 21 | AACAR Store | 3256131 |
| 22 | Adorn Neatnew Store | 2957149 |
| 23 | Afuyee Makeup Store | 2942201 |
| 26 | All for beautiful Store | 3101035 |
| 27 | Amoy Makeup Store | 2784144 |
| 29 | Anything Store | 2961007 |
| 30 | AoNa Manicure Art Store | 1925735 |
| 32 | attractiveBeauty | 1982693 |
| 35 | BanquetMakeup Store | 2782163 |
| 44 | Beautifully Store | 2944150 |
| 46 | Beauty and Young | 1898109 |
| 48 | BeautySquare Store | 4470057 |
| 49 | Beautytaotao--gel polish world Store | 1046652 |
| 52 | Blingling Cosmeticos Store | 3116026 |
| 55 | Bonnie Nail Store | 2947177 |
| 57 | C-osmetics & Maquiagem Store | 3254098 |
| 59 | cn1520588074mgjt store Store | 4434118 |
| 60 | ColorBeauty Store | 3139046 |
| 62 | Cosmetic Diary | 2220048 |
| 64 | Daily Makeup Store | 2892022 |

| 65 | Dasiy Makeup Store | 2404101 |
|---|---|---|
| 66 | Dazzling Girl Co.,Ltd. Store | 2224039 |
| 70 | EchiQ Fake Nails Store | 1850698 |
| 71 | Elite99 Royal Beauty | 1357906 |
| 72 | Elizabeth's Wonder Store | 1043347 |
| 73 | Enchanting Goblin Store | 3247027 |
| 77 | Feihoo Store | 2663003 |
| 79 | Fighting ! Women Makeup Store | 2932087 |
| 80 | Five Girl Store | 3963002 |
| 82 | Gelike ec Official Store | 2842053 |
| 83 | Glitter girl Store | 3459002 |
| 84 | Go Shop Store | 2493001 |
| 85 | Happiness station Store | 2755002 |
| 87 | Harry's Cosmetic Store | 2961237 |
| 89 | Hi Store | 1836781 |
| 92 | I Believe I Can Fly | 2335044 |
| 95 | In Shop Store | 2412096 |
| 96 | Ineffable Store | 4393042 |
| 97 | isaybeauty Store | 3252080 |
| 98 | ISHOWTIENDA SHALLOW Store | 4375054 |
| 99 | J Nails Art Salon | 2227125 |
| 101 | Just Nail Gel Store | 3198077 |
| 102 | KA ColorMake up Box Store | 2960211 |
| 103 | kai yunly online Store | 2337222 |
| 104 | KCE Nail Shop | 2166096 |
| 105 | KOKO Life | 1741023 |
| 106 | LANYA NAIL ART Store | 4508008 |
| 109 | Linefree Store | 4384081 |
| 110 | LoeRoyal BeautyMall Store | 2667045 |
| 112 | Lovegirl Store | 2956074 |
| 113 | Loveliness Girl Store | 2945144 |
| 114 | Luckly Star Mall | 2028084 |
| 115 | M&N Store | 2214140 |
| 116 | Ma-gic Show T1me Store | 3223136 |
| 117 | Makeup & Healthy Store | 2960047 |
| 118 | Makeup Banquet Store | 3219119 |
| 119 | Makeup Domain Store | 2948076 |
| 121 | Makeup Garden Shop Store | 2882254 |
| 122 | Makeup Secret Store | 4310041 |

| 123 | Makeup Shopping Store | 1092193 |
| 125 | Maquiagem Cosmetic Store | 2917009 |
| 126 | Mellifluous Store | 4377031 |
| 127 | Minl makeups Store | 2931086 |
| 128 | MintSun | 1854070 |
| 130 | MLxs Nail Art Store | 2885164 |
| 131 | My Beauties Store | 2962142 |
| 133 | Na-tural Beauties Store | 3221072 |
| 135 | Nail Gel Professional Shop | 2169059 |
| 136 | Nail Gel Professional Shop Store | 2788103 |
| 149 | Nail's House | 1879221 |
| 141 | Nicwel Ltd. Store | 2392102 |
| 142 | NICWEL makeup Store | 3218030 |
| 143 | Oh Goddess Store | 4482037 |
| 144 | OTAO offical flagship store | 1416022 |
| 145 | Paraness Nail Art Store | 2929038 |
| 152 | Princess's Secret Store | 2959149 |
| 154 | Resurrection Beautiful Life Store | 2178145 |
| 155 | Rose Lips Store | 2958007 |
| 156 | S-avvy Maquiagem Make&Up Store | 1854248 |
| 157 | Saroline Lover Secret Store | 2789121 |
| 159 | Sheis Makeup Store | 1970025 |
| 162 | Shing Bea Store | 2942202 |
| 163 | Shop1898301 Store | 1898301 |
| 166 | Shop3058031 Store | 3058031 |
| 167 | Shop3368050 Store | 3368050 |
| 169 | Shop3894069 Store | 3894069 |
| 170 | Shop4218050 Store | 4218050 |
| 171 | Shop4389030 Store | 4389030 |
| 173 | Shop4550017 Store | 4550017 |
| 174 | Shopping-Online Store | 3862030 |
| 175 | SkinCare&Makeup Store | 4495067 |
| 177 | Super Fashion 8191 Club | 2148009 |
| 179 | Taste Life | 2184025 |
| 181 | The Cats' Store | 3620026 |
| 182 | The Secret Of Winter Store | 2679024 |
| 186 | Tuesday Store | 1308150 |
| 187 | Ubeauty cute Store | 2786029 |
| 190 | USDH beautygirl Store | 3520065 |

| 192 | VEAMOR A Official Store | 1925241 |
| 193 | Verntion Nail Gel Professional Shop Store | 2784126 |
| 195 | Voberry Technology Co.,Ltd | 1170120 |
| 197 | Warm Girl Store | 1937634 |
| 198 | We Lovepretty Store | 2943160 |
| 199 | Women Beautiful Cottage Store | 2955143 |
| 200 | Women's Makeup Show Store | 3270015 |
| 207 | YY Makeup-Drop Shipping Store | 3217056 |
| 208 | Zation Magical Store | 3099021 |
| 209 | 24 Online | A18UE1BKIOGECC |
| 210 | ABASSKY | ATP09TF73V9H0 |
| 211 | AHHHAH | AQ8L4CYUFHJ6Q |
| 213 | Amaping | A2ZYMDTKK0NYZ2 |
| 214 | ANIMOAO Shop | A9XAS4XEE0E1X |
| 215 | Anshinto | A2CEAKAQ3CCE18 |
| 216 | APPointed | A26E8BRMTKHCO |
| 218 | Aviat | A2BXGEEPPT5L7E |
| 219 | BaoST | AM1FSW3TOQNPS |
| 220 | Beautybigbang | A3R76BRU0LWQ16 |
| 222 | Cattie Girl | A3G73J0YO4T9X5 |
| 223 | charts_DRESS | A2SZFFBK9L0LTR |
| 224 | CITY | A1ICNR6OPFXT9O |
| 227 | CreazyDog | A1E91VU44IKQ9G |
| 229 | DDU ecommerce(ships from China) | A2GTJ4VVOR0SC9 |
| 230 | Deesee | A10HR8FWPH38X2 |
| 231 | DesigN | A33HXV2EOQ993H |
| 234 | Dolloress | A2ZFXJZLWOHQ0X |
| 235 | EShocking | AGDDHYO7E1EME |
| 236 | ever.grace | A21DWH89CT65XB |
| 237 | EVERYDI STORE | A1TOERMISK7WI5 |
| 238 | Exte | ABA12MV69679A |
| 239 | Fashion Thing | A2DHQIKS9IMLRA |
| 245 | honor2008 | A1F5GU34UY9JOE |
| 246 | Hunzed | A3EX5443WMT1LE |
| 247 | Huphoon | A2UY31LAHOQSK9 |
| 249 | IMOMO | A3GNVMULVXA0XV |
| 205 | jeepjin | A1TTFCHJTUIXE4 |
| 252 | joeyroyo | A1EV4FXPRFOKD7 |

| 254 | Leewa | APMFYD6GB037N |
| 255 | Lingsun Tech | AWEWYD6T8LA4J |
| 256 | Liobaba | A3D1VGN9EH8TXQ |
| 260 | Longay | A1IYL3UZKD86MA |
| 262 | loweryeah | A1C0CXITRWX17X |
| 264 | Mandy-Store | A3DTWSZFTXMPWI |
| 265 | mchoice | A2RH6DRJZAU7GS |
| 267 | NewKelly | A1VJ6UC6HE5ZYU |
| 269 | Nice Meeting | A3H3K37VJM5KZ2 |
| 270 | NICOLE DIARY | A2VD7DZI615VAY |
| 272 | Promisen | A36NYX01WFGPP8 |
| 273 | Putars Store | A1C70DMHMA0V6V |
| 274 | RedDhong | A173556IL1AFQ2 |
| 276 | sdsd&oo | A27MZ6P13Y234T |
| 277 | sendian | A1C3S382W5X6IP |
| 278 | SHare | A2GCBL8Z2F15TZ |
| 281 | SZJIASJY | A18UIB62HFWSX8 |
| 282 | SZMMRM | A1B9DGMAX6CRXF |
| 296 | ZHIWEI XU | AR4P7BQFUMIDC |
| 298 | DaissyN | DaissyN |
| 299 | GeogerN | GeogerN |
| 300 | HarrysonN | HarrysonN |
| 301 | OldWoolf | OldWoolf |
| 350 | anybestbuy | anybestbuy |
| 351 | behome | behome |
| 353 | cassinishop / thai-amulet | thai-amulet |
| 357 | global-buy-mall | global-buy-mall |
| 359 | goodshop_268 | goodshop_268 |
| 361 | jeyadamani | jeyadamani |
| 362 | luckiness87 | luckiness87 |
| 367 | oldwoolfmarket | oldwoolfmarket |
| 369 | rainbow-lee | rainbow-lee |
| 370 | s2sr | s2sr |
| 371 | sale.sale1 | sale.sale1 |
| 372 | shcifang | shcifang |
| 373 | shopbest2u | shopbest2u |
| 374 | tosal_5 | tosal_5 |
| 375 | trendynailworld | trendynailworld |
| 376 | warehouse87 | warehouse87 |

| 377 | CuraliNailStamping | CuraliNailStamping |
|-----|--------------------|--------------------|
| 378 | fashionnailoil | fashionnailoil |
| 379 | Kvantym-Store | Kvantym-Store |
| 380 | SODIAL | SODIAL |
| 381 | 18 | 594773fc25c4f55733524dab |
| 382 | 546654 | 584520c2728de6034a4dee3b |
| 383 | 564165456 | 584820a1d914f560174bcf95 |
| 385 | 18602717318 | 593270698635f072823451bb |
| 386 | accmonster | 5981d44bd4cc347d3bfc701f |
| 390 | alittlematchgirl | 5810b8033deb9416275cd2f7 |
| 392 | armsmarket | 5810b8aea70e0356e64d3ec8 |
| 395 | bangqunliu | 56e419cd3a698c380aa5f8d0 |
| 397 | bayancloth | 577627617d818d622df20f6c |
| 398 | beatwin21e73692f43d11e6952802cb4df73154 | 58a59060096b2d7e42214e69 |
| 400 | beautydeal | 559d11aad9018e56826b0dc4 |
| 407 | billzhou | 5a4311ee7dee4a6c57357b9f |
| 408 | blackj | 5810b8c7af5d3c198b0b3d50 |
| 409 | boboclothingwholesalecoltd | 54c077d139b8c06c438697a3 |
| 411 | bornqueen | 58abec3216bcc7502b234a36 |
| 414 | caorle | 57679be51e7bb05e613986d5 |
| 420 | chinayangzhangtrademall | 58de49b25f8d965740a4c27b |
| 421 | chongwei | 58a30ec8c105706e7e036b05 |
| 422 | chutian | 5784b6d4681164174ffb6e68 |
| 424 | colbuyf56d6d5ada8611e5bc6102cc02906e19 | 56ccee288bd26e4c516ae296 |
| 429 | cutiescoconut | 56d58fbb8bd26e6271e2d908 |
| 433 | demty | 57e4b82c444968729dbdab24 |
| 435 | djkfjskjldflksdjflaskdf | 5adae73acd968d431a23af9c |
| 439 | dungu | 5788713f0cb30d217245f877 |
| 447 | fancybuying | 56c2c4342fab501165addda9 |
| 448 | fanginternationalshop | 56dbcaea3a9cb801c574c9b1 |
| 450 | fashionfactorystore | 53ef48fe104dae3e483eb998 |
| 457 | funengkangtechnologyltd | 55c2c02352f31142652ab11d |
| 458 | fuyuezong | 593809d78635f05b9c1d6741 |
| 462 | hammer | 58ca0c110b2ef0505e813d07 |
| 463 | hannattt | 5850f6270f5c4a5210b24077 |
| 470 | ilovewig | 5319d507717951485119cb85 |
| 475 | jackabc | 5959f96adba4dc10c1432b04 |
| 476 | jackson89 | 585248f850ef594d7291adcd |

| 477 | jamesbusiness | 58d729a8542abc5351f317fb |
| 478 | jasontradecoltd | 5502759b24850b169496f38c |
| 479 | jerry11111 | 56db932cd783b002cbc5224f |
| 480 | jianwustore | 56e7a043c634cf26b078924a |
| 481 | jindandandejia | 58aaeb920b12a451170e2da6 |
| 484 | kareem | 54e20bf5d55e5d2cf3254448 |
| 488 | kingofpop | 5628500905121812012c6e1f |
| 492 | lakajewelry | 58b931ac0ee890530ee64ea7 |
| 494 | lanour | 56889b25a7efa726b38e6cdc |
| 495 | laotie | 5a06b4257b584e6e1be9b275 |
| 496 | largelandowners | 57b32ea65f26cc18d9fcaa38 |
| 497 | lihaibin854588402612ee11e7884e06a3c33231e8 | 58d90e77d61aa056027d512e |
| 500 | liweic | 58d7a8ed08111752becb560b |
| 501 | liyongshengg | 58e352bd475ab6104a0b1abe |
| 503 | longong | 57ad4e4a0ea8f918e190f607 |
| 504 | lovelife888 | 57171c37e48a335913d2d534 |
| 505 | lovelyhomeinternationaltradgingcooperation | 549b6c1344a282131388559f |
| 507 | lowkeylifehousehold | 58becd6bbeaaa30e144f5861 |
| 508 | lqdd616 | 5943cc53ff3e802f912d7460 |
| 511 | majuncheng | 598c6d11f628f53ed5a0e0fd |
| 525 | nailuniquestore | 5afa7845a896162bd59d40ff |
| 526 | nanjingselfelectricalcoltd | 55fb736527aa51428fbbcaac |
| 528 | newgainian | 57ce66a46ac6e11d62a29386 |
| 534 | packii | 53f2c2069020ee03626d6ee1 |
| 535 | pengpengqin0327 | 5a6af64434e72060aee03edf |
| 541 | redson | 593116b50d7f40536bafb053 |
| 543 | rongrong111 | 56fcd979c1bed144e9bc85b5 |
| 548 | shanghailovebrandfactorystore | 537b63a85aefb071200648fc |
| 549 | shanghaiweijintradingcoltd | 538370487360462cb32b7010 |
| 550 | shenhy2 | 5a2f32df7f9ae56820a1423b |
| 552 | shenzhensafetechnologycoltd | 55b43f8a08b324dbb374a4c |
| 554 | shenzhenyishijiahetechnologycoltd | 54991eb0653d516327ad82e4 |
| 568 | supergift | 54f13ebea0086e329580a109 |
| 571 | terjit | 5783343b9d6eff5a44c25639 |
| 577 | upington | 5783477bf1ab1f1132bea5c0 |
| 579 | w_beauties | 58c68fe9e16d63583ab3aaf7 |
| 581 | wangjinshop | 5850e14d6339b440939c2fcf |
| 582 | wangyang625 | 599f9049f628f54fe75b914a |

| 584 | weifenghomesuppliesfranchisestores | 58628ee1e62d6a4d4d787e7d |
|---|---|---|
| 586 | wenbinshop | 587dd30cdc7f834d52f45d33 |
| 594 | xiekaikuishop | 5878e0fa7a5b4f4d75362968 |
| 595 | xinxiaomongxiuong | 5a66e7ae6f602308e2a61b1d |
| 601 | yourbeauty | 54f13bc9d55e5d2b5c1904fb |
| 603 | yuesky | 55eee665f794b74231bfe81b |
| 605 | zeroflystore | 571a3146718b7c3ada6107e3 |
| 606 | 兴华一路41区科林源大厦 | 557aa0840a43e41b9f181967 |
| 607 | 北京环球直通文化传媒有限公司 | 557f959286d66543ca14a976 |
| 609 | 广东深圳市优宜得网络科技有限公司 | 556dadfaa2c01a27bd57a6c6 |
| 610 | 广州奇米斯商贸有限公司 | 54aa3799ffff657b8f15e581 |
| 617 | 深圳市启程远征科技有限公司 | 555beee0b05cf10e946c853a |
| 620 | 跃飞越网络科技有限公司 | 56055ad47d083679a4861cbd |
| 621 | 阿狸梦想母婴店 | 5780aa105d4e9c0f9a842947 |
| 456 (623) | funhobbies | 582d4f892f28c942a4bd9151 |

Light v. Zhangyali, Not Reported in Fed. Supp. (2016)

2016 WL 4429758

2016 WL 4429758
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

River LIGHT V, L.P. and
Tory Burch LLC, Plaintiffs,

v.

ZHANGYALI, et al., Defendants.

No. 15 CV 5918
|
Signed 08/22/2016

**Attorneys and Law Firms**

Kevin W. Guynn, Amy Crout Ziegler, Jessica Lea Bloodgood, Justin R. Gaudio, Greer, Burns & Crain, Ltd., Chicago, IL, for Plaintiffs.

Michael J. Robins, Robins & Associates LLC, Chicago, IL, for Defendants.

**Memorandum Opinion and Order**

Manish S. Shah, United States District Judge

**\*1** Defendant I Love You To The Moom And Back operates an online store and sold earrings bearing a counterfeit Tory Burch trademark. The owners of that trademark, plaintiffs River Light V, L.P. and Tory Burch LLC, brought claims under the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. Plaintiffs now move for summary judgment and seek statutory damages of $150,000. For the following reasons, summary judgment is granted in favor of plaintiffs, and statutory damages in the amount of $100,000 will be awarded.

**I. Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

**II. Facts**

Plaintiffs River Light V, L.P. and Tory Burch LLC hold a valid and incontestable trademark in the shape of two capital T's, registered with the United States Patent and Trademark Office under the number 3,029,795. [52] ¶ 1.[1] Defendant I Love U To The Moom And Back advertised, offered for sale, and sold earrings featuring a counterfeit Tory Burch trademark, without plaintiffs' authorization, through an online Aliexpress.com store. [52] ¶¶ 2–4. It listed the earrings for $1.80, and described them as "Hot fashion follow out big classic double T stud earrings the branded styled fashion rose gold button earrings for women." [52] ¶ 2. Defendant advertised and offered to ship the earrings to potential customers in Illinois and elsewhere in the United States. [52] ¶ 4.

**III. Analysis**

**A. Expert Reports**

**\*2** In its response to this motion, defendant refers to and attaches the declarations of Wenquing Li and Michal Malkiewicz—two expert reports that opine on plaintiffs' actual damages and defendant's willfulness in infringing upon plaintiffs' trademarks. *See* [62-1], [62-3]. Plaintiffs request that the expert reports be stricken, because defendant never disclosed the identities of, or its intent to use, any expert witnesses. Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Exclusion is "automatic and mandatory," unless the sanctioned party can show that nondisclosure was either justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).

Defendant concedes that it failed to make any initial disclosures or disclosures of expert testimony, and that the Li and Malkiewicz declarations constitute expert opinions. Its

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 111 of 144 PageID #:3370

Light v. Zhangyah, Not Reported in Fed. Supp. (2016)

2016 WL 4429758

only excuse is that it did not have an opportunity to provide the necessary disclosures. Defendant claims that it did not decide to commission expert reports until after December 16, 2015, when the briefing schedule for this motion was set and discovery was stayed, and that the expert reports were not ready until six days before its response brief was due. This excuse is not sufficient justification. Defendant both requested and received the reports before the filing deadline for its response brief, and it could have moved to lift the stay or amend the briefing schedule under Federal Rule of Civil Procedure 56(d). What it should not have done was use a stay of discovery as an opportunity to attach an expert report to its response brief without warning.

Defendant also claims that its nondisclosure was harmless. The following factors should be considered in determining whether nondisclosure was harmless:

> (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

Tribble v. Evangelides, 670 F.3d 753, 760 (7th Cir. 2012). Defendant concedes that plaintiffs may have been surprised by its experts' existence, but argues that they should not be surprised by the content of the expert reports, because they are consistent with and support "what the defendant [has] been claiming throughout this case." [74] at 4. Defendant makes no mention at all of the prejudice arising from plaintiffs' inability to adequately respond to the expert declarations. "Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." Tribble, 670 F.3d at 759–60. Plaintiffs had no such opportunity, and defendant has not offered one. Allowing defendant to rely on expert reports that were disclosed for the first time in a response to plaintiffs' summary judgment motion would be prejudicial. Despite defendant's arguments to the contrary, it had the opportunity to make expert disclosures (or seek permission in advance) but did not, and this indicates a willful decision to not comply with the rules. The declarations of Li and Malkiewicz are therefore excluded.[2]

## B. Liability

Plaintiffs seek summary judgment on their federal claims of trademark infringement and counterfeiting under 15 U.S.C. § 1114 (count I) and false designation of origin under 15 U.S.C.

§ 1125(a) (count II), and their Illinois claims, based on the same conduct, under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq. (count IV). Defendant does not dispute liability and concedes that it owes plaintiffs statutory damages under 15 U.S.C. § 1117(c). The only issue in dispute is the amount of those damages. Thus, summary judgment is granted with respect to counts I, II, and IV.[3]

## C. Statutory Damages

*3 Plaintiffs seek an award of statutory damages in the amount of $150,000. Under § 1117(c)(1), a plaintiff may seek statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court orders just." 15 U.S.C. § 1117(c)(1). The statute increases the upper limit of the statutory award to $2,000,000 per mark per type of goods or services "if the court finds that the use of the counterfeit mark was willful." Id. § 1117(c)(2). The statute is analogous to the provision for statutory damages for copyright infringement under 17 U.S.C. § 504(c). See Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1229 (7th Cir. 1991). In Chi-Boy, the Seventh Circuit said that courts enjoy wide discretion in determining statutory damage figures and may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." Id. (quoting F.E.L. Publications v. Catholic Bishop of Chi., 754 F.2d 216, 219 (7th Cir. 1985)). In addition, in the case of willful infringement, "the statutory damages award may be designed to penalize the infringer and to deter future violations." Id. at 1230.

Defendant requests that the lowest possible damages award be given, and its primary argument is simple: "It made an unintentional mistake and it is sorry." [62] at 8. In other words, defendant argues that its infringement was not willful, and as a result, the damages award should not be designed to penalize defendant or deter future infringement. Infringement was willful if the infringer knew that its conduct constituted infringement or if it acted in reckless disregard of the owner's rights. See Wildlife Exp. Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 511–12 (7th Cir. 1994); see also Louis Vuitton S.A. v. Lee, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough."). Knowledge may be inferred from the infringer's conduct. Wildlife, 18 F.3d at 511. Plaintiffs argue that the infringement was willful, because defendant was aware of the possibility that it was selling infringing products but conducted no

2016 WL 4429758

due diligence of its own. Defendant admits this, but says that it relied on the Chinese government and the entities responsible for the online marketplace that hosts defendant's store, Alibaba and AliExpress, to weed out counterfeiters and prevent infringement. And it states, without any supporting evidence, that it purchased the infringing products from another AliExpress store, and that it assumed that store's products were not infringing.[4] Defendant claims that this reflects its naivety, but not a reckless indifference to plaintiffs' rights.

Defendant's argument is unpersuasive. Even if defendant had provided evidence to support its claims that Alibaba and AliExpress actively patrolled the online marketplace for infringing activity, it admits that Alibaba's measures consist only of conducting audits on randomly selected merchants and removing the listings of infringing products. It provides no reason to believe that its listings were ever audited, or that this practice obviates the need for individual merchants to monitor their own listings. Defendant does not describe the efforts undertaken by AliExpress or the Chinese government, but it says the Chinese government imposes fines on counterfeiters. Defendant's argument actually supports plaintiffs' position. Performing no due diligence of its own on its product listings and risking a fine by the Chinese government is not just naïve, it shows a reckless indifference to the trademark owner's rights.

Moreover, plaintiffs point out that defendant's wording of the product description, written in English, seems designed to ensure that the product can be easily found by a search engine without calling attention to the brand name—it includes the words "double T" and "branded" but not "Tory Burch." Plaintiffs say this is consistent with the actions of an intentional infringer, who would try to maximize sales of infringing products while minimizing the risk of the infringement being discovered. Defendant claims, without support in the record, that it merely copied the English-language description from its supplier and, not knowing English, did not have a clear understanding of what it said or meant, even after looking up a translation.[5] Plaintiffs also argue that the Tory Burch trademark is so popular and recognizable that defendant must have known that its products were infringing, while defendant says, again without support, that it did not recognize the trademark. Defendant's unsupported arguments are unpersuasive, and even taking all reasonable inferences in defendant's favor, it is clear that defendant was, at the very least, willfully blind to the counterfeit nature of the earrings. Thus, its infringement was

willful, which calls for a higher damages award to both penalize defendant and deter future infringing activities.

**\*4** Defendant's remaining arguments relate to its calculation of actual damages incurred. Defendant claims that plaintiffs' requested award of $150,000 is excessive in relation to the actual damages as calculated by defendant's experts, and that the award would constitute a windfall. Defendant's expert reports are excluded, so its determination of actual damages will not be considered. Plaintiffs do not provide a competing assessment of its actual damages, and having elected to seek statutory damages under § 1117(c), they do not need to. It is true that there is no evidence in the record to suggest that defendant is a large-scale counterfeiter or that plaintiffs suffered substantial harm. Nevertheless, in light of the undisputed facts supporting a finding of willfulness, the requested relief is not so high as to be considered a windfall.

Plaintiffs emphasize the willfulness of the infringement, and the fact that defendant had the ability to reach a vast customer base over the internet. These factors do militate in favor of a high award to compensate plaintiff, penalize defendant, and deter future infringement. Defendant advertises and sells its products worldwide through its online store; it does not review its products for possible infringement, though it understands that such a possibility exists; and the product description of the infringing earrings that it did sell was worded to ensure maximum exposure and minimal risk of getting caught. The proliferation of lower-quality, counterfeit goods damages a brand's value and goodwill, and a significant award is required to deter defendant and others from engaging in similar conduct. The requested award of $150,000 is also much lower than the maximum award of $2,000,000 that is authorized under § 1117(c)(2) for instances of willful infringement. However, defendant's willful infringement is mitigated to some extent by the fact that it hired counsel and appeared in this action, rather than defaulting. And despite defendant's global reach, there is no evidence to suggest that plaintiffs suffered significant damages as a result of defendant's conduct. Of all the factors to consider, the need to punish and deter willful infringement is the most important under the circumstances of this particular defendant's conduct, and I conclude that $100,000 is a sufficient award of statutory damages.

### D. Permanent Injunction

In addition to statutory damages, plaintiffs requests that defendant be permanently enjoined from advertising, offering for sale, and selling products that bear a counterfeit Tory

2016 WL 4429758

Burch trademark or otherwise violate plaintiffs' rights in the mark. Defendant does not explicitly refer to this request, but insists repeatedly that it will never engage in the sale of Tory Burch products again. Plaintiffs have established that infringement occurred, and the harm to its brand from the sales of counterfeit goods is irreparable—the confusion caused by knock-off products in the stream of commerce damages the value of the brand and cannot be compensated by money alone. There is no harm to the defendant to being enjoined from violating the law, and the public interest is served by eliminating potential consumer confusion. Plaintiffs request that the permanent injunction order third-party domain name registrars and online marketplaces to disable any account linked to defendant, linked to any e-mail addresses used by defendant, or linked to the defendant's internet store. They also request that defendant be enjoined from owning or operating any domain name or online marketplace account that could be used to sell infringing products in the future. These requests are overbroad in that they disproportionately harm defendant's ability to conduct legitimate business. The request for injunctive relief is otherwise granted.

### E. Attorney's Fees and Costs

**\*5** Finally, plaintiffs seek recovery of its attorney's fees and costs. Attorney's fees are recoverable under § 1117(a)

and § 1117(b) in certain circumstances, including when the infringement was willful. 15 U.S.C. §§ 1117(a)–(b); *see also BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). Defendant correctly notes that those provisions relate to awards of actual damages rather than statutory damages, but attorney's fees are available when plaintiffs opt to receive statutory damages under § 1117(c), as well. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Accordingly, reasonable attorney's fees shall be awarded to plaintiffs. Costs are available to plaintiffs, as the prevailing party, under Federal Rule of Civil Procedure 54(d)(1).

### IV. Conclusion

Plaintiffs' motion for summary judgment, [50], is granted. Enter permanent injunction prohibiting defendant from violating plaintiffs' rights in the Tory Burch mark. Statutory damages in the amount of $100,000, attorney's fees, and costs shall be awarded. Plaintiffs' motion for attorney's fees and bill of costs is due by 9/12/16, defendant's response is due by 9/26/16, and plaintiffs' reply is due by 10/11/16.

### All Citations

Not Reported in Fed. Supp., 2016 WL 4429758

Footnotes

1    Bracketed numbers refer to entries on the district court docket. The facts are taken from plaintiffs' LR 56.1 statement. Because defendant did not follow the court's local rules by submitting a paragraph-by-paragraph response to plaintiffs' LR 56.1 statement, *see* LR 56.1(b)(3)(a)–(b), plaintiffs' facts are undisputed. Defendant also decided not to file a statement of additional facts, which is authorized under LR 56.1(b)(3)(c). Instead, defendant filed two expert reports that are labeled "declarations," *see* [62-1] and [62-3], with over 10,000 pages of attachments. These expert reports do not meet the requirements of LR 56.1, and "a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Unif. Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Thus, any statements of facts that may be contained therein will not be considered. Defendant also filed with its response brief the declaration of Zhenggui Wang, [62-4], who purports to be defendant's president, but neither party mentions that declaration anywhere in the briefing. Wang's declaration is therefore excluded, as well.

2    Plaintiffs also stated concerns over the relevance of the reports or the qualifications of the experts, but those concerns need not be addressed.

3    Count III of the amended complaint, [21], does not pertain to defendant. That cause of action was alleged against other defendants in this case who are not subject to this motion.

4    Defendant's expert declarations are excluded, but it is worth noting that one of them attaches purchase records of the infringing products and screenshots from the supplier's website, all of which suggest that defendant bought the products from 1688.com, which does not appear to be an AliExpress website. *See* [62-1].

5    The only possible support for defendant's explanation is a statement in Wang's declaration, [62-4] ¶ 16, but defendant does not cite to that declaration. Moreover, defendant's explanation conflicts with an attachment to Li's excluded expert declaration, [62-14]. According to Li's declaration, the attachment contains screenshots of the supplier's website and

**Light v. Zhangyali, Not Reported in Fed. Supp. (2016)**

2016 WL 4429758

purchase records of the infringing earrings. [62-1] at 15 n.53. None of these documents contain English-language product descriptions.

---

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 115 of 144 PageID #:3374

Lorillard Tobacco Co. v. Montrose Wholesale Candies and..., Not Reported in...

2008 WL 1775512

2008 WL 1775512
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

LORILLARD TOBACCO COMPANY,
a Delaware Corporation, Plaintiff,

v.

MONTROSE WHOLESALE CANDIES
AND SUNDRIES, INC., et al., Defendant.

Nos. 03 C 5311, 03 C 4844.
|
April 17, 2008.

### MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge.

**\*1** On November 18, 2007, we issued a judgment awarding Lorillard Tobacco Company ("Plaintiff") $2.5 million in statutory damages under the Lanham Act.[1] Subsequently, Montrose Wholesale Candies and Sundries, Inc., Ray Hazemi, and Sandra Hazemi (collectively referred to as the "Defendants") filed a Rule 59(e) motion to alter or amend that judgment. We referred Defendants' motion to Magistrate Judge Cole, and he issued a Report and Recommendation on February 25, 2008 ("Report") recommending that we deny Defendants' motion. Presently before us is Defendants'[2] objections to Magistrate Judge Cole's Report. For the reasons set forth below, we overrule Defendants' objections and adopt the Report.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b) sets forth the procedure for objecting to a magistrate judge's report and recommendation on dispositive matters: "Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b). To comply with the rule in the Seventh Circuit, a party must "specify each issue for which review is sought[, but

need] not [include] the factual or legal basis of the objection." *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 741 (7th Cir.1999). Generally, a district court reviews a magistrate's report and recommendation for clear error. Fed.R.Civ.P. 72(a); *see Hartford Accident & Indemnity v. Sullivan,* No. 76 C 3319, 1987 WL 9977, at *2 (N.D.Ill. Apr. 20, 1987). However, the district court undertakes a *de novo* review of those portions of the Report to which a party specifically objected. *Johnson,* 170 F.3d at 741; Fed.R.Civ.P. 72(b).

### ANALYSIS

On February 25, 2008, Magistrate Judge Cole issued a Report recommending that we deny Defendants' Rule 59(e) motion. As the Report correctly indicated, " '[a] court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.' " *County of McHenry v. Ins. Co. of the W.,* 438 F.3d 813, 819 (7th Cir.2006) (quoting *Matter of Prince,* 85 F.3d 314, 324 (7th Cir.1996)). However, a party may not use a Rule 59(e) motion "to advance arguments or theories that could and should have been made before the district court rendered a judgment.' " *Id.* (quoting *LB Credit Corp. v.. Resolution Trust Corp.,* 49 F.3d 1263 (7th Cir.1995)).

Contrary to Defendants' arguments, Magistrate Judge Cole's Report found that: (1) we need not conduct an evidentiary hearing to determine statutory damages in this case; (2) the Lanham Act authorizes $2.5 million in statutory damages in this case; and (3) Mrs. Hazemi's arguments were insufficient to show that the court erred in holding her jointly and severally liable.

**\*2** Defendants now object to the Report and argue that we should grant their Rule 59(e) motion because: (1) the court failed to make specific findings and conduct an evidentiary hearing regarding the amount of statutory damages; (2) the maximum statutory damages recoverable under the Lanham Act is $1 million based on the facts of this case; and (3) Plaintiff's Second Amended Complaint did not request statutory damages under the Lanham Act. We address each of these objections in turn below.

### A. Objections to the Statutory Damages Calculation

Lorillard Tobacco Co. v. Montrose Wholesale Candies and..., Not Reported in...

2008 WL 1775512

Defendants argue that Magistrate Judge Cole erred in denying its Rule 59(e) motion because Plaintiff never produced evidence sufficient to justify the statutory damage award in this case. Specifically, Defendants now argue for the first time that we were required to weigh the seven factors listed in the Copyright Act in order to award statutory damages in this case.[3] (*See* Def. Objection at 2-4).

While courts have held that the seven factors under the Copyright Act offer some guidance in Lanham Act cases, *see, e.g., Gucci v. Am. Inc. v. Duty Free Apparel, Ltd.,* 315 F.Supp.2d 511, 520 (S.D .N.Y.2004), courts are "not required to follow any rigid formula" when applying these factors. *See Chi-Boy Music v. Charlie Club,* 930 F.2d 1224, 1229 (7th Cir.1991). In addition, Magistrate Judge Cole acknowledged these factors in his September 10, 2007 Report and found that they weighed against Defendants not only because they are deemed to have acted willfully by virtue of the default judgment, but also because their repeated discovery abuses prevented actual damages from being proven. (*See* 9/10/07 Report at 5, 6, 9 (Case No. 03-5311, Docket No. 197)). Thus, we find that Defendants' objection lacks merit.

To the extent that Defendants repeat their request for an evidentiary hearing and/or trial in this case to determine willfulness, we again find that this argument is without merit.[4] As we have previously indicated, because we entered a default judgment in this case, all allegations of the Plaintiff's complaint are taken as true. *See Cass County Music Co. v. Muedini,* 55 F.3d 263, 266 (7th Cir.1955).[5] By virtue of this rule, Defendants are deemed to have acted willfully. (*See* Second Am. Compl. ¶ 20 (alleging that Defendants acted "with the intent to confuse and mislead the public")).[6]

In addition to the above factors, Defendants also argue that we were required to conduct an evidentiary hearing on statutory damages. Defendants rely upon *Dundee Cement Co. v. Howard Piper Concrete Products, Inc.,* for the proposition that even after a default judgment, a hearing on damages is required unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." 722 F.2d 1319, 1323 (7th Cir.1983).[7] Magistrate Judge Cole distinguished *Dundee Cement,* however, because it did not involve statutory damages. (*See* Report at 2; *see also* 9/10/07 Report at 6 (explaining that no evidentiary hearing is necessary because "cases like this, where the information needed to prove actual damages is in the infringer's control,

are the very reason for the provision allowing statutory damages awards; no prove-up is necessary")).

**\*3** We agree with Magistrate Judge Cole that the statutory damage award here may be determined without an evidentiary hearing. First, requiring an evidentiary hearing for statutory damages here would defeat the purpose of 15 U.S.C. § 1117(c)(2), which recognized that damages in trademark cases may be difficult to prove due to defendant conduct. *See* S.Rep. No. 104-177, at \*10 ("The committee recognizes that under current law, a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting."). This purpose is particularly relevant here given Defendants' repeated discovery abuses. (*See* 11/8/05 Report (Case No. 03-4844, Docket No. 197)). In addition, other courts have awarded statutory damages after default judgment without conducting evidentiary hearings.[8]

Given these considerations and our discretion in determining statutory damages awards, we agree with Magistrate Judge Cole that our award of $2.5 million in statutory damages without an evidentiary hearing was not an error of law.[9]

### C. "Type of Goods" Objection

Defendants also argue that the judgment should be amended because the maximum statutory damages award recoverable in this case is $1 million because only one type of goods (cigarettes) are at issue. (Def. Objection at 4). The Lanham Act states that "if the court finds that the use of the counterfeit mark was willful," then the court may award "not more than $1,000,000 *per counterfeit mark per type of goods* or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(2) (emphasis added).

Magistrate Judge Cole rejected this argument because not only had Defendants failed to cite any case law in support of its proffered statutory interpretation, but also because other cases indicate that a plaintiff may recover $1 million in statutory damages for each trademark violated even if only one product is involved. (Report at 3; *see also Top Brand Co.,* No. 00 Civ. 8179, 2006 WL 2946472, at \*3 (awarding $12 million in statutory damages for three counterfeit goods each bearing four trademarks and $5 million for one counterfeit good bearing five trademarks); *Gucci Am., Inc.,* 315 F.Supp.2d at 521 n. 8; *Variety Wholesalers, Inc.,* 274 F.Supp.2d at 1374. Thus, because Plaintiff alleged that five of its trademarks were violated, Magistrate Judge Cole found

Lorillard Tobacco Co. v. Montrose Wholesale Candies and..., Not Reported in...

2008 WL 1775512

that we have discretion to award up to $5 million in statutory damages. (Report at 6; *see also* Second Amended Compl. ¶ 16).

Defendants now claim that Magistrate Judge Cole's interpretation of the statute defies commonsense and that none of the above cases are controlling in this district. Regardless, Defendants still have not cited one case that supports their interpretation, and we agree with Magistrate Judge Cole's interpretation of the statutory language.

**C. Dispute regarding Second Amended Complaint**

**\*4** Defendants finally argue that Plaintiff's Second Amended Complaint never requested statutory damages under the Lanham Act specifically, and thus that Magistrate Judge Cole Report incorrectly awarded them. Defendants' argument appears to be essentially that because Plaintiff's statutory damage request is at the end of its complaint, this means that Plaintiff is only claiming statutory damages under the last count of its complaint, Inducement to Commit Fraud. (Def. Objection at 5). We disagree. Reviewing Plaintiff's

Second Amended Complaint, Plaintiff specifically asked for "statutory damages in lieu of actual damages, as provided in 15 U.S .C. § 1117(c)." (Second Amended Compl. ¶ F). While this request was at the end of the complaint and not specifically under Counts I, II, and III, this is of no consequence since Plaintiff is clearly requesting relief for all of its counts at the end of its complaint and Plaintiff clearly cites to the Lanham Act in Paragraph F. Thus, we agree with Magistrate Judge Cole that this argument is without merit.

**CONCLUSION**

For the reasons set forth below, we overrule Defendants' objections and adopt Magistrate Judge Cole's Report. Accordingly, Defendant's Rule 59(e) motion is denied. It is so ordered.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1775512

Footnotes

1    Magistrate Judge Cole provided an in-depth description of the history and background of this case in *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, et al.,* Nos. 03 C 5311 and 03 C 4844, 2005 WL 311582, at \*1-13 (N.D.Ill. Nov. 8, 2005), *adopted by* Docket No. 229 (N.D.Ill. Jan. 30, 2006). Therefore, we will assume familiarity with the facts and only restate them as necessary to examine the issues below.

2    While we acknowledge that Sandra Hazemi filed a separate response on March 3, 2008 (and a virtually identical reply on March 24, 2008), for the purpose of this opinion we will assume that Mrs. Hazemi would join in Montrose's and Ray Hazemi's arguments. As relevant, we will indicate where Mrs. Hazemi has asserted objections that differ from those of the other Defendants.

3    These Copyright Act factors include:
     "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; (7) the potential for discouraging the defendant." *Gucci v. Am. Inc. v. Duty Free Apparel, Ltd.,* 315 F.Supp.2d 511, 520 (S.D.N.Y.2004) (internal citations omitted).

4    Mrs. Hazemi's objections focus on this argument and emphasize, as she has in the past, that no evidence has been proven against her and that thus she should be afforded a trial to determine the extent of her involvement in the business.

5    Defendants also argue that *Top Brand* and *Gucci* support this argument because they require solid evidence of willfulness not present here. (Def. Objection ¶ 6). These cases are distinguishable, however, because neither involved a default judgment. *See Nike, Inc. v. Top Brand,* No. 00 Civ. 8179, 2006 WL 2946472, at \* 1 (S.D.N.Y. Feb. 27, 2006) (explaining that the decision is limited to the defendants whose liability was determined on summary judgment); *Gucci Am.,,* 315 F.Supp. at 513 (noting that a two-day bench trial was conducted to determine willfulness).

6    In addition, we agree with Magistrate Judge Cole that Mrs. Hazemi has failed to provide any legal reason why our judgment should be vacated against her. In her objections, Mrs. Hazemi insinuates that Magistrate Judge Cole is somehow biased against her. Mrs. Hazemi also argues that she is being found guilty by association merely as the wife of Ray Hazemi and that she was never given the opportunity to speak at depositions. (*See* Sandra Hazemi's Objections at 1, 3). However, Plaintiff's Second Amended Complaint includes allegations regarding Mrs. Hazemi's involvement, which are taken as true upon default judgment. (*See* Second Am. Compl. ¶ 4); *see also Cass County Music Co.,* 55 F.3d at 266. In addition,

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 118 of 144 PageID #:3377
Lorillard Tobacco Co. v. Montrose Wholesale Candies and..., Not Reported in...
2008 WL 1775512

while Mrs. Hazemi may not have had the opportunity to say what she wished during depositions, we find that she had ample time before we entered judgment to put forth any arguments because this case has been pending for five years and she has attended numerous court appearances. (Report at 6). Thus, we do not find that we committed "a manifest error of law or fact" by finding her jointly and severally liable in our November 18, 2007 judgment.

7    We note that Defendants only mentioned this argument in one sentence at the end of their brief. (*See* Def. Objections ¶ 13). However, because Defendants' original Rule 59(e) motion had a more lengthy discussion of this case, we will address its arguments here. (*See* Def. Rule 59(e) Motion 4-5).

8    *See, e.g., Ortiz-Gonzalez v. Fonovisa,* 277 F.3d 59, 63-64 (1st Cir.2002) (finding that no evidentiary hearing on statutory damages was required after default judgment since was within district judge's discretion to award within an amount within the statutory range); *Microsoft Corp. v. Nop,* No. CIV S-07-1276, 2008 WL 686584, at *4 (E.D.Cal. Mar. 11, 2008) (determining amount of statutory damages without an evidentiary hearing and noting that "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed" (internal citations omitted)); *Warner Bros. Records Inc. v. Hentz,* No. 06-cv-686-JPG, 2007 WL 2481289, at *4 (S.D.Ill. Aug. 29, 2007).

9    Defendants also attempt to distinguish the statutory damage awards in the cases cited in Magistrate Judge Cole's Report. For example, Defendants argue that: *Top Brand* is distinguishable because the defendant's infringing operations in that case led to the production of millions of infringing goods; *Gucci* is distinguishable because the defendants continued to sell counterfeit goods after the lawsuit was filed; and *Variety Wholesalers, Inc.* is distinguishable because the court awarded less than $2 million in damages even though defendants was a company with over 450 stores and $600 million in gross annual sales. (Def. Objections at 3-4).

However, we find these distinctions irrelevant because these courts also focused upon the defendants' willfulness and abusive conduct during the litigation, as has been repeatedly emphasized in this case. *See Top Brand,* No. 00 Civ. 8179, 2006 WL 2946472, at *2 (examining the extent of the defendants' operation as only one factors in determining the statutory damage amount and also stressing that "the willfulness of their conduct, and their behavior in this litigation all weigh towards a grant of the maximum in statutory damages"); *Gucci Am., Inc.,* 315 F.Supp.2d at 521 (determining that defendant acted willfully not only because defendant continued to sell counterfeit goods after the suit was filed, but also due to defendant's "bold contempt for the law" exhibited both during the two-year period it sold the counterfeit goods and during the course of the litigation).

In addition, Defendants' reliance upon *Nike Inc. v. Variety Wholesalers, Inc.* as evidence that the award here was excessive is misplaced because the award in that case was based upon actual damages determined after a trial, and did not involve a willful defendant. *See* 274 F.Supp.2d 1352, 1374 (S.D.Ga.2003).

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S.
                                                       Government Works.

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 119 of 144 PageID #:3378

Lorillard Tobacco Co. v. S & M Cent. Service Corp., Not Reported in F.Supp.2d (2004)

2004 WL 2534378

2004 WL 2534378
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

LORILLARD TOBACCO
COMPANY, Plaintiff,

v.

S & M CENTRAL SERVICE
CORPORATION, Defendant.

No. 03 C 4986.
|
Nov. 8, 2004.

*MEMORANDUM OPINION AND ORDER*

HOLDERMAN, J.

**\*1** Plaintiff Lorillard Tobacco Co., ("Lorillard"), filed suit against defendant S & M Central Service Corporation, ("S & M"), alleging that S & M infringed of five of Lorillard's registered trademarks in violation of the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.,* ("Lanham Act"), by willfully, or with willful blindness, offering for sale, selling and distributing counterfeit versions of Lorillard's Newport cigarettes. At the conclusion of a two day trial on the merits, a jury returned a verdict in favor of Lorillard and stated: (1) yes, consumers would likely confuse the cigarette packs bearing the counterfeit marks sold by S & M with genuine Newport cigarette packs; and (2) yes, S & M's actions were taken willfully or committed with willful blindness. (Dkt. No. 49.)

Lorillard's August 4, 2004 post-trial motions request this court to (1) award Lorillard statutory damages of five hundred thousand dollars, ($500,000),[1] pursuant to 15 U.S.C. § 1117(c); (2) award Lorillard costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b); (3) enter a permanent injunction barring S & M from selling, offering for sale or distributing counterfeit cigarettes, and, (4) amend the pleadings to add Safwan Alkhawan ("Alkhawan") and Marwan Khawam ("Khawam") as individually liable defendants in order to conform the pleadings to the evidence presented at trial. Lorillard also submitted a motion on August 16, 2004 to Strike the Defendant's Brief on Damages pursuant

to Rules 12, 26 and 37 of the Federal Rules of Civil Procedure, ("Rules").

S & M, in its Brief Regarding Damages of August 6, 2004, requests that if any damages are awarded, the court should award 15 U.S.C. § 1117(c)'s minimum amount of $500 per infringed mark for a total award of $2,500. S & M also argues that an award of attorneys' fees and costs is not appropriate in this case.

For the reasons set forth below, this court awards to Lorillard, pursuant to 15 U.S.C. § 1117(c), statutory damages of Fifty Thousand Dollars ($50,000) per infringed mark for a total statutory damage award of Two Hundred Fifty Thousand Dollars ($250,000). This court also finds that Lorillard is entitled to receive reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1117(b) but the parties must comply with the requirements of Local Rule 54.3 before this court can calculate a figure for reasonable costs and attorneys' fees. In addition, this court grants Lorillard's request for a permanent injunction, but denies Lorillard's Motion to Amend the Pleadings to Conform to the Evidence and denies Lorillard's August 16, 2004 Motion to Strike S & M's Brief on Damages.

*BACKGROUND*

*A. Lorillard Tobacco Company*

Lorillard is the fourth largest tobacco company in the United States. (Stipulation and Statement of Uncontested Facts ¶ 4, Ex. 1 to the Pre–Trial Order, [hereinafter Uncontested Facts].) First introduced into the market in 1956, Newport is a Lorillard cigarette brand. (*Id.* at ¶ 6.) Newport is the leading brand of menthol cigarettes sold in the United States, and it is the second leading cigarette brand overall with an eight percent market share. (*Id.* at ¶ 6–7.)

**\*2** Lorillard has protected the value of the Newport brand by registering the five following trademarks with the United States Patent and Trademark Office: Reg. No. 1,108,876; Reg. No. 1,178,413; Reg. No. 1,191,816; Reg. No. 1,920,066; and Reg. No. 2,600,870. (*Id.* at ¶ 10.) Four of the marks, Nos. 1,108,876; 1,178,417; 1,191,816; and 1,920,666, have attained incontestable status under 15 U.S.C. § 1115(b). (*Id.*)

*B. S & M Central Service Corporation and its interaction with Lorillard*

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 120 of 144 PageID #:3379

Lorillard Tobacco Co. v. S & M Cent. Service Corp., Not Reported in F.Supp.2d (2004)

2004 WL 2534378

S & M operates a gas station in Chicago, Illinois. (Trial Tr. pg. 59.) The station sells gasoline, operates maintenance bays, and sells consumer products including food, magazines and cigarettes. (Uncontested Facts at ¶ 3.) Lorillard became aware of counterfeit Newport cigarettes at S & M when one of Lorillard's sales representatives made a sales call to S & M. (*Id.* at 16.) The sales representative purchased two cartons of the counterfeit cigarettes. (Trial Tr. at 42.) On July 18, 2003, Lorillard obtained an *Ex Parte* Seizure Order from this court authorizing a seizure of counterfeit cigarettes at S & M. The executed search of S & M resulted in a seizure of 83 cartons and 9 packages of counterfeit Newport cigarettes and associated business records.

*ANALYSIS*

*A. Lorillard's Motion to Strike S & M's Brief on Damages*
On August 16, 2004, Lorillard filed a motion to strike S & M's August 6, 2004 brief on damages under Rules 12, 26, and 37. Lorillard's motion asserts two separate concerns. First, Lorillard argues that S & M's brief contains misstatement of facts unsupported by citation to the record. Second, Lorillard argues that S & M improperly included its 2001, 2002, and 2003 tax returns as an exhibit to S & M's brief on damages. Lorillard argues that it had requested financial information included tax returns from S & M during discovery, that S & M had failed to disclose these items, and therefore S & M should be prohibited from using these documents under Rule 37. Lorillard requests the court to strike S & M's brief in whole, or in the alternative strike specific offending portions of the brief, and the impose sanctions against S & M.

S & M counters that the documents provided with its brief were specifically requested by the court at the end of the trial, that these documents were not disclosed during discovery because they were not relevant and the information contained in the brief is appropriate since S & M is making arguments to the court. S & M further argues that Lorillard should be sanctioned for bringing its motion to strike.

Lorillard is unable to bring a motion to strike under Rule 12(f). Rule 12(f) provides that "the court may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The plain language of Rule 12(f) states that the Rule applies to "pleadings." A memorandum submitted in support of a court's determination of damages is not a pleading under the Rules. *See* Fed.R.Civ.P. 7(a) (Defining pleadings

as either a complaint, answer, reply to a counterclaim, an answer to a cross-claim, a third-party complaint, or third-party answer); *see, e.g., E.E.O.C. v. Admiral Maint. Serv., L.P.,* 174 F.R.D. 643, 645–47 (N.D.Ill.1997). Consequently, by the plain language of Rules, Rule 12(f) is not applicable. The court notes, however, that any evaluation of the facts must be based on the record presented to the court and the court will provide proper citations to the record were appropriate.

**\*3** Furthermore, this court concludes that it will consider the tax returns provided by S & M in its brief on damages. The language of Rule 37(c) allows a court to consider evidence that otherwise would be excluded when the result is harmless. Fed.R.Civ.P. 37(c). In this case, the court concludes that S & M's decision to provide its 2001, 2003 and 2003 tax returns was harmless to Lorillard and actually undercuts certain of S & M's arguments due to the way that S & M uses the tax returns in its brief on damages.

S & M provides its tax returns as support for its statement that "S & M has not been a profitable enterprise. The attached tax returns of 2001, 2002, and 2003 show that there was no taxable income to the company. As a result, any award of damages would cause a hardship to the Defendant." (Def. Br. Regarding Damages of August 6, 2004 at 3.) However, the information contained in the tax returns contradict the statement that any award of damages would be a hardship. It is true that S & M reported zero taxable income on its 2001, 2002 and 2003 federal tax returns. However, the zero taxable figure was the result of a Net Operating Loss deduction, ("NOL"), that S & M was able to take during those three years. A NOL is a non cash deduction that allows a company to "carry-forward" and/or "carry-back" prior year losses and recognize them as current year deductions. *See* 26 U.S.C. § 172. Consequently, S & M's statement that it "has not been a profitable enterprise" may be technically correct for tax purposes since S & M reported no taxable income. However, the tax returns actually undermine S & M's statement that "any award of damages would cause a hardship for the Defendant" because S & M recognized a profit before the NOL deduction. S & M's creditability as to its statement of financial condition is further undermined by the millions of dollars of wire transfers uncovered by Lorillard. (Pls. Brief on Damages and Att'ys Fees of August 6, 2004 at Ex. I.) Since the tax returns submitted by S & M are actually harmful to S & M and helpful to Lorillard, the court concludes there is no harm as to Lorillard and will deny Lorillard's motion to strike. In light of this decision, S & M's motion to sanction Lorillard for bringing its motion to strike is denied.

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 121 of 144 PageID #:3380

Lorillard Tobacco Co. v. S & M Cent. Service Corp., Not Reported in F.Supp.2d (2004)

2004 WL 2534378

*B. Lorillard's Motion for Statutory Damages under 15 U.S.C. § 1117(c)*

Title 15, Section 1117 allows a plaintiff to elect, at any time before final judgment is rendered, one of two alternative recovery options for trademark infringement: (1) the actual damages caused by the infringement, 15 U.S.C. § 1117(a); or (2) statutory damages. 15 U.S.C. § 1117(c). Congress provided the statutory damages option of 15 U.S.C. § 1117(c) through the Anticounterfeiting Consumer Protection Act of 1996, Pub.L. No. 104–153, § 7, 110 Stat. 1368. This option was added due to the concern that a counterfeiter might hide, alter or destroy records, thus making it impossible for a plaintiff to determine the scope of, or be able to prove, actual damages. *Louis Vuitton v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa.2002) (citing S.Rep. No. 177, 104 Cong. (1995)).

 **\*4** Section 1117(c)(1) allows statutory damages of "not less than $500 and no more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). In addition, Section 1117(c)(2) allows a statutory award of up to $1,000,000 per counterfeit mark "if the court finds that the use of the counterfeit mark was willful." 15 U.S.C. § 1117(c)(2).

Although section 1117(c) contains the dollar ranges for possible statutory damage awards, the statute does not provides guidance on how to select a damage figure within statutory dollar range. Courts interpreting section 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *Sara Lee v. Bags of New York, Inc .,* 36 F.Supp.2d 161, 166 (S.D.N.Y.1999) ("Cases decided under the Copyright Act, which deals with a similar problem and a similar legislative grant to discretion, afford guidance here."). *Accord, Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.,* No. 1:00–CV–1934–BBM, 2003 WL 22331254, at \*28 (N.D.Ga. May 9, 2003); *Louis Vuitton,* 211 F.Supp.2d at 583; *Microsoft Corp. v. Logical Choice Computers, Inc.,* No. 99 C 1300, 2001 WL 58950, at \*11 (N.D.Ill. Jan. 22, 2001); *Microsoft Corp. v. Software Wholesale Club, Inc.,* 129 F.Supp.2d 995, 1008 (S.D.Tex.2000).

The Seventh Circuit's standard for awarding copyright statutory damages under 17 U.S.C § 504(c), and thus the standard this court will use for awarding trademark statutory damages under 15 U.S.C. § 1117(c), is enumerated in *Chi–Boy Music v. Charlie Club.* 930 F.2d 1224, 1229 (7th Cir.1991). Under the *Chi–Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula but instead enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Additionally, statutory damages are appropriate to "penalize the infringer and deter future violations" when the infringement was willful. *Id.* at 1230.

Lorillard argues for a damages award of at least $100,000 per each of the five infringed marks for a minimum damage award of $500,000. Lorillard argues that the $500,000 is appropriate in light of (1) S & M's annual total gross sales of approximately $1.35 million, (2) S & M's annual total gross sales of cigarettes of $300,000, (3) the "immeasurable value" of Lorillard's trademarks and the risk that customers using inferior counterfeit cigarettes will stop buying Newport products, and, (4) will serve to deter both S & M and other potential infringers. (Pls. Brief on Damages and Att'ys Fees of August 6, 2004 at pg 12–13, 18.) In addition, Lorillard argues that the court should reject any of the S & M's arguments about inability to pay a damages award. According to Lorillard, S & M's financial information should be "viewed with a healthy degree of skepticism," since they have failed to provide supporting documentation and Lorillard uncovered "millions of dollars worth of foreign wire transfers" made by S & M. (*Id.* at 13.)

 **\*5** Lorillard also argues for the court to find that S & M was willful in its infringement. A finding of willful infringement would allow for a damages award of up to $1,000,000 per counterfeit mark, 15 U.S .C. § 1117(c)(2), for a total potential award of $5,000,000. According to Lorillard, evidence of S & M's willfulness include (1) the purchase of larger than usual quantities of purported Newport cigarettes from Cam–Kat at a price well below market value and in unusual packaging that differed significantly from the genuine Newport packaging, and, (2) the jury's verdict finding willful infringement. (*Id.* at 15.) Additionally, Lorillard argues that S & M's attempts to rebut the question of willfulness merely highlight their own guilt," (*Id.*), and they have exacerbated their willful purchases of counterfeit Newports by "lying throughout this case—from the day of the *ex parte* seizure to the last day of trial." (*Id.* at 16.)

S & M argues the court should impose no damages or at the most the minimum statutory penalty of $500 per infringed mark for a total award of $2,500. S & M argues that (1) the

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 122 of 144 PageID #:3381

Lorillard Tobacco Co. v. S & M Cent. Service Corp., Not Reported in F.Supp.2d (2004)

2004 WL 2534378

conduct of defendants in other reported infringement cases is more willful and done with more disdain than in this case, and therefore warranted higher damages, (Defs. Brief Regarding Damages of August 6, 2004 at pg 2); (2) S & M has not been a profitable enterprise and therefore any damage award would cause a hardship, (*Id.*); (3) the actual damage to Lorillard was very small due to the small number of cartons of counterfeit product purchased, (*Id.* at 4.); (4) despite the jury's finding of willfulness, the evidence for willfulness was not overwhelming, (*Id.*), (5) Lorillard shares some level of responsibility since it possessed specialized and sophisticated knowledge about how to identify counterfeit packages and never shared this information with S & M, (*Id.* at 5); and, (6) the court should not be bound by the jury's findings. (*Id.* at 6)

This court concludes that the appropriate damage award in this case is $50,000 per infringed mark for a total statutory damages award of $250,000. This amount is appropriate due to the value of the trademarks, the conduct by S & M, and the need to deter future conduct by S & M and other potential counterfeiters. Furthermore, this court notes that an award of $250,000 is reasonable and fair in light of the range of awards provided by other courts awarding damages under 15 U.S.C. § 1117(c),[2] and that the total potential award could have been as high as $5,000,000 due to the maximum statutory award of $1,000,000 for each willfully infringed trademark.

The five trademarks infringed by S & M are of considerable worth and value. Lorillard has taken considerable action to cultivate, maintain and strengthen these trademarks including: (1) registering the trademarks with the United States Patent and Trademark Office, (Uncontested Facts at ¶ 8); (2) manufacturing the Newport product through strict quality control standards, (*Id.* at ¶ 5); (3) investing substantial time, energy and money in advertising and promoting the Newport product (*Id.* at ¶ 6); (4) training its sales personnel to be aware of counterfeit products so, like in this case, they can identify and report suspicious items, (Trial Tr. at pg 33.); and, (5) protecting the value of its trademarks by litigating against trademark infringers.

**\*6** Congress has provided the option of statutory damages under 15 U.S.C. § 1117(c) and Lorillard has elected to pursue that remedy. Consequently, the significant value of Lorillard's brand and the efforts taken to protect, promote and enhance that brand should be considered by the court in the determination of the appropriate dollar figure for the award. Furthermore, the actual damages incurred by Lorillard are of lesser concern in determining a proper damage award

because Congress' decision to allow statutory damages under 15 U.S.C. § 1117(c) was in direct recognition of the fact that the calculation of the actual damages may be difficult, if not impossible, to determine. *Louis Vuitton v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa.2002) (citing S.Rep. No. 177, 104 Cong. (1995)).

The actual damages figure is also less relevant since part of the purpose of statutory damages is to deter the current violator and other potential future violators. Thus, the court believes that a damage award limited to Lorillard's lost profits would have little to no deterrent effect on future violations. A counterfeiter must fear more than just having to turn over his ill gotten gains to the rightful owners. Instead, the counterfeit must understand that he risks his financial future by engaging in his illegal practice. As the Seventh Circuit has held, "one who undertakes a course of infringing conduct may neither sneer in the face of the [trademark] owner nor hide its head in the sand like an ostrich." *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 514 (7th Cir.1994) (citations omitted).

Furthermore, deterring S & M along with potential future trademark infringers is an important consideration in light of the fact that counterfeiters often times produces lower quality products than the original. Lorillard properly notes that infringement deprives the rightful owner of profits and reduces the value of its brands. But an additional concern, above and beyond the financial harm, is that counterfeit consumer products can also potentially pose the risk of being more harmful or dangerous then the real product. The House of Representatives in its report on the Anticounterfeiting Consumer Protection Act of 1996, Pub.L. No. 104–153, § 7, 110 Stat. 1368, noted, "even more grievous than the enormous economic losses suffered by American companies are the serious health and safety hazards caused by criminal counterfeiting." H. Rep. No. 556, 104 Cong. (1996).

The court is not entering into a discussion of the general health effects of cigarettes or whether the counterfeit cigarettes sold by S & M were more harmful than the authentic Newport product. Instead, the court is noting that there was no proof presented by the parties that the counterfeit Newport products are subject to any type of safety review or quality control process when manufactured by someone other than Lorillard. Cigarettes are consumer products and the retail establishments that sell cigarettes often sell other consumer products such as food, beverages, over-the-counter medicines and cosmetics. S & M sells food and beverages as well as

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 123 of 144 PageID #:3382

Lorillard Tobacco Co. v. S & M Cent. Service Corp., Not Reported in F.Supp.2d (2004)

2004 WL 2534378

cigarettes. (Uncontested Facts at ¶ 3.) The statutory damage award will deter S & M and other retail establishments from purchasing counterfeit consumer products, and this in turn will help to reduce the probability that consumers will purchase counterfeit products that may be more dangerous than the authentic items.

**\*7** The court's belief that a $250,000 award is fully supported by its concurrence with the jury's determination of S & M's willful infringement. A finding of willful infringement allows the court to award the maximum statutory damage amount, if appropriate under the circumstances of the case, of $1,000,000 per infringed mark, 15 U.S.C. § 1117(c), for a total potential award in this case of $5,000,000.

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights. Thus, knowledge need not be proved directly, but can be inferred from a defendant's conduct." *Logical Choice Computers, Inc.,* No. 99 C 1300, 2001 WL 58950, at \*11 (citing *Wildlife Express Corp.,* 18 F.3d at 511). Willful infringement may be shown by the fact that the "defendant ignored the plaintiff's notices ..., did not seek advice of an attorney, and passed the matter off as a nuisance." *Wildlife Express Corp.,* 18 F.3d at 511.

Several facts support the jury's determination of willfulness. S & M purchased the counterfeit cigarettes at a price below the market price. Khawam testified that S & M obtained the counterfeit cigarettes at a price of $34 per carton instead of the normal rate of $40 per carton. (Trial Tr. 155, 161.) Khawam admitted during his testimony that price was low enough to make him inspect the tax stamps and the name brands on a sample of the cartons he purchased for Cam–Kat. (Trial Tr. 160.)

Additionally evidence is that packaging for the counterfeit cigarettes, including the outer boxes, was different from the packaging used for authentic Newport cigarettes. (Trial Ex. 30—32c.) Alkawham, when questioned about the differences in the packaging during his testimony, responded, "it's not my business to find out if they're counterfeit or not." (Trial Tr. 91.)

In light of the reasons set forth above, this court awards to Lorillard, pursuant to 15 U.S.C. § 1117(c), statutory damages of Fifty Thousand Dollars ($50,000) per infringed mark for a total statutory damage award of Two Hundred

Fifty Thousand Dollars ($250,000). This amount is within the range authorized by Congress under the statute and is appropriate in light of the evidence presented at trial.

### *C. Award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b) and Rule 54(d)(1)*

Lorillard seeks an award of $140,000 for costs and reasonable attorneys' fees. As the prevailing party, Lorillard is entitled to its costs other than attorneys' fees as a matter of course pursuant to Rule 54(d)(1). Fed.R.Civ.P. 54(d)(1). "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Exceptional cases allowing for an award of attorneys' fees include "acts of infringement [that] are 'malicious, fraudulent, deliberate or willful.' " *BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1099 (7th Cir.1994) (quoting *Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 942 (7th Cir.1989)).

**\*8** An award of reasonable attorneys's fees under 15 U.S.C. § 1117(a) is appropriate in light of the jury's determination, and the court's concurrence in that determination, of willful infringement by S & M. The parties must comply with the Local Rule 54.3, before the court can determine the amount of fees and costs which reasonably should be awarded.

### *D. Permanent Injunction Barring S & M from Selling, Offering for Sale or Distributing Counterfeit Cigarettes*

Lorillard seeks a permanent injunction to bar S & M from selling, offering for sale or distributing counterfeit cigarettes. This court has power to enter such an injunction, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). This court grants the injunction, as detailed below, in the "Conclusion" section of this opinion.

### *E. Lorillard's Motion to Amend the Pleadings to Conform to the Evidence Presented at Trial*

Lorillard moves to amend the pleadings to add Safwan Alkhawan, ("Alkhawam"), and Marwan Khawam ("Khawam") as individually liable defendants in order to conform the pleadings to the evidence presented at trial pursuant to Rule 15(b). Alkhawan is the owner of S & M. (Trial at pg. 58.) Alkhawan handles S & M's financial activities including its bank accounts, the paying of bills and the writing of checks. (Trial Tr. pg 60.) Alkhawan has

2004 WL 2534378

employed his brother Khawam to run the gas station on a daily basis for the past ten years. (*Id.*)

As a general rule, corporate officers cannot be held personally liable for infringing actions taken by the corporation. *Drink Group, Inc. v. Gulfstream Communications,* 7 F.Supp.2d 1009, 1010 (N.D.Ill.1998) (citing *Dangler v. Imperial Mach. Co.,* 11 F.2d 945, 947 (7th Cir.1926)). However, this court has recognized that an individual may be held liable for a corporation's infringement under the theory of vicarious liability or contributory liability. *Microsoft Corp. v. V3 Solutions, Inc.,* No. 01 C 4693, 2003 WL 22038593, at *13 (N.D.Ill. Aug. 28, 2003) (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.,* 443 F.2d 1159 (2d Cir.1971)). "Personal liability for trademark infringement ... is established if a corporate officer is a moving, active, conscious force behind the defendant corporation's infringement." *Dynamic Force v. Dynamic Force, Ltd.,* No. 98 C 5922, 1999 WL 342407, at *4 (N.D.Ill. May 14, 1999).

The factual situation in the present case is different from the situation in the *V3 Solutions* and *Dynamic Force* cases. In those cases, the individual corporate officer had been named as a defendant in the original complaint filed with the court. Thus, the question was whether it was appropriate to find personal liability or only limit liability to the named corporation. However, in the present case, Alkhawan and Khawam have never been named as defendants in the case. Service of process was only effectuated on S & M, not on Alkhawan or Khawam. (Dkt. No. 14.) The U.S. Marshall's served Khawam in person on July 18, 2003, however, Khawam was served in his role as an employee of S & M and not in his capacity as an individual. (Dkt. No. 13.)

**\*9** This court does have the ability under Rule 15 to add new defendants after trial and judgment has been entered. However, as the Supreme Court held in *Nelson v. Adams,* that if the court adds a new party to the litigation, due process requires that the new party is given an opportunity to respond and contest his personal liability. 529 U.S. 460, 463 (2000). Thus, this court, although it has the power to add Alkhawan and Khawam, cannot immediately award judgment against them in favor of Lorillard. Instead, if this court decides to add Alkhawan and Khawam, it must give them the opportunity to respond.

Furthermore, although Rule 15 provides a liberal policy for amending pleadings, the right to amend is not absolute. *See*

*Crestview Vill. Apartments v. United States Dep't of Hous. and Urban Dev.,* 383 F.3d 552, -, No. 03–3063, 2004 WL 1965663, at *5 (7th Cir. Sept. 2, 2004) (citing *Perkins v. Silverstein,* 939 F.2d 463, 471–72 (7th Cir.1991)). Lorillard provides no reason for its failure to name Alkhawan and Khawam as individual defendants before the trial. Lorillard was aware of Alkhawan and Khawam existence and their roles in the counterfeiting before the trial. Alkhawan was present for this trial, however, his presence was in his capacity as the owner of S & M. Whether he and Khawam would have dealt with this case in the same way as S & M, if they were facing personal liability and a possible judgment against them as individuals, is a matter of speculation. The only way to know would be to retry the case and the court is unwilling at this point to impose to undertake that burden especially when Lorillard could have named Alkhawan and Khawam as defendants much earlier in the litigation. Consequently, the court denies Lorillard's motion to amend the pleadings to conform to the evidence presented at trial.

*CONCLUSION*

For the reasons set forth above, this court order judgment to Plaintiff Lorillard Tobacco Company of statutory damages of Fifty Thousand Dollars ($50,000) per infringed mark for a total statutory damage award, pursuant to 15 U.S.C. § 1117(c), of Two Hundred and Fifty Thousand Dollars ($250,000) from Defendant S & M Central Service Corporation. This court also finds that Lorillard Tobacco Company is entitled to receive reasonable costs and attorneys' fees from S & M Central Service Corporation, pursuant to 15 U.S.C. § 1117(b), but the parties must comply with the requirements of Local Rule 54.3 as follows: Lorillard must provide S & M with its 54.3 material by November 12, 2004 and S & M must provide Lorillard with its 54.3 material by November 23, 2004. The parties should then attempt to resolve any remaining disputes over attorneys' fees and costs. If an agreement cannot be reached, Lorillard's further petition for fees and costs, including the joint statement under 54.3(e), is due no later than December 6, 2004. Response is due December 17, 2004 and the reply is December 28, 2004.

This court denies Lorillard's Motion to Amend the Pleadings to Conform to the Evidence and denies Lorillard's August 16, 2004 Motion to Strike S & M's Brief on Damages.

**\*10** The court orders the clerk of this court to release the five hundred dollar ($500) bond posted by Lorillard

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 125 of 144 PageID #:3384
Lorillard Tobacco Co. v. S & M Cent. Service Corp., Not Reported in F.Supp.2d (2004)
2004 WL 2534378

Tobacco Company at the commencement of this action on July 18, 2003, plus interest, be immediately released to Martin Kedziora or Thomas Kost in a check payable to Greenberg Traurig, LLP.

Furthermore, it is therefore ordered that defendant S & M Central Service Corporation, and their agents, servants, employees, attorneys, and those personal or entities in active concert or participating with them who receive actual notice of this order by personal service or otherwise, are permanently enjoined from doing, or assisting others in doing, the following acts:

(i) using any reproduction, counterfeit, copy, or colorable imitation of the Lorillard Marks in connection with the importation, sale, offering for sale, or distribution of cigarettes in the United States, which cigarettes in fact are not connected with Lorillard or are not genuine Lorillard products, which such use is likely to cause confusion, or to cause mistake, or to deceive;

(ii) using the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same in any manner likely to cause others to believe that Defendants' products are connected with Lorillard or are genuine Lorillard products if they are not, which such use is likely to cause confusion, or to cause mistake, or to deceive;

(iii) passing off, inducing, or enabling others to sell or pass off any merchandise which is not genuine Lorillard merchandise as and for genuine Lorillard merchandise;

(iv) committing any other acts reasonably calculated to cause purchasers to believe that Defendant's products are Lorillard's products, when in fact such products are not Lorillard products;

(v) importing, shipping, delivering, distributing, holding for sale, returning, transferring, or otherwise moving or disposing of in any manner such cigarettes falsely bearing one or more of the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same;

(vi) discussing or communicating any aspect of the seizure of counterfeit cigarettes or the identifying markers of counterfeit cigarettes with any person or entity selling or attempting to sell cigarettes to Defendants;

(vii) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above paragraphs (i) through (vi); and (viii) other than by an order of this Court,

(1) selling, moving, destroying, or otherwise disposing of any goods, boxes, labels, packaging or other items or documents bearing any reproduction, counterfeit, or imitation of the Lorillard Marks, which such use is likely to cause confusion, or to cause mistake, or to deceive;

(2) moving, destroying, or otherwise disposing of any business records or documents relating in any way to the manufacture, importation, acquisition, purchase, distribution, or sale of goods or merchandise bearing any of the Lorillard Marks or any reproduction, counterfeit, or imitation of the Lorillard Marks, which such use is likely to cause confusion, or to cause mistake, or to deceive; or

 **\*11** (3) assisting any third party in identifying, moving, destroying, or otherwise disposing of any reproduction, counterfeit or imitation goods, as well as any records pertaining to reproduction, counterfeit or imitation goods, which such use is likely to cause confusion, or to cause mistake, or to deceive.

S & M Central Service Corporation and their agents, servants, employees, attorneys, and those personal or entities in active concert or participating with them who receive actual notice of this order by personal service or otherwise is warned that any act by them in violation of any of the terms of this Order may be considered and prosecuted as contempt of this Court.

### All Citations

Not Reported in F.Supp.2d, 2004 WL 2534378

Footnotes

1    Lorillard arrived at the $500,000 figure by requesting damages of one hundred thousand dollars, ($100,000), for each of the five infringed trademarks.

2    A figure of $50,000 per infringed mark for a total award of $250,000 is within the range of statutory awards made by other courts under 15 U.S.C. § 1117(c). *See Philip Morris USA, Inc. v. Felizardo,* No. 03 Civ. 5891, 2004 WL 1375277, at *7 n.16 (S.D.N .Y. June 18, 2004) ($62,500 statutory damage award for two infringed trademarks when defendant attempted

Lorillard Tobacco Co. v. S & M Cent. Service Corp., Not Reported in F.Supp.2d (2004)

2004 WL 2534378

to sell 7500 counterfeit cartons of cigarettes); *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 501 (C.D.Cal.2003) ( $2,000,000 statutory damage award for two infringed trademarks when defendant imported 8,000,000 counterfeit cigarettes); *see e.g., Silhouette Int'l Schmied v. Chakhbazian,* No. 04 Civ. 3613, at *2 (S.D.N.Y Oct. 4, 2004) ($250,000 statutory damage award for infringement of multiple eyewear trademarks); *Microsoft Corp v. V3 Solutions, Inc.,* No. 01 C 4693, 2003 WL 22038593, at *16 (N.D.Ill. Aug. 28, 2003) ($35,000 statutory damage award for seven infringed Microsoft software trademarks); *Microsoft Corp. v. Logical Choice Computers, Inc.,* No. 99 C 1300, 2001 WL 58950, at *11 (N.D.Ill. Jan. 22, 2001) ($1,400,000 statutory damage for the infringement of seven Microsoft software trademarks).

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 127 of 144 PageID #:3386

Luxottica USA LLC v. The Partnerships and Unincorporated..., Not Reported in Fed....

2015 WL 3818622

2015 WL 3818622
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

LUXOTTICA USA LLC, Plaintiff,

v.

THE PARTNERSHIPS

AND UNINCORPORATED

ASSOCIATIONS IDENTIFIED

ON SCHEDULE "A", Defendants.

Case No. 14 c 9061
|
Signed June 18, 2015

**Attorneys and Law Firms**

Kevin W. Guynn, Amy Crout Ziegler, Jessica Lea Bloodgood, Paul G. Juettner, Justin R. Gaudio, Greer, Burns & Crain, Ltd., Chicago, IL, for Plaintiff.

Lingzhi Zhao, Zhao & Associates, P.C., Michael J. Robins, Robins & Associates LLC, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

Harry D. Leinenweber, Judge, United States District Court

 **\*1**  This case arises from the unauthorized sale of counterfeit Ray–Ban eyewear through various online seller accounts. Default judgment has been entered against most Defendants, while others have been voluntarily dismissed. A single Defendant ("Defendant"), who has been identified by two eBay seller IDs, remains.

Before the Court is Plaintiff Luxottica USA LLC's ("Luxottica") Motion for Summary Judgment, Statutory Damages of $450,000, Permanent Injunction, and Attorneys' Fees and Costs [ECF No. 77]. For the reasons stated herein, Luxottica's Motion is granted, except that the Court awards statutory damages in the amount of $150,000.

### I. *BACKGROUND*

Luxottica is the exclusive wholesale distributor of genuine Ray–Ban products in the United States and holds the exclusive right to enforce RAY–BAN trademarks within the United States. (Joint Stmt. of Stipulated Facts, ECF No. 75, ¶ 1.) RAY–BAN marks have been used continuously and exclusively by Luxottica and its predecessors since as early as 1937. (*Id.* ¶ 3.) Luxottica has protected the value of the Ray–Band brand by registering the following trademarks with the United States Patent and Trademark Office: Reg. No. 1,080,886, Reg. No. 1,320,460, Reg. No. 3,522,603. (*Id.* ¶ 1.)

Defendant stipulates that up until November 2014, it sold and offered for sale knockoff products featuring counterfeit RAY–BAN trademarks via online marketplace accounts associated with the eBay seller IDs "g7178a" and "qhgypchyh2." (*Id.* ¶¶ 5– 8.) (The introductory paragraph of the parties' joint statement of stipulated facts refers to the seller IDs as "g7178" and "qhgypchyh.") Defendant has stipulated to owning the online marketplace accounts associated with these seller IDs, as well as seven PayPal accounts associated with various email addresses. (*Id.* ¶ 4.) Defendant sold at least 106 counterfeit Ray–Ban products at prices ranging from $6.29 to $6.99 each. (*Id.* ¶ 5.)

### II. *ANALYSIS*

Luxottica requests that this Court (1) enter summary judgment in its favor on the two claims asserted against Defendant, (2) award statutory damages of $450,000 pursuant to 15 U.S.C. § 1117(c), (3) enter a permanent injunction against Defendant and transfer to Luxottica all assets currently restrained in PayPal accounts that are connected to Defendant, and (4) award attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a)–(b).

#### A. Summary Judgment

Luxottica argues that it is entitled to summary judgment on its claims for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendant has already admitted liability on the above-mentioned counts in a Joint Statement of Stipulated Facts filed with the Court on April 7, 2015. (ECF No. 75 ¶¶ 6–

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 128 of 144 PageID #:3387
Luxottica USA LLC V. The Partnerships and Unincorporated..., Not Reported in Fed....

2015 WL 3818622

8 ("Defendant knowingly and willfully offered for sale and sold at least one hundred six (106) Counterfeit Ray–Ban Products.... Defendant admits liability for false designation of origin using counterfeit trademarks and violation of the Illinois Uniform Deceptive Trade Practices Act.").) Summary judgment is therefore entered in favor of Luxottica.

**B. Statutory Damages**

**\*2** Luxottica seeks a total damages award of $450,000 — $150,000 for each of the three trademarks that Defendant used on the counterfeit products. Defendant argues that statutory damages of no more than $7,440 are appropriate because it generated only $800 in total revenue from the sale of the counterfeit goods, and only a fraction of that amount within the United States.

Under 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to recover an award of statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" or, in the case of willful infringement, "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." Although the Lanham Act permits a plaintiff to choose either actual or statutory damages, statutory damages are "most appropriate" when an infringer's nondisclosure makes actual damages uncertain. *Sara Lee Corp. v. Bags of N.Y., Inc.,* 36 F.Supp.2d 161, 165 (S.D.N.Y.1999).

Though § 1117(c) places a dollar range on possible statutory damages awards, the statute provides no guidance on how to select a figure within that range. *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* No. 03 C 4986, 2004 WL 2534378, at \*4 (N.D.Ill. Nov. 8, 2004). Accordingly, "[c]ourts interpreting section 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c)." *Id.*

The Seventh Circuit's standard for the award of statutory damages in copyright infringement cases is set forth in *Chi–Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir.1991). Under *Chi–Boy,* "district courts enjoy wide discretion in awarding fees and may consider various factors such as [1] the difficulty or impossibility of proving actual damages, [2] the circumstances of the infringement, and [3] the efficacy of the damages as a deterrent to future copyright infringement." *Id.* at 1229–30 (citation and internal

quotations omitted). Courts have also considered the value of a plaintiff's brand, "and the efforts taken to protect, promote, and enhance that brand." *Lorillard,* 2004 WL 2534378, at \*6. Ultimately, § 1117(c) looks to both "compensatory considerations" such as "actual losses and trademark value," as well as "punitive considerations" such as "deterrence of other infringers and redress of wrongful defense conduct." *Sara Lee,* 36 F.Supp.2d at 165; *see also, Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1347 (7th Cir.1994) (noting that statutory damages under § 1117(c) are not merely remedial but serve an important public interest), *modified on reh'g in part,* 44 F.3d 579 (7th Cir.1995).

The Court turns first to compensatory considerations. Although there is "no necessary mathematical relationship between the size of [a statutory damages award] and the extent or profitability of the defendant's wrongful activities," *Sara Lee,* 36 F.Supp.2d at 165, statutory damages must "bear some relation" to actual damages, *Coach, Inc. v. Tom's Treasure Chest,* No. 2:10–CV–00243, 2011 WL 4399355, at \*3 (N.D.Ind. Sept. 21, 2011) (citation and internal quotations omitted). Courts may look to the size and scope of a defendant's operations to determine a baseline for damages. *Id.* High statutory damages may be appropriate when counterfeiting activities take place online and are capable of reaching a wide audience. *Id.*

**\*3** Here, Defendant argues that "the parties have a complete record of *all* the sales of the accused products"—namely, PayPal records documenting Defendant's sales, which totaled approximately $800 worldwide and $372 in the United States. (Def.'s Resp., ECF No. 82, at 11.) Plaintiff counters that Defendant's evidence—which was submitted without a declaration—is unauthenticated and contains contradictory information. For instance, the figures displayed on the webpages for Defendant's eBay storefronts indicate that Defendant sold more than 200 pairs of sunglasses, (*see,* Ex. 2 to Joint Stmt. of Stipulated Facts, ECF No. 75– 2), but the PayPal figures Defendant submits show only 106 pairs of sunglasses sold. (Def.'s Resp., ECF No. 82, at 5.) While the parties dispute the exact sales figures, no evidence submitted suggests that Defendant is a large-scale counterfeiter. For instance, all seven PayPal accounts that have been "connected" to Defendant contain only $75,000. (*See, id.* at 2–3.)

On the other hand, Defendant's counterfeiting took place on the Internet, enabling Defendant to reach a "vast customer base," *Burberry Ltd. & Burberry USA v. Designers Imports,*

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 129 of 144 PageID #:3388

Luxottica USA LLC v. The Partnerships and Unincorporated..., Not Reported in Fed....

2015 WL 3818622

*Inc.,* No. 07 CIV. 3997(PAC), 2010 WL 199906, at *10 (S.D.N.Y. Jan. 19, 2010), and making Luxottica's actual losses difficult to calculate, *Brown v. Walker,* No. 1:06–CV–218, 2010 WL 2346242, at *7 (N.D.Ind. May 25, 2010), *report and recommendation adopted as modified,* No. 1:06–CV–218–TLS, 2010 WL 2346225 (N.D. Ind. June 9, 2010). In cases involving the online sale of counterfeit goods, courts have found substantial damages awards appropriate. *See, e.g., id.* (awarding $50,000 per mark); *Burberry,* 2010 WL 199906, at *10 (awarding $100,000 per mark); *Deckers Outdoor Corp. v. Does 1–55,* No. 11 C 10, 2011 WL 4929036, at *5 (N.D.Ill. Oct. 14, 2011) (awarding $750,000 per mark). In this case, the Court has already awarded damages of $2 million against each defaulting Defendant. (*See,* ECF No. 65 ¶ 4.)

In addition, the RAY–BAN marks are well known and highly valuable. As noted, Luxottica and its predecessors have used the RAY–BAN marks continuously and exclusively since as early as 1937, and the marks at issue in this lawsuit are all federally registered. Luxottica submits that it has expended significant resources in promoting the Ray–Ban brand, making Ray–Ban the "undisputed world leader in the field of sun and prescription eyewear." (Pl.'s Mem., ECF No. 78, at 10.) Luxottica has also filed numerous lawsuits within this District in an effort to protect the RAY–BAN marks and their associated goodwill. (*See, id.* at 11 n.6.)

The Court now turns to punitive considerations. "[P]art of the purpose of statutory damages is to deter the current violator and other potential future violators." *Lorillard,* 2004 WL 2534378, at *6. Damages awards limited to lost profits are typically ineffective deterrents because "[a] counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *Id.* Here, Defendant has stipulated that it engaged in willful infringement. However, Defendant has also mitigated the degree of willfulness by ceasing the sale of the counterfeit products immediately, retaining an attorney, and voluntarily providing information to Luxottica.

Because this is not a case of default, and based on the mitigating factors identified above, the Court finds it appropriate to reduce the statutory damages Luxottica seeks by two-thirds. Pursuant to 15 U.S.C. § 1117(c), the Court awards Luxottica statutory damages in the amount of $50,000 per mark, for a total award of $150,000.

**C. Permanent Injunction**

Luxottica seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), which enables district courts to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable." A plaintiff seeking a permanent injunction must demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

**\*4** *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006); *accord e360 Insight v. The Spamhaus Project,* 500 F.3d 594, 604 (7th Cir.2007).

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir.2001). As this Court recognized in granting Luxottica's Motion for a Temporary Restraining Order and Preliminary Injunction, counterfeiting has eroded consumer goodwill in the RAY–BAN trademarks and constitutes irreparable harm for which there is no adequate remedy at law. Further, because Defendant's conduct was willful, the balance of hardships favors Luxottica. *See, Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A",* No. 14–CV–4819, 2014 WL 3749132, at *6 (N.D.Ill. July 18, 2014), *report and recommendation adopted,* No. 14 CV 4819, 2014 WL 3765854 (N.D.Ill. July 29, 2014). The public interest also favors Luxottica, because "enforcement of the trademark laws prevents consumer confusion," *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000), and consumers have a legitimate "interest in knowing with whom they do business." *Re/Max N. Cent.,* 272 F.3d at 433.

As part of the injunction, Luxottica seeks the immediate transfer of "all assets in financial accounts operated by PayPal, Inc. and linked to Defendant, as well as any newly discovered assets, to Luxottica." (Pl.'s Mem., ECF No. 78, at 12.) In granting Luxottica's Motion for Preliminary Injunction, the Court previously froze assets held in accounts

Case: 1:21-cv-01664 Document #: 85-1 Filed: 02/11/22 Page 130 of 144 PageID #:3389

Luxottica USA LLC v. The Partnerships and Unincorporated..., Not Reported in Fed....

2015 WL 3818622

"connected" to Defendant on the basis that Luxottica sought an accounting of profits as an alternative to statutory damages. *See, CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir.2002) (upholding asset freeze where plaintiff sought accounting in the alternative to statutory damages). Now, relying on the PayPal records, Defendant argues that the asset freeze is too broad, sweeping up accounts "wholly unrelated to the accused products." (Def.'s Resp., ECF No. 82, at 8.) Defendant urges the Court to scale back the asset freeze to $7,440, an amount it contends is "more than adequate to satisfy the Court's interests in preserving any equitable accounting of profits." (*Id.* at 10.)

In arguing that the asset restraint should be modified, Defendant relies on *Klipsch.* In *Klipsch,* after a preliminary injunction hearing in which a defendant submitted evidence that it had only sold a few thousand dollars' worth of counterfeit goods, a court reduced a prejudgment asset restraint from $2 million to $20,000. *Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 12 CIV. 6283 AJN, 2012 WL 5265727, at *3 (S.D.N.Y. Oct. 24, 2012). The court held that, under the Supreme Court's ruling in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999), asset freezes are limited to preserving the equitable remedy of an accounting for profits. *Klipsch,* 2012 WL 5265727, at *3.

 **\*5** To exempt assets from an asset freeze, "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *N. Face Apparel Corp. v. TC Fashions, Inc.,* No. 05 CIV. 9083(RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006) (citation and internal quotations omitted). Defendant claims that only two of Defendant's seven PayPal accounts contain any profits related to the sale of counterfeit Ray–Ban goods. In support of this argument, Defendant has submitted a spreadsheet of transactions associated with one of Defendant's email addresses, as well as an untranslated Chinese email. (*See,* Exs. K & L to Def.'s Resp., ECF No. 82–1.) To rule out the five remaining accounts, Defendant has submitted PayPal account summaries it claims show no connection to the eBay Seller IDs "g7178a" and "qhgypchyh2." (*See,* Exs. C–I to Def.'s Resp., ECF No. 82–1.) Defendant has also provided several hundred pages of eBay feedback associated with the two seller IDs, showing that it sold a variety of products in addition to sunglasses. (*See,* Ex. N to Def.'s Resp., ECF No. 82–1.)

Luxottica, however, disputes the authenticity and validity of this evidence. For instance, Luxottica notes that the evidence was not accompanied by a declaration, that the transaction spreadsheet does not identify the quantity of glasses sold, and that Defendant's sales figures contradict information displayed on the eBay storefronts. Despite Defendant's contention that it is unconnected to five of the seven PayPal accounts, Defendant has admitted to owning the PayPal accounts associated with the email addresses shown in the account summaries. (Joint Stmt. of Stipulated Facts, ECF No. 75, ¶ 5.) Luxottica submits that the restraint on these accounts "was based on PayPal, Inc.'s ... determination through PayPal's proprietary methods, which have not been disclosed to Luxottica or Luxottica's counsel." (Gaudio Decl, Ex. 1 to Pl.'s Reply, ECF No. 84–1, ¶ 2.)

The Court cannot conclude, based on the evidence before it, that Defendant has met its burden in showing that the asset restraint should be limited to only a portion of two of the seven PayPal accounts and declines to modify the asset restraint on this basis.

### D. Attorneys' Fees and Costs

Finally, Luxottica seeks an award of attorneys' fees and costs. As the prevailing party, Luxottica is entitled to costs under Federal Rule of Civil Procedure 54(d)(1). Under 15 U.S.C. § 1117(a), which addresses recovery in terms of profits and actual damages, a court may, "in exceptional cases ... award reasonable attorney fees to the prevailing party." Exceptional cases include those in which a defendant's conduct is willful. *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1099 (7th Cir.1994). In assessing damages under § 1117(a), courts "shall" award attorneys' fees, absent extenuating circumstances, in cases involving the intentional use of a counterfeit mark. 15 U.S.C. § 1117(b). An award of attorneys' fees is available where, as here, a plaintiff "opt[s] to receive statutory damages under section 1117(c)." *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 111 (2d Cir.2012); *accord Coach, Inc. v. Treasure Box, Inc.,* No. 3:11CV468–PPS, 2014 WL 888902, at *5 (N.D.Ind. Mar. 6, 2014). Accordingly, and in light of Defendant's willful counterfeiting, Luxottica is awarded reasonable attorneys' fees and costs in an amount to be determined by the Court.

### III. *CONCLUSION*

For the reasons stated herein, Luxottica's Motion for Summary Judgment and Statutory Damages is granted in part and denied in part.

The Court enters summary judgment in favor of Luxottica and against Defendant. Pursuant to 15 U.S.C. § 1117(c), the Court awards Luxottica $150,000 in statutory damages. The Court also awards Luxottica reasonable attorneys' fees and costs, and will enter a permanent injunction prohibiting Defendant from violating Luxottica's rights in the RAY–BAN marks.

Within seven (7) days of the entry of this order, Luxottica shall submit a revised Final Judgment Order consistent with this opinion. The parties are to attempt to reach an agreement on the issue of attorneys' fees in accordance with Local Rule 54.3. If an agreement cannot be reached, Luxottica is to file a Motion for Attorneys' Fees within thirty (30) days of the entry of this Order.

**\*6  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 3818622

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

OAKLEY, INC.                )
                           )
            Plaintiff,      )        Case No. 13-cv-2958
                           )
      v.                    )        **Judge Rebecca R. Pallmeyer**
                           )
THE PARTNERSHIPS and        )        **Magistrate Judge Jeffrey Cole**
UNINCORPORATED ASSOCIATIONS )
IDENTIFIED ON SCHEDULE "A" and DOES )
1-100,                      )
                           )
            Defendants.     )
_____

## FINAL JUDGMENT ORDER

This action having been commenced by Plaintiff Oakley, Inc. ("Oakley") against the Defendants identified in Schedule A to the Complaint and using the Defendant Domain Names and Online Marketplace Accounts;

This Court having entered upon a showing by Oakley, a temporary restraining order and preliminary injunction against Defendants which included a domain name transfer order and asset restraining order;

Oakley having properly completed service of process on Defendants; the combination of providing notice via electronic publication and email, along with any notice that Defendants received from domain name registrars and payment processors, being notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and affording them the opportunity to present their objections; and

None of the Defendants having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

1

THIS COURT HEREBY FINDS that Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), cyberpiracy (15 U.S.C. § 1125(d)) and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.).

IT IS HEREBY ORDERED that Plaintiff's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defendants are deemed in default and that this Final Judgment is entered against Defendants.

IT IS FURTHER ORDERED that:

1.  Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

    a.  using Oakley's OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Oakley product or not authorized by Oakley to be sold in connection with Oakley's OAKLEY Trademarks;

    b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine OAKLEY product or any other product produced by Oakley, that is not Oakley's or not produced under the authorization, control or supervision of Oakley and approved by Oakley for sale under Oakley's OAKLEY Trademarks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Oakley, or are sponsored or approved by, or connected with Oakley;

2

d. further infringing Oakley's OAKLEY Trademarks and damaging Oakley's goodwill;

e. otherwise competing unfairly with Oakley in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Oakley, nor authorized by Oakley to be sold or offered for sale, and which bear Oakley's OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell Counterfeit OAKLEY Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine OAKLEY product or not authorized by Oakley to be sold in connection with Oakley's OAKLEY Trademarks.

2.  The Defendant Domain Names are permanently transferred to Oakley's control.  The domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Oakley's selection, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to Oakley's account at a registrar of Oakley's selection.

3

3. Those in privity with Defendants and with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, shall cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using the OAKLEY Trademarks.

4. Pursuant to 15 U.S.C. § 1117(c)(2), Oakley is awarded statutory damages from each of the Defendants in the amount of two million dollars ($2,000,000) for willful use of a counterfeit OAKLEY Trademark on products sold through at least the Defendant Domain Names.

5. Any banks, savings and loan associations, payment processors, PayPal or other financial institutions, for any Defendant or any of Defendants' websites shall within two (2) business days of receipt of this Order:

   a. Locate all accounts connected to Defendants, Defendants' Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts; and

   b. Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets.

6. All monies currently restrained in Defendants' financial accounts, including monies held by PayPal, Inc. ("PayPal"), are hereby released to Oakley as partial payment of the above-identified damages, and PayPal is ordered to release to Oakley the amounts from Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

7. Until Oakley has recovered full payment of monies owed to it by any Defendant, Oakley shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions including, without limitation, PayPal,

(collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defendants are identified. Upon receipt of this Order, the Financial Service Providers shall immediately:

a. Locate all accounts connected to Defendants, Defendants' Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts; and

b. Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets, and any funds in such accounts shall be transferred to Oakley within ten (10) business days of receipt of this Order.

8. In the event that Oakley identifies any additional domain names or financial accounts owned by Defendants, Oakley may send notice of any supplemental proceeding to Defendants by email at the email addresses identified in Schedule A to the Complaint.

9. The ten thousand dollar ($10,000) bond including any interest minus the registry fee is hereby released to Oakley.

This is a Final Judgment.

DATED: June **27** , 2013

U.S. District Court Judge Rebecca R. Pallmeyer

📙 KeyCite Yellow Flag - Negative Treatment
Distinguished by BBK Tobacco & Foods, LLP v. Galaxy VI Corp., S.D.N.Y.,
September 30, 2019

2005 WL 2076921
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

PHILLIP MORRIS USA INC. Plaintiff,

v.

MARLBORO EXPRESS, Tobacco Traders
and Trust, Timothy Farnham, individually
and doing business as Tobacco Traders
and Trust and Marlboroexpress.com,
Mary Kim Jamieson, individually and
doing business as Tobacco Traders and
Trust and Marlboroexpress.com, Native
Express, Don Doctor, individually and
doing business as Marlboroexpress.com
and Nativeexpress.com, Dennis Kennedy,
individually and doing business and
Double D Smoke Shop, Sovereignty
Ventures, Inc., Don Deland, individually
and doing business as Sovereignty
Ventures, Inc., Iroqouis Tobacco
Company, Scott Snyder, individually
and doing business as Iroquois Tobacco
Company, Simon Moshel, an individual;
Michael Moshel, an individual, Robert
Berardelli, an individual, and Does One
Through Ten Inclusive Defendants.

No. CV-03-1161 (CPS).
|
Aug. 26, 2005.

**Attorneys and Law Firms**

Samuel L. Barkin, Heller Ehrman LLP, New York, NY, for
Plaintiff.

MEMORANDUM OPINION AND ORDER

SIFTON, Senior J.

**\*1** Plaintiff Philip Morris USA, Inc. ("Philip Morris") brings
this trademark action seeking damages and injunctive relief
against defendants Marboro Express, Tobacco Traders
and Trust, Timothy Farnham, individually and doing business as
"Tobacco Traders and Trust" and "Marlboroexpress.com,"
Don Doctor, individually and doing business as
"Marlboroexpress.com" and "Nativeexpress.com," Dennis
Kennedy, individually and doing business as "Double D
Smoke Shop," Don Deland, individually and doing business
as "Sovereignty Ventures, Inc.," Iroqois Tobacco Company,
Scott Snyder, individually and doing business as "Iroqois
Tobacco Company," and Robert Berardelli.[1] Plaintiff's claims
arise out of defendants' sale of counterfeit Marlboro®
brand cigarettes. Specifically, plaintiff alleges the following
claims against the defendants: (1) infringement of plaintiff's
registered trademarks in violation of Section 32 of the
Lanham Act, 15 U.S.C. § 1114 (Claims 1-4); (2) importation
of counterfeit goods bearing an infringing trademark in
violation of Section 42 of the Lanham Act, 15 U.S.C. §
1124 (Claims 5-6); (3) false designation of origin in violation
of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)
(Claims 7-8); (4) trademark dilution in violation of the
Federal Trademark Dilution Act, 15 U.S.C. §§ 1125(c) and
1127 (Claims 9-10); (5) "cybersquatting" in violation of the
Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §
1125(d) (Claim 11); (6) unfair competition in violation of
the common law of New York (Claim 12); (7) trademark
infringement in violation of the common law of New York
(Claim 13); and (8) trademark dilution in violation of New
York General Business Law § 360-1 et seq. (Claim 14).

Presently before the court are the following motions: (1)
plaintiff's motion for partial summary judgment against
defendant Snyder on Claims 1,2, 5, and 7 alleged in the
complaint, pursuant to Rule 56 of the Federal Rules of
Civil Procedure ("Fed. R. Civ.P."); and (2) plaintiff's motion
for entry of default judgment and order granting damages
and injunctive relief against defendants Berardelli, Deland,
Farnham, Kennedy, and Doctor (collectively "Default
Defendants"), pursuant to Fed.R.Civ.P. 55(b). The defendants
have not responded to plaintiff's motions.[2] For the reasons set
forth below, the motions are granted.

Phillip Morris USA Inc. v. Marlboro Express, Not Reported in F.Supp.2d (2005)

2005 WL 2076921

BACKGROUND

The following facts are drawn from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits in connection with this motion. The facts are undisputed unless otherwise noted.

Plaintiff Phillip Morris is a corporation organized under the laws of Virginia with its principal place of business in New York. For several decades, Phillip Morris has manufactured and sold tobacco products under the Marlboro® brand (Pl. 56.1 Statement ¶ 1). Among the distinctive features of the Marlboro® brand is its pack design, which features the Marlboro Roof Design Label® Mark (a pentagonal figure with a horizontal top and two vertical sides with two upwardly and inwardly sloping diagonals). Phillip Morris is the registered owner of the "Marlboro Marks" on the Principal Register of the United States Patent and Trademark Office ("USPTO"). The "Marlboro Marks" include the Roof Design Label® Mark, Marlboro®, Marlboro Lights®, Marlboro Menthol®, Marlboro Lights Menthol®, Marlboro Ultra Lights®. (*See* Registration Certificates, Johnson Decl. Ex. A). Phillip Morris has invested substantial time, effort, and money to advertise and promote the Marlboro Marks, and as a result, they are widely recognized trademarks for which significant "good will" has developed.

 **\*2** Between August 2000 and February 2003, defendants Snyder, Deland, Farnham, and Berardelli, in conjunction with others, imported approximately 200,000 cartons of counterfeit Marlboro® and Marlboro Lights® cigarettes from China. (Pl. 56.1 ¶ 3; Johnson Dec. Ex. B). These cartons were imported in at least five separate shipments, and were monitored by the United States Customs Service after arrival in the United States from China. (Pl. 56.1 ¶¶ 3-4; Johnson Dec. Ex. B). Defendants sold counterfeit Marlboro brand cigarettes at retail stores, including the "Double D Smoke Shop," located on the Seneca Indian Cattaraugus reservation and the "Iroqious Tobacco Company," located in Irving, New York, and through various Internet websites, including "Marlboroexpress.com" and "Smokeheap.com." (Pl. 56.1 ¶ 5; Johnson Dec. Ex. C). Defendants purchased counterfeit cigarettes at prices between $2.00 and $2.20 per carton and sold them at retail prices between $19.00 and $29.99 per carton. (Pl. 56.1 ¶ 6; Johnson Dec. Ex. H).

On February 14, 2003, the United States Customs Service filed a criminal complaint in the United States District Court for the Eastern District of New York against defendant Snyder, Deland, Farnham, Berardelli and others[3] for conspiracy to smuggle and traffic in counterfeit goods, in violation of 18 U.S.C. §§ 545 and 2320.[4] (*See* Criminal Complaint, *United States v. Moshel, et. al.,* 1:03-m-276 (E.D.N.Y.), Johnson Decl. Ex. B). On March 20, 2003, defendants Snyder, Deland, Farnham were indicted in the United States District Court for the Eastern District of New York on three counts of trafficking and conspiring to traffic counterfeit goods in violation of 18 U.S.C. §§ 545 and 2320. (*See* Indictment, Johnson Decl. Ex. C). On September 30, 2003, defendant Farnham pled guilty before Magistrate Judge Cheryl Pollack to Count One of the indictment which accused them of knowingly and intentionally conspiring to traffic in counterfeit cigarettes. On October 1, 2003, defendants Snyder and Deland also pled guilty before Judge Raymond Dearie to Count One of the indictment. (*See* Johnson Decl. Ex. D; Barkin Decl. Ex. 7-8; Pl. 56.1 Statement ¶ 29).[5] Defendant Berardelli pled guilty to Count Two of the Indictment which accused him of knowingly and intentionally trafficking in counterfeit goods in violation of 18 U.S.C. § 2320.

Plaintiff commenced this action by filing a complaint and summons against the defendants on March 10, 2003 (the "Complaint"). Between March 2003 and June 2003, plaintiff served process upon each of the defendants. To date, defendants Berardelli, Deland, Farnham, Kennedy, and Doctor[6] have not filed an answer or otherwise responded to the Complaint. On May 11, 2005, the Clerk of this Court issued a Notation of Default pursuant to Fed.R.Civ.P. 55(a) against defendants Farnham, Doctor, Kennedy and Deland.[7]

DISCUSSION

Jurisdiction

The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, which confers jurisdiction over actions involving violations of patents and trademarks, 28 U.S.C. § 1331, which authorizes jurisdiction over civil actions arising under federal law, and principles of pendant jurisdiction over the state law claims.

Phillip Morris USA Inc. v. Marlboro Express, Not Reported in F.Supp.2d (2005)

2005 WL 2076921

Motion for Partial Summary Judgment

*Summary Judgment Standard*

 **\*3** A motion for summary judgment may be granted only
where "the pleadings, depositions, answers to interrogatories,
and admissions on file, together with affidavits, if any, show
that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S.
317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for
summary judgment may be defeated by the non-moving party
if that party produces sufficient specific facts to establish that
there is a material issue of fact for trial. *See Montana v. First
Federal Sav. & Loan Ass'n of Rochester,* 869 F.2d 100, 103
(2d Cir.1989). The role of the court on a motion is "not
to resolve disputed issues of fact but to assess whether there
are any factual issues to be tried." *Knight v. United States
Fire Ins. Co.,* 804 F.2d 6, 11 (2d Cir.1986). The "court must
view the evidence in the light most favorable to the party
against whom summary judgment is sought and must draw
all reasonable inferences in his favor." *L.B. Foster Co. V.
American Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998); *Anderson
v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91
L.Ed.2d 202 (1986).

*Defendant Snyder's Failure to Respond*

Local Rule 56.1 of the Eastern and Southern Districts of
New York requires that all summary judgment motions be
accompanied by a "short or concise statement of material facts
as to which the moving party contends there is no genuine
issue to be tried." Local Rule 56.1(a). The rule also requires
that the party opposing summary judgment file a response
setting forth the material facts about which it contends there
exists a triable issue. Because defendant Snyder has failed
to file any response, all facts contained in plaintiff's Rule
56.1 statement are deemed admitted.[8] *See* Local Rule 56.1(b)
and (d). However, defendant Snyder's failure to respond to
plaintiff's motion does not mean that plaintiff automatically
prevails. *See e.g. Addickes v. S.H. Kress & Co.,* 398 U.S.
144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The
moving party must "nevertheless offer facts supporting its
Rule 56.1 Statement, and must satisfy the movant's Rule 56
burden." *Smith v. Principi,* 2004 WL 1857582, at \*1, n. 1
(S.D.N.Y.2004); *see also Vermont Teddy Bear Co., Inc. v.*

*1-800 BEARGRAM Co.,* 373 F.3d 241, 242 (2d Cir.2004)
("Even when a motion for summary judgment is unopposed,
the district court is not relieved of its duty to decide whether
the movant is entitled to judgment as a matter of law.").

*Lanham Act*

Plaintiff seeks summary judgment against defendant Snyder
on its First, Second, Fifth and Seventh Claims for relief, which
allege (1) trademark infringement in violation of Section
32 of the Lanham Act, (2) importation of goods bearing
an infringing trademark in violation of Section 42 of the
Lanham Act, and (3) false designation of origin and trademark
and dress infringement in violation of Section 43(a) of the
Lanham Act.[9] *See* 15 U.S.C. §§ 1114(1), 1124, 1125(a).

*Sections 32 and 43(a)*

 **\*4** Section 32 of the Act prohibits the use in commerce,
without consent, of any "reproduction, counterfeit, copy,
or colorable imitation of a registered mark in connection
with the sale, offering for sale, distribution, or advertising
of any goods," in a way that is likely to cause confusion
with plaintiff's registered trademarks. 15 U.S.C. § 1114(1)
(a). Section 43(a) prohibits similar conduct, though it is
not limited to registered trademarks, and deems liable for
false designation of origin "[a]ny person who ... uses in
commerce any container for goods ... name, symbol, device ...
or any false designation of origin..which is likely to cause
confusion." 15 U.S.C. § 1125(a); *see also Chambers v. Time
Warner, Inc.,* 282 F.3d 147, 155 (2d Cir.2002). Liability is
established under both Sections 32 and 43(a) of the Lanham
Act if a plaintiff can demonstrate (1) that it has a valid
trademark entitled to protection under the Act, and (2)
defendant's actions are "likely to cause confusion." *Arrow
Fastener v. Stanley Works,* 59 F.3d 384, 390 (2d Cir.1995).

In this case, plaintiff's certificates of registration with the
USPTO for the Marlboro Marks are "prima facie evidence
that the mark[s][are] registered and valid (i.e.protectible), that
the registrant owns the mark[s], and that the registrant has
the exclusive right to use the mark[s] in commerce." *Lane
Capital Management, Inc. v. Lane Capital Management, Inc.,*
192 F.3d 337, 345 (2d Cir.1999); 15 U.S.C. § 1067(b) ("A
certificate of registration of a mark ... shall be prima facie
evidence of the validity of the registered mark"). Thus, the

plaintiff has established that its Marlboro Marks are valid and entitled to protection under the Act.

In considering the likelihood of confusion, district courts generally apply eight nonexclusive factors, known as the *Polaroid* factors:

(1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers.

*Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 742-43 (2d Cir.1998) (citing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961). However, in cases involving counterfeit marks, "the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 287 (S.D.N.Y.2003); *Phillip Morris USA Inc. v. Felizardo,* 2004 WL 1375277, at *5 (S.D.N.Y.2004). Thus, the Court "need only determine the more fundamental question of whether there are items to be confused in the first place-that is, whether the items at issue here are, in fact, counterfeit, and whether defendant [Snyder] sold those items." *Gucci America, Inc.,* 286 F.Supp.2d at 287. In this case, it has not been disputed that the items at issue are counterfeit Marlboro brand cigarettes, and that defendant Snyder sold and distributed these items. *See* Pl. 56.1 Statement at ¶ 29. Accordingly, defendant Snyder's actions caused a likelihood of consumer confusion, and plaintiff has established liability under Sections 32 and 43(a) of the Lanham Act. *See Phillip Morris Inc. v. Felizardo,* 2004 WL at *5.

### Section 42

**\*5** Section 42 of the Lanham Act, 15 U.S.C. § 1124, provides in relevant part that "no article of imported merchandise ... which shall copy or simulate a trademark registered in accordance with the provisions of this chapter ... shall be admitted entry at any customhouse of the United States." The Second Circuit has explained that 15 U.S.C. § 1124 "applies only to merchandise bearing counterfeit or spurious trademarks that copy or simulate genuine trademarks." *Olympus Corp. v. U.S.,* 792 F.2d 315, 322 (2d.Cir.1986), *cert.*

*denied,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988); *Disenos Articos E Industriales, S.A. v. Work,* 676 F.Supp. 1254, 1271 (E.D.N.Y.1987). In this case, it has not been disputed that defendant Snyder, together with others, imported at least five separate shipments of cigarettes from China bearing counterfeit Marlboro marks.[10] Accordingly, plaintiff has established Snyder's liability under Section 42 of the Lanham Act.[11]

### Injunctive Relief

Plaintiff seeks to permanently enjoin defendant Snyder from future trademark infringement.[12] Section 34(a) of the Lanham Act provides courts with the "power to grant injunctions according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). To obtain a permanent injunction, plaintiff must demonstrate (1) actual success on the merits and (2) irreparable harm. *See e.g., Gucci America, Inc.,* 286 F.Supp.2d at 290; *Wojnarowicz v. American Family Ass'n,* 745 F.Supp. 130, 148, n. 13 (S.D.N.Y.1990). As previously discussed, plaintiff has established success on the merits on its Lanham Act claims. Moreover, in this Circuit, "proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." *Brennan's Inc. v. Bennan's Rest.,* 360 F.3d 125, 29 (2d Cir.2004); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997). Accordingly, plaintiff is entitled to a permanent injunction enjoining defendant Snyder from further infringement of plaintiff's trademarks. *See e.g., Phillip Morris v. Felizardo,* 2004 WL at *7; *Gucci America, Inc.,* 286 F.Supp.2d at 290.

### Damages

Plaintiff seeks statutory damages rather than actual damages for defendant Snyder's infringement. Plaintiff argues that it is entitled to recover $4 million in statutory damages based on defendant Snyder's willful use of counterfeit versions of four registered Marlboro Marks. Section 35(c) of the Lanham Act provides that:

[i]n a case involving the use of a counterfeit mark ... in connection with the sale, offering for sale, or distribution of good or services, the plaintiff may elect, at any time before

final judgment is rendered by the trial court, to recover, instead of actual damages and profits ..., an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services ... *6 15 U.S.C. § 1117(c). Congress added the statutory damages provision of the Lanham Act in 1995 because "counterfeiters' records are frequently nonexistent ... making proving actual damages in these cases extremely difficult, if not impossible." *See Gucci America, Inc.,* 315 F.Supp.2d at 520. A plaintiff may recover "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold ..." 15 U.S.C. § 1117(c)(1). If the Court finds that "the use of the counterfeit mark was willful," then the plaintiff may recover "not more than $1,000,000 per counterfeit mark ..." *Id.* at 1117(c)(2). "The standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Kepner Tregoe, Inc. v. Vroom, 186 F.3d 283, 299 (2d Cir.1999).*

District courts have wide discretion in awarding statutory damages. *See Cable/Home Communication Corp. v. Network Prod., Inc., 902 F.2d 829, 852* (11 th Cir.1990). Although Section 1117(c) "does not provide guidelines for courts to use" in determining an appropriate statutory damage award, "many courts have found guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides for statutory damages for willful infringement." *Gucci America,* 315 F.Supp.2d at 520; *Sara Lee Corp. v. Bags of New York, Inc., 36 F.Supp.2d 161, 165-67 (S.D.N.Y.1999); Rodgers v. Anderson, 2005 WL 950021, at *2 (S.D.N.Y.2005).* Using Copyright Act caselaw as a guide, courts have considered the following factors in setting statutory damage awards under the Lanham Act: defendant's profits from infringement, the defendant's willfulness, the size of defendant's counterfeiting operation, defendant's efforts to mislead and conceal, "the deterrent effect on others besides the defendant ... and the potential for discouraging the defendant." *Sara Lee Corp. ., 36 F.Supp.2d at 166.*

In this case, I find that defendant Snyder's conduct was willful. Defendant Snyder recently pled guilty to knowingly and intentionally conspiring to traffic counterfeit cigarettes. (Johnson Decl. Ex. D). Moreover, defendant's counterfeiting operating was large, involving at least 200,000 cartons and millions of cigarettes. (Johnson Decl. Ex. B, Criminal Compl. at 3). The government, using a conservative retail price of $23.50 per carton, estimated the total value of the five infringing shipments to be $4,773,790. (Johnson Decl. Ex.

I at 7). Given the evidence of willfulness, demonstrated by defendant Snyder's own admissions, the size of the potential profit, the large quantities of cigarettes involved, and the need for a substantial deterrent to future misconduct by Snyder and other similarly situated counterfeit cigarette traffickers, I find that the maximum statutory award is warranted. *See e.g. Phillip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501-02 (C.D.Cal.2003)* (awarding maximum statutory award of $2 million for the infringement of two trademarks where the defendant "import[ed] 8,000,000 counterfeit cigarettes, having a street value of millions of dollars."); *Phillip Morris USA, Inc. v. David Banh, et.al.,* CV-03-4043 (GAF) (C.D.Cal.2005) (awarding maximum statutory award); *Phillip Morris USA, Inc. v. Sheng Chen Lin,* CV-03-08923 (CAS) (C.D.Cal.2004) (same); *Gucci America, Inc.,* 315 F.Supp.2d at 520-21 (awarding $2 million in statutory damages for use of two counterfeit marks). The counterfeit cigarettes imported and sold by defendant Snyder and his co-conspirators infringed upon four of plaintiff's registered and valid trademarks: the Marlboro® brand trademark (i.e. the word "Marlboro"), the Marlboro Roof Design Label® mark (i.e. the red and gold pentagonal label), the Marlboro Lights® brand trademark (i.e. the phrase "Marlboro Lights"), and the Marlboro Lights Roof Design Label® mark (i.e. the gold pentagonal label). (*See* Supplemental Decl. of Samuel Barkin ¶¶ 3-4; Newman Aff. Ex. 1).[13] Accordingly, plaintiff is entitled to a maximum statutory award of $4,000,000.

Motion for Default Judgment, Damages and Injunctive Relief

*Default Judgment*

*7 Plaintiff also moves for an entry of default judgment against defendants Berardelli, Deland, Farnham, Kennedy, and Doctor pursuant to Fed.R.Civ.P. 55(b). Pursuant to Fed.R.Civ.P. 55(b), a Court may enter a default judgment against a party who "has failed to plead or otherwise defend" an action, and this constitutes a final judgment in the action.[14] *Id.* at 325. The Second Circuit has noted that default judgments are "left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil,* 10 F.3d at 95. An entry of default judgment should be made only where there was willful default, involving more than a failure to answer

Phillip Morris USA Inc. v. Marlboro Express, Not Reported in F.Supp.2d (2005)

2005 WL 2076921

as a result of negligence or carelessness. *See SEC v. McNulty, 137 F.3d 732, 738 (2d Cir.1998).*

In this case, defendants Berardelli, Deland, Farnham, Kennedy, and Doctor have failed to file an answer or otherwise respond to the complaint, which was filed by plaintiff in March 2003, or to respond to plaintiff's application for default judgment.[15] Having failed to provide any explanation for their failure to defend, I find that these defendants have defaulted willfully. *See Cablevision Systems New York City Corporation v. Leach,* 2002 WL 1751343, at *2 (S.D.N.Y.2002)(default willful where defendant never responded to the complaint, appeared, or explained default). Plaintiff has documented service of its complaint and of its motion papers. There is no indication that requiring plaintiff to take further steps prior to a determination on the merits would be effective in eliciting a response. *See id.* Accordingly, an entry of default judgment is appropriate.

*Damages and Injunctive Relief*

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). A plaintiff must substantiate a claim with evidence to prove the extent of damages. Although an evidentiary hearing may be held, "it is not necessary for the district court to hold a hearing, as long as ... there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993)(district judges are given much discretion to determine whether an inquest need be held).

In this case, plaintiff seeks a permanent injunction against all defaulting defendants enjoining them from future distribution and sale of counterfeit Marlboro brand cigarettes. As previously discussed, Section 34(a) of the Lanham Act gives courts the "power to grant injunctions ... to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). Given the risk of irreparable harm caused by default defendants' continued sale of counterfeit Marlboro brand cigarettes, I find that permanent injunctive relief is warranted. *See Phillip Morris, USA v. Castworld Products, Inc.,* 219 F.R.D. 494, 502

(C.D.Cal.2003) ("failure to grant injunction would needlessly expose Plaintiff to the risk of continuing irreparable harm").

**\*8** Plaintiff also seeks statutory damages against three of the defaulting defendants, Berardelli, Deland and Farnham,[16] jointly and severally, in the amount of $4 million, based on their willful use of counterfeit versions of four Marlboro Marks. (*See* Pl. Default Judgment Memo at 2, 9). Plaintiff submits evidence that these defendants, along with defendant Snyder and others, imported counterfeit cigarettes that infringed upon four registered Marlboro Marks: the Marlboro® brand trademark (i.e. the word "Marlboro"), the Marlboro Roof Design Label® mark (i.e. the red and gold pentagonal label), the Marlboro Lights® brand trademark (i.e. the phrase "Marlboro Lights"), and the Marlboro Lights Roof Design Label® mark (i.e. the gold pentagonal label). (*See* Supplemental Decl. of Samuel Barkin ¶¶ 3-4; Newman Aff. Ex. 1). As previously discussed, under 15 U.S.C. § 1117(c) a plaintiff may elect to pursue statutory rather than actual damages. "Several courts have found statutory damages especially appropriate in default judgment cases due to infringer nondisclosure." *PetMed Express, Inc. V, MedPets.Com, Inc.,* 336 F.Supp.2d 1213, 1219 (S.D.Fla.2004)(citing *Sara Lee Corp.,* 36 F.Supp.2d at 165). Here, given the willfulness of Berardelli, Deland and Farnham who each pled guilty to knowingly trafficking counterfeit cigarettes, the size of the potential profit given the large quantities of cigarettes involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit cigarette traffickers, I find that plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)-$4,000,000 or $1,000,000 per counterfeit mark. *See e.g. Phillip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. at 501-02 (C.D.Cal.2003)(awarding maximum statutory award of $2 million for the infringement of two trademarks where the defendant "import [ed] 8,000,000 counterfeit cigarettes, having a street value of millions of dollars"); *Phillip Morris USA, Inc. v. Glenda Patton,* CV-03-2569 (GAF) (C.D.Cal.2003) (granting default judgment and awarding plaintiff maximum statutory damages in the amount of $4 million).

CONCLUSION

For the reasons set forth above, (1) plaintiff's motion for partial summary judgment against defendant Snyder on Claims 1,2, 5, and 7 alleged in the complaint is

granted; (2) plaintiff's motion for an entry of default judgment against defendants Berardelli, Deland, Farnham, Kennedy, and Doctor pursuant to Fed.R.Civ.P. 55(b) is granted; (3) defendants Snyder, Berardelli, Deland, Farnham, Kennedy, and Doctor are permanently enjoined from future infringement of plaintiff's trademarks; and (4) plaintiff is awarded $4 million in statutory damages, for which defendants Snyder, Berardelli, Deland, and Farnham are liable, jointly and severally.

Plaintiff is directed to settle a final judgment on notice in accordance with this opinion and its undertaking to discontinue claims not made the subject of the motion. The Clerk is directed to furnish a filed copy of the within to all parties and to the Magistrate.

**\*9** SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2005 WL 2076921

Footnotes

1   Plaintiff's complaint also named as defendants Simon Moshel, Michael Moshel and Mary Kim Jamieson. Plaintiff has entered a Consent Judgment with defendants Simon and Michael Moshel, which was "so ordered" by this Court on February 2, 2005. Pursuant to the Consent Judgment, defendants Simon and Michael Moshel agreed to pay plaintiff $150,000 and were permanently enjoined from selling counterfeit or illegally imported Marlboro cigarettes. (*See* Consent Judgment at 2). Plaintiff also filed a notice of voluntary dismissal of the claims asserted against defendant Mary Kim Jamieson without prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure on July 22, 2005.

2   The defendants against whom these motions are brought appear to be proceeding *pro se*.

3   The criminal complaint also named Simon and Michael Moshel as defendants. (Johnson Dec. Ex. B at 1).

4   18 U.S.C. § 545 provides in relevant part that:
 Whoever knowingly and wilfully ... smuggles or clandestinely introduces ... into the United States any merchandise which should have been invoiced .... or fraudulently or knowingly imports or brings into the United States any merchandise contrary to law ... [s]hall be fined under this title or imprisoned ...
 18 U.S.C § 2320 provides in relevant part that:
 Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such good or services shall be fined ... or imprisoned ...

5   Defendants Snyder, Deland and Farnham were also charged in the United States District Court for the Western District of Texas with smuggling and trafficking counterfeit cigarettes in violation of 18 U.S.C §§ 371, 2342(a) and 2320(a). Defendant Snyder pled guilty and was sentenced to 27 months imprisonment in December 2003. He was also ordered to pay $861,260 in restitution for unpaid cigarette taxes. Phillip Morris is not entitled to any part of that restitution award. (*See* Johnson Decl. Ex. G.). Defendants Deland and Farnham also pled guilty, and were sentenced to 24 and 18 months imprisonment, respectively. (*See* Barkin Decl. Ex. 11-12).

6   Although defendants Kennedy and Doctor were not named in the related criminal action, they are alleged in plaintiff's complaint to be co-owners or operators of some of the outlets through which the counterfeit cigarettes were sold, including "Double D Smoke Shop," "Marlboroexpress.com" and "Nativeexpress.com."

7   Defendant Berardelli is not listed on the Clerk's Notation of Default. However, this appears to be an oversight, as plaintiff provided the Clerk of Court with a copy of the summons and complaint served by personal service on defendant Berardelli on March 25, 2003. (*See* Barkin Decl., Ex. 14 ¶¶ 7-8; Ex. 15). The default is hereby noted.

8   Plaintiff filed a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" on May 23, 2005, informing defendant Snyder of the consequences of failing to respond to a summary judgment motion. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (an "easily comprehensible notice" from the party moving for summary judgment provides sufficient notice to a *pro se* litigant).

9   During oral argument before this Court on July 21, 2005, plaintiff's counsel stated that plaintiff intends to dismiss the remaining claims against defendant Snyder if plaintiff's motion for partial summary judgment on the claims which are the subject of this motion is granted.

10  I should note that in this case, defendant Snyder has not argued nor do plaintiff's submissions indicate that the cigarettes imported by defendant Snyder and his co-conspirators were genuine Marlboro cigarettes bearing a genuine trademark. The importation of genuine goods, unlike counterfeit goods, is not actionable under the Lanham Act. *Olympus Corp.,* 792 F.2d at 321-22.

Phillip Morris USA Inc. v. Marlboro Express, Not Reported in F.Supp.2d (2005)

2005 WL 2076921

11    While plaintiff moves for summary judgment on this claim, plaintiff does not brief this issue in its supporting memorandum, apart from stating that "the same facts that support Phillip Morris USA's First and Second Claims also establish Plaintiff's Fifth claim for violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124." (Pl. Summary Judgment Memo at 1).

12    Specifically, plaintiff seeks to permanently enjoin defendant Snyder from the following: (1) importing, distributing, purchasing, selling, offering for sale, or otherwise using in commerce any counterfeit Philip Morris USA branded cigarettes; (2) aiding or abetting others in the importation, distribution, purchase, sale, or offering for sale or other use in commerce of any Philip Morris USA branded cigarettes; and (3) engaging in any other activity constituting infringement of Phillip Morris USA's rights in any Phillip Morris USA trademarks, including without limitation the Marlboro Marks. (*See* Pl. Summary Judgment Memo at 12).

13    Plaintiff's original submissions did not provide sufficient evidence of the number of counterfeit marks used by defendant Snyder and his co-conspirators. During oral argument held on July 21, 2005, the Court advised plaintiff to provide additional evidence on the issue. Plaintiff subsequently provided an affidavit from Assistant United States Attorney Debra D. Newman, the attorney assigned to the criminal proceedings against defendant Snyder and his co-conspirators, dated August 2, 2005 ("Newman Aff."), accompanied by two sample counterfeit cigarette packs that were seized by customs officials. The sample packs were packaged to look like genuine Marlboro and Marlboro Lights cigarette packs, and contain counterfeit versions of the four trademarks discussed above. (Newman Aff. Ex. 1).

14    Fed.R.Civ.P. 55(a) provides that a "clerk may enter a default upon being advised by affidavit or otherwise that a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). Unlike a court's entry of default judgment pursuant to Fed.R.Civ.P. 55(b), a clerk's "default notation is an interlocutory action; it is not itself a [final] judgment." *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 335 (2d Cir.1986).

15    In a letter to the Court, plaintiff's attorney Samuel Barkin stated that he had "receive[d] a request from defaulting defendant Timothy Farnham for a 3 week extension of time to respond to Phillip Morris's default judgment against him." As a result of that letter, oral argument on this motion was continued from June 6 to July 21, 2005. However, since that last communication, Farham has not filed any response to the default judgment motion.

16    Plaintiff does not seek any damages against defendants Doctor and Kennedy, the two defendants who were not criminally prosecuted. (*See* Pl. Default Judgment Memo at 10, n. 8).

---

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.